IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TRACY T. YOSHIMURA, ET AL., | ) | CIVIL 18-00038 LEK-KJM |
| Plaintiffs, | ) | |
| vs. | ) | |
| KEITH M. KANESHIRO, ETC., ET AL., | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S
MOTION TO DISMISS COMPLAINT FILED ON JANUARY 26, 2018**

Before the Court is Defendant City and County of Honolulu's ("City") April 26, 2018 Motion to Dismiss Complaint Filed on January 26, 2018 ("Motion"). [Dkt. no. 10.] Plaintiffs Tracy T. Yoshimura ("Yoshimura"), Eugene M. Simeona, Jr. ("G. Simeona"), Michael D. Miller, Jr. ("Miller"), Gary G. Danley, Jr. ("Danley"), Quentin D.R. Canencia ("Canencia"), Desiree U. Haina ("Haina"), Michael A. Madali, Jr. ("Madali"), and Clayton Simeona ("C. Simeona," collectively "Plaintiffs") filed their memorandum in opposition on June 9, 2018, and the City filed its reply on July 13, 2018. [Dkt. nos. 21, 22.] This matter came on for hearing on July 30, 2018. The City's Motion is hereby granted for the reasons set forth below.

**BACKGROUND**

On January 26, 2018, Plaintiffs filed their Complaint against: Defendants Keith M. Kaneshiro, individually and in his

capacity as the Prosecuting Attorney of the City and County of Honolulu ("Kaneshiro"); Katherine Kealoha, individually and in her capacity as Deputy Prosecuting Attorney ("Kealoha"); Vernon Branco ("Branco");[1] and the City (collectively "Defendants").[2] Plaintiffs bring this action for violation of their civil rights pursuant to 42 U.S.C. § 1983.  Plaintiffs assert federal question jurisdiction over the § 1983 claims and supplemental jurisdiction over the state law claims.  [Complaint at ¶¶ 16-17 (citing 28 U.S.C. §§ 1331, 1367(a)).]

Plaintiffs are residents of the City and County of Honolulu, State of Hawai`i.  [Id. at ¶¶ 1-9.] ] Yoshimura was the owner of PJY Enterprises, LLC ("PJY"), which was the distributor of Products Direct Sweepstakes terminals ("PDS terminals") in Honolulu.  [Id. at ¶ 19.]  G. Simeona and Miller were owners of arcades with PDS terminals and employed Danley, Canencia, Haina, Madali, and C. Simeona, as cashiers in their arcades.  [Id. at ¶¶ 20-21,46,69.]  On September 27, 2012, Kaneshiro, in cooperation with the Honolulu Police Department

---

[1] Branco is not named in his official capacity in the caption of the Complaint, however this Court construes Branco as named in both his individual capacity and his official capacity as an investigator for the City's Office of the Prosecuting Attorney.  [Complaint at ¶ 12.]

[2] Neither Kaneshiro, Kealoha, nor Branco has entered an appearance in this case.  Kealoha and Kaneshiro have been served, each in their official and individual capacities.  [Dkt. nos. 19, 20, 25, 26.]  At the hearing on the Motion, Plaintiffs' counsel confirmed they have not yet completed service on Branco.

2

("HPD"), directed and conducted seizures of PDS terminals from six game arcades in Hawai`i. After the seizure of PDS terminals on September 27, 2012, Yoshimura expressed criticism of Kaneshiro to the media. [Id. at ¶ 22.] In December 2012 and February 2013, HPD conducted another series of PDS terminal seizures, including seizures at arcades belonging to G. Simeona and Miller. Kaneshiro assigned Branco to conduct undercover investigations of various arcades. [Id. at ¶¶ 23-24.] In the fall of 2013, approximately 190 PDS terminals were seized and held by authorities. Branco provided Kaneshiro and Kealoha with reports of his undercover investigations. [Id. at ¶ 25.] After the seizures, Yoshimura told the media "'I'd like to publicly challenge Keith [Kaneshiro], to charge us or leave us alone and release the equipment he is holding.'" [Id.] Plaintiffs allege Kaneshiro, in his administrative capacity as Prosecuting Attorney for the City and County of Honolulu, hired Branco as an investigator and assigned Kealoha to prosecute Plaintiffs. [Id. at ¶ 31.] Plaintiffs assert their wrongful prosecution was a result of retaliation for Plaintiffs' participation in a federal civil action and because of Yoshimura's public criticism of Kaneshiro.[3] [Id. at ¶ 108.]

---

[3] In response to the seizures in September of 2012, PJY and others filed a lawsuit in the First Circuit Court of the State of Hawai`i against Kaneshiro, Kealoha, HPD, and the City. The case was removed to this district court on October 26, 2012: PJY
(continued...)

3

On May 1, 2014, Kealoha presented evidence from Branco's investigation of the arcades to a state grand jury, and it returned an indictment against Plaintiffs (the "First Indictment").[4]  [Id. at ¶ 29.]  At the grand jury proceeding, Kealoha presented Branco's testimony that Yoshimura was the owner of various arcades and businesses.[5]  Contrary to Branco's testimony, Yoshimura alleges he was not the owner of the business investigated.[6]  Therefore, Plaintiffs filed a Motion to Disqualify the Department of the Prosecuting Attorney and motions to dismiss the First Indictment based on excessive heresay, insufficient evidence, failure to present exculpatory evidence, and misrepresentations of the evidence.  [Id. at ¶¶ 32-34, 36.]  Subsequently, the state court approved the Prosecuting Attorney's Ex Parte Motion to Nolle Prosequi Without Prejudice, and the

---

[3] (...continued)
Enterprises, LLC, et. al. v. Keith Kaneshiro, et. al., CV 12-00577 LEK-RLP.  [Complaint at ¶ 27.]

[4] State v. Tracy Yoshimura, et al., Cr. No. 14-0717.

[5] Branco testified that Yoshimura was the owner of the following businesses: Bellagio, the Game Zone, the Game Zone II, Panico Promotions, Lucky 777, Pure Luck, and New World Group. [Complaint at ¶ 32.]

[6] On September 2, 2014, Yoshimura filed a Declaration of Keith M. Kiuchi which stated the business, New World Group, Inc., was actually owned and operated by an individual named Soon Yun. [Complaint at ¶ 35.]

court dismissed the First Indictment without prejudice.[7]  [Id. at
¶¶ 39-41.]

On January 28, 2016, a state grand jury returned an
indictment charging Danley, Canencia, Haina, Madali, and
C. Simeona with promoting gambling and unlawful ownership or
operation of a business (the "Second Indictment").[8]  [Id. at
¶ 42.]  In the Second Indictment, C. Simeona was charged with
criminal offenses related to the operation of the PDS terminals
as a cashier in an arcade located at the Stadium Mall.  [Id. at
¶ 43.]  Plaintiffs allege Kealoha failed to inform the grand jury
that the state's expert did not examine any PDS terminals from
the Stadium Mall location.[9]  [Id. at ¶ 83.]  Subsequently, the
Second Indictment was dismissed with prejudice.  [Id. at ¶ 53.]

On February 24, 2016, a state grand jury returned an
indictment charging Yoshimura, G. Simeona, and Miller with
promoting gambling and unlawful ownership or operation of a
business (the "Third Indictment").[10]  Plaintiffs allege Branco

---

[7] Plaintiffs filed a Motion to Reconsider Order Granting State of Hawaii's Ex Parte Motion to Nolle Prosequi Without Prejudice, but the motion was denied.  [Complaint at ¶¶ 40-41.]

[8] State v. Gary G. Danley, Jr., et al., Cr. No. 16-1-01145.

[9] The City did not produce an expert witness report until July 13, 2016 and the report was also prepared for the Third Indictment.  Plaintiffs assert the disclosure of the expert testimony was purposely delayed.  [Complaint at ¶ 45.]

[10] State v. Tracy T. Yoshimura, et al., Cr. No. 16-1-0288.

provided an investigation report to Kaneshiro and Kealoha which stated Yoshimura owned three arcades involved in the events giving rise to the Third Indictment.[11]  Yoshimura alleges he never owned any of the arcades identified by Branco, but alleges that the trade names of the business were transferred to him without his knowledge, after Branco's investigation.  [Id. at ¶¶ 47-49.]  Additionally, Plaintiffs allege Kealoha knew Yoshimura did not own one of the arcades involved in the Third Indictment because Branco's report to Kealoha and Kaneshiro previously noted it belonged to a third party.  See id. at ¶ 48; see also *supra* footnote 6.  The Third Indictment was dismissed with prejudice.  [Complaint at ¶ 52.]

   The Complaint alleges the following claims:

- a 42 U.S.C. § 1983 claim by all Plaintiffs against Defendants for retaliatory prosecution, in violation of Plaintiffs' right to free speech under the First Amendment to the United States Constitution and the applicable provision of the Hawai`i State Constitution ("Count I"); [id. at ¶¶ 55-67;]

- a § 1983 claim by all Plaintiffs against Defendants, alleging selective enforcement, in violation of the Equal Protection Clause ("Count II"); [id. at ¶¶ 68-77;]

- a state claim by Danley, Canecia, Haina, C. Simeona, and Madali against Kealoha and the City for initiation of malicious prosecution ("Count III"); [id. at ¶¶ 78-87;]

---

[11] Branco's investigation report stated that Yoshimura owned the following businesses: Bellagio Entertainment Center, the Game Zone which later became Pure Luck, and another Game Zone. [Complaint at ¶ 48.]

-a state claim by Yoshimura against Kealoha and the City for
    initiation of malicious prosecution ("Count IV"); [id. at
    ¶¶ 88-94;]

-a state claim by Danley, Canecia, Haina, C. Simeona, and Madali
    against Kaneshiro, Kealoha, and the City for maintaining a
    malicious prosecution ("Count V"); [id. at ¶¶ 95-100;]

-a state claim by Yoshimura, G. Simeona, and Miller against
    Kaneshiro, Kealoha, and the City for maintaining a malicious
    prosecution ("Count VI"); [id. at ¶¶ 101-06;]

-a state claim of abuse of process by all Plaintiffs against
    Kealoha and the City ("Count VII"); [id. at ¶¶ 107-10;]

-a state claim of negligent hiring by all Plaintiffs against
    Kaneshiro and the City ("Count VIII"); [id. at ¶¶ 111-17;]

-a state claim by all Plaintiffs against Kaneshiro and the City
    for negligent retention and negligent supervision
    ("Count IX"); [id. at ¶¶ 118-25.]

The City moves this Court to: grant the Motion and dismiss all § 1983 claims against the City; dismiss all "official capacity" claims against the individual defendants – Kaneshiro, Kealoha, and Branco – with prejudice; and decline to exercise supplemental jurisdiction over the remaining state law claims.[12]  [Mem. in Supp. of Motion at 8.]

**DISCUSSION**

I. **Section 1983 Claims Against the City**

The City is correct that Plaintiffs' § 1983 claims against the City rely on a respondeat superior theory rather than a municipal liability theory.  See Complaint at ¶ 99.

---

[12] Although the City seeks dismissal of all claims, it does not allege the state law claims are insufficiently pled.

7

Furthermore, Plaintiffs concede the Complaint asserts a respondeat superior claim rather than directly asserting a municipal liability claim. See Mem. in Opp. at 6. This Court agrees with the City that a municipality cannot be held liable on a § 1983 claim based solely upon a respondeat superior theory. See generally Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978) (holding that a municipality cannot "be sued under § 1983 for an injury inflicted solely by its employees or agents"). In order to state a plausible claim of municipal liability under § 1983, Plaintiffs must allege a constitutional violation occurred as a result of an unconstitutional City policy or custom. See id. (establishing municipal liability when a policy or custom is the "moving force" behind a constitutional violation); Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006).

Plaintiffs failed to sufficiently plead a § 1983 claim based municipal liability and, as a result, this Court concludes Plaintiffs' § 1983 claims against the City fail to state a claim for relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). However, this Court finds that it is possible for Plaintiffs to cure the

defects in their § 1983 claims against the City by amendment. See Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (stating dismissal without leave to amend is improper if the complaint can be saved by amendment).  Therefore, the City's Motion is granted, insofar as Plaintiffs' § 1983 claims are dismissed without prejudice.

## II. "Official Capacity" Claims Against the City

The City also seeks dismissal of all "official capacity" claims against the individual Defendants.  The City argues the "official capacity" claims are unclear or improper as a matter of law and unnecessary because the local government entity is already named in a lawsuit.  [Mem. in Supp. of Motion at 5-6 (citing Fisher v. Kealoha, 869 F. Supp. 2d 1203, 1215 (D. Haw. 2012)).]  This Court finds naming Kaneshiro, Kealoha, and Branco in their official capacities dupliciative of the claims against the City.  See Hyun Ju Park v. City & Cty. of Honolulu, 292 F. Supp. 3d 1080, 1090 (D. Hawai`i 2018) (citing Carnell v. Grimm, 872 F. Supp. 746, 752 (D. Haw. 1994) (dismissing claims against officials in their official capacity as duplicative where the municipality had also been sued)). Therefore, Plaintiffs' Complaint fails to state plausible claims against Kaneshiro, Kealoha and Branco, in their official capacities.  Thus, the City's Motion is granted, insofar as the

9

claims against the individual Defendants in their official capacities are dismissed with prejudice.

**III. Supplemental Jurisdiction**

Finally, the City urges this Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against it because the state law claims in this case are predominate. [Mem. in Supp. of Motion at 8.] This Court previously dismissed Plaintiffs' § 1983 claims against the City without prejudice, therefore, this Court will not exercise supplemental jurisdiction of Plaintiffs' state law claims against the City. See Souch v. Howard, 27 F. App'x 793, 795 (9th Cir. 2001) ("When all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state-law claims." (citing 28 U.S.C. § 1367(c); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614 (1988))). However, because this Court finds that it is possible for Plaintiffs to cure the defects in their § 1983 claims by amendment, this Court would be inclined to exercise supplemental jurisdiction if Plaintiffs sufficiently plead a federal claim in their amended complaint.

**CONCLUSION**

On the basis of the foregoing, the City's April 4, 2018 Motion to Dismiss Complaint Filed on January 26, 2018 is HEREBY

GRANTED.  All of Plaintiffs' claims against the City are DISMISSED WITHOUT PREJUDICE; and Plaintiffs' claims against Kaneshiro, Kealoha, and Branco in their official capacities, are DISMISSED WITH PREJUDICE.

As to the claims dismissed without prejudice, this Court GRANTS Plaintiffs leave to file an amended complaint by **October 9, 2018.**  Plaintiffs are cautioned that they are only granted leave to amend the claims dismissed without prejudice in the instant Order.  If Plaintiffs include other amendments in their amended complaint, the amended complaint may be stricken.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 14, 2018.



　　　　　　　　　　　　　　　　/s/ Leslie E. Kobayashi
　　　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　　　United States District Judge


**TRACY T. YOSHIMURA, ET AL. VS. KEITH KANESHIRO, ETC., ET AL; CIVIL 18-00038 LEK-KJM; ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COMPLAINT FILED ON JANUARY 26, 2018**