KEITH M. KIUCHI, ALC
KEITH M. KIUCHI #2735
American Savings Bank Tower,
1001 Bishop Street, Suite 985
Honolulu, Hawaii 96813
TEL.: (808) 533-2230; FAX: (808) 533-4391

LAW OFFICE OF MIA D. OBCIANA
MIA D. OBCIANA              8424
700 Bishop Street, Suite 1101
Honolulu, HI  96813
Tel.: (808) 492-6848
Email:     mia@mdolawoffice.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TRACY T. YOSHIMURA, EUGENE M. SIMEONA, JR., MICHAEL D. JR., GARY G. DANLEY, JR., QUENTIN D. R. CANENCIA, DESIREE U. HAINA, MICHAEL A. MADALI, JR., and CLAYTON SIMEONA, ) | CIVIL NO. 18-00038 LEK-KJM (Other Civil Action) |
| Plaintiffs, ) | |
| vs. ) | FIRST AMENDED COMPLAINT |
| KEITH M. KANESHIRO, individually; KATHERINE KEALOHA, individually; VERNON BRANCO; CITY AND COUNTY OF HONOLULU; JOHN DOES 1-10;  JANE DOES 1-10; and DOE GOVERNMENTAL ENTITIES 1-10; ) | |

)
Defendants.            )
_____)

## FIRST AMENDED COMPLAINT

**COMES NOW**, Plaintiffs TRACY T. YOSHIMURA, EUGENE M.

SIMEONA, JR., MICHAEL D. MILLER, JR., GARY G. DANLEY, JR.,

QUENTIN D. R. CANENCIA, DESIREE U. HAINA, MICHAEL A. MADALI,

JR., CLAYTON SIMEONA, by and through their attorney, KEITH M. KIUCHI,

and for Complaint against the above-named Defendants, hereby alleges and avers

as follows:

1.       Plaintiff TRACY T. YOSHIMURA (hereafter referred to as "Plaintiff

YOSHIMURA"), is at all times relevant herein, a resident of the City and County

of Honolulu, State of Hawaii.

2.       Plaintiff EUGENE M. SIMEONA, JR. ("Plaintiff GENE

SIMEONA"), is at all times relevant herein, a resident of the City and County of

Honolulu, State of Hawaii.

3.       Plaintiff MICHAEL D. MILLER, JR. ("Plaintiff MILLER"), is at all

times relevant herein, a resident of the City and County of Honolulu, State of

Hawaii.

4.      Plaintiff GARY G. DANLEY, JR. ("Plaintiff DANLEY"), is at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

5.      Plaintiff QUENTIN D. R. CANENCIA ("Plaintiff CANENCIA"), is at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

6.      Plaintiff TRACY T. YOSHIMURA (hereafter referred to as "YOSHIMURA"), is at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

7.      Plaintiff DESIREE U. HAINA ("Plaintiff HAINA"), is at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

8.      Plaintiff MICHAEL A. MADALI, JR. ("Plaintiff MADALI"), is at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

9.      Plaintiff CLAYTON SIMEONA ("Plaintiff CLAYTON SIMEONA"), is at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

10.     Defendant KEITH M. KANESHIRO is the Prosecuting Attorney of the City and County of Honolulu ("Prosecutor KANESHIRO") and is named here

individually.  Prosecutor KANESHIRO is an officer of the executive branch of the City and County of Honolulu.

11.     Defendant KATHERINE KEALOHA was, at all times set forth herein, a Deputy Prosecuting Attorney of the City and County of Honolulu ("DPA KEALOHA") and is named here individually.

12.     Defendant VERNON BRANCO was, at all times set forth herein, an investigator employed by the Office of the Prosecuting Attorney of the City and County of Honolulu ("Defendant BRANCO") and is named here individually.

13.     Defendant CITY AND COUNTY OF HONOLULU ("CITY") is a body politic and corporate of the State of Hawaii and is a political subdivision of the State of Hawaii.  As stated above, Prosecutor KANESHIRO is an officer of the executive branch of the City.  The Office of the Prosecuting Attorney of the City and County of Honolulu is a department of the City and County of Honolulu and is sometimes hereafter in this Complaint referred to as the "Office of the Prosecuting Attorney".

14.     Except as specifically otherwise alleged, at all times relevant to this Complaint, the above-named individual Defendants were acting within the course and scope of their employment with the City and County of Honolulu.

15.     After completing a diligent investigation, Plaintiffs are unable to ascertain what other persons or entities, if any, in addition to the above-named

4

defendants, may be liable to Plaintiffs.  Therefore, the true names, identities or capacities of Defendants John Does 1-10, Jane Does 1-10, Doe Governmental Entities 1-10 and their involvement herein are unknown to Plaintiffs, who therefore names said defendants by such fictitious names.  Plaintiffs will seek leave of court to amend its pleadings to set forth the true names and capacities of such fictitiously named defendants when the same become known to Plaintiffs.  Plaintiffs are informed and believe and allege thereon that each of the defendants designated herein may be liable in some way to Plaintiffs.

## STATEMENT OF JURISDICTION AND VENUE

16.     This court has jurisdiction over this matter under 28 U.S.C. §1331 as Plaintiffs' Complaint raises a federal question as Plaintiffs bring, as their first and second causes of action, claims under 42 U.S.C. §1983 asserting that Defendants, acting under the color of law, violated Plaintiffs' federal rights.

17.     This court has supplemental jurisdiction under 28 U.S.C. §1367(a) over the other causes of action raised by Plaintiffs in this Complaint.

18.     Plaintiffs all reside in the District of Hawaii and the contracts and agreements referred to herein were all made in the District of Hawaii and all of the actions alleged in this Complaint occurred in the District of Hawaii and all Defendants are residents of the State of Hawaii.  Plaintiffs thus assert that the venue for this action is proper in the District of Hawaii.

## **FACTS COMMON TO ALL COUNTS**

19.     Plaintiff YOSHIMURA, at all times herein, was the managing member of PJY Enterprises, LLC, a Hawaii limited liability company ("PJY").  At all times relevant herein, PJY was the distributor, in the City and County of Honolulu, State of Hawaii, of Products Direct® Sweepstakes terminals ("PDS terminals").

20.     Plaintiff GENE SIMEONA, at all times herein, was the owner of a Hawaii corporation named GS Entertainment, Inc. ("GS").  At all times relevant herein, GS owned arcades named Lucky Touch 2 in the City and County of Honolulu, State of Hawaii.

21.     Plaintiff MILLER, at all times herein, was the owner of a Hawaii corporation named MIKE, INC. ("MIKE").  At all times relevant herein, MIKE owned arcades named Lucky Touch in the City and County of Honolulu, State of Hawaii.

22.     On September 27, 2012, Prosecutor KANESHIRO, in cooperation with the Honolulu Police Department, directed and conducted a seizure of seventy-seven (77) PDS terminals located in six separate game arcades operated by entities that were not owned or operated by any of the Plaintiffs.  These six game arcades and their owners and locations were:

> Winnerz Zone Ewa Beach - S L & G Investments, LLC, a Hawaii limited liability company; 91-896 Makule Rd., Ewa Beach, HI

Winnerz Zone Waikiki – WZ Waikiki Partners, LLC, a Hawaii limited
liability company; 2301 Kuhio Ave., Honolulu, HI

Winnerz Zone Pearl City – Lucky G Enterprises, Inc., a Hawaii corporation;
719 Kamehameha Hwy., Pearl City, HI

Winnerz Zone Ward – Lucky G Enterprises, Inc., a Hawaii corporation; 320
Ward Ave., Honolulu, HI

Winnerz Zone Wahiawa – WZ Wahiawa Partners, LLC, a Hawaii limited
liability company; 823 California Ave., Wahiawa, HI

Winnerz Zone Waipio – PMG Entertainments, LLC, a Hawaii limited
liability company; 94-1235 Ka Uka Blvd., Waipio, HI

After this September 27, 2012 seizure Plaintiff YOSHIMURA stated to the news

media that: "We're within the law.  We're not committing any crimes.  That's the

important thing for us."  Plaintiff YOSHIMURA was also critical of Prosecutor

KANESHIRO's actions regarding the PDS terminals.

23.    Two additional seizures of PDS terminals in game arcades followed

on December 13, 2012 and February 14, 2013 and seventy-five (75) PDS terminals

were seized on those two dates.  The seizures that occurred on December 13, 2012

were from five (5) separate arcades, four of them owned by GS and MIKE.  The

seizures that occurred on February 14, 2013 were from six (6) separate arcades,

five of them owned by GS and MIKE.  All of the employees that worked in the

game arcades subjected to seizures on these two dates were indicted in the FIRST

criminal indictment and the SECOND criminal indictment.  These arcades were

NOT associated with the arcades set forth in Paragraphs 22, 24, and 25 herein.

     24.    On or about May 8, 2013, Prosecutor KANESHIRO personally

assigned Defendant BRANCO to investigate several other arcades in the City and

County of Honolulu, focusing solely on the PDS terminals.  Defendant BRANCO,

acting pursuant to this investigatory assignment from Prosecutor KANESHIRO,

proceeded to conduct an undercover investigation at the following arcades, along

with their and their owners (at the time of the investigation) and locations:

> Lucky 777 – A & W Partnership, LLC, a Hawaii limited liability company; 1810 N. King St., Honolulu

> Winnerz Zone Waiakamilo – WZ Waiakamilo Partners, LLC, a Hawaii limited liability company; 727 Waiakamilo Rd., Honolulu

> Game Zone II – L.C.Y. Hawaii, LLC, a Hawaii limited liability company; 1750 Kalakaua Ave., Honolulu

> Game Zone – New World Group, Inc., a Hawaii corporation; 3221 Waialae Ave., Unit A-5, Honolulu

> Game Zone – New World Group, Inc., a Hawaii corporation; 3012 Waialae Ave., Honolulu (this arcade's name was later changed to Pure Luck, which is a trade name owned by Ken & Tina Investment, Inc., a Hawaii corporation)

> Bellagio Entertainment Center -  New World Group, Inc., a Hawaii corporation; 815-B Keeaumoku St., Honolulu

> Winning Zone II – Ha Kaneohe Partnerships, LLC, a Hawaii limited liability company; 1 N. King St., Honolulu

All of these undercover investigations were conducted solely by Defendant BRANCO, who then sent reports and memorandums directly to Prosecutor KANESHIRO, and at no time were any personnel from the Attorney General's Office or the Honolulu Police Department involved in Defendant BRANCO's undercover investigation.

25.     On or about August 14, 2013, twelve (12) PDS terminals were seized from a game arcade located at 3221 Waialae Ave., Unit A-5, Honolulu, HI  96816 (Game Zone).  The game arcade at 3221 Waialae Ave., Unit A-5 was owned and operated by New World Group, Inc., a Hawaii corporation.  The PDS terminals seized on that date were owned by New World Group, Inc.  The search warrant issued for 3221 Waialae Ave. was based upon undercover entries made into this arcade by Defendant BRANCO on May 21, 2013; May 23, 2013; June 5, 2013; June 22, 2013; June 26, 2013; and July 10, 2013.  In the fall of 2013, after 190 PDS terminals had been seized and held by the authorities, Plaintiff YOSHIMURA made a statement to Hawaii News Now about Prosecutor KANESHIRO, stating: "I'd like to publicly challenge Keith, to charge us or leave us alone and release the equipment he is holding."  Plaintiff YOSHIMURA further stated to Hawaii News Now: "I compare him to the gangster John Gotti wherein John didn't like somebody he would go in and shoot up the place and destroy everything in the business and walk away hoping that's the end of you.  In this case Keith comes in,

takes our equipment and claims he's doing it in conjunction with an ongoing investigation."

26.     Defendant BRANCO also made undercover entries into Lucky 777 at 1810 N. King St. (June 4, 2013; June 27, 2013; and July 11, 2013); into Winnerz Zone Waiakamilo at 727 Waiakamilo Rd.(June 6, 2013); into Game Zone II at 1750 Kalakaua Ave. (July 8, 2013, August 12, 2013); into Game Zone, which later changed its name to Pure Luck at 3012 Waialae Ave. (June 5, 2013; June 19, 2013; June 28, 2013; July 10, 2013; September 26, 2013; October 2, 2013; and October 8, 2013); into Winning Zone II at 1 N. King St. (May 22, 2013); and into Bellagio Entertainment Center at 815-B Keeaumoku St. (July 2, 2013).  In each of these undercover entries Defendant BRANCO prepared a report or memorandum that was sent to Prosecutor KANESHIRO and DPA KEALOHA, and in all of these undercover entries Defendant BRANCO acted without any assistance from the Honolulu Police Department or the Attorney General's Office.

27.     In response to the seizures described in Paragraph 22 above that occurred on September 27, 2012, a lawsuit was filed by PJY and others on October 12, 2012 in the First Circuit Court of the State of Hawaii, seeking a Declaratory Judgment, Injunctive Relief and Monetary Damages (the "State Complaint").  The Defendants in the State Complaint included Prosecutor Kaneshiro, Chief of the Honolulu Police Department Louis Kealoha, the Honolulu Police Department and

the City and County of Honolulu (collectively the "City Defendants").  The State

Complaint was removed to the United States District Court for the District of

Hawaii from the Circuit Court of the First Circuit, State of Hawaii, on October 26,

2012.  The federal district court action is entitled: *PJY Enterprises, LLC, et. al. vs.*

*Keith M. Kaneshiro, et. al.;* Civil No. 12-00577 (LEK-KSCRLP) (the "Federal

action").  As a direct result of the seizures that occurred on December 13, 2012 and

February 14, 2013 the plaintiffs in the Federal action sought leave for and were

allowed to file a Second Amended Complaint in the Federal action which added

additional claims, additional plaintiffs and additional defendants.  In the Second

Amended Complaint the Plaintiffs in this Complaint were all Plaintiffs in the

Second Amended Complaint in the Federal action.

28.    On April 30, 2014 the Honorable Leslie Kobayashi, the assigned

judge in the Federal action, entered an order granting the City Defendants motion

for partial summary judgment in the Federal action.

29.    On May 1, 2014, a state grand jury convened in the Circuit Court of

the First Circuit indicted Plaintiff YOSHIMURA, Plaintiff GENE SIMEONA,

Plaintiff MILLER, Plaintiff DANLEY, Plaintiff CANENCIA, Plaintiff HAINA,

Plaintiff MADALI, Plaintiff CLAYTON SIMEONA and Alexander Alejandro in

that matter entitled: *State of Hawai`i vs. Tracy T. Yoshimura, et. al.*, Cr. No. 14-1-

0717 (the "FIRST criminal indictment").  The operators of the arcades from which

seizures occurred on September 27, 2012 and August 14, 2013 as set forth above, were not indicted as part of this FIRST criminal indictment, nor were the operators of other arcades described in Paragraphs 24 and 26 of this Complaint part of this FIRST criminal indictment.

30.   DPA KEALOHA was assigned by Prosecutor KANESHIRO to review the evidence in the FIRST criminal indictment and present the case to the Oahu Grand Jury.  The decision to present the FIRST criminal indictment to the Oahu Grand Jury was made by Prosecutor KANESHIRO.  The total bail requested by DPA KEALOHA exceeded $950,000.00 on the defendants in the FIRST criminal indictment, and extraordinary amount considering that none of those defendants were charged with Class A felonies.

31.   On information and belief, Prosecutor KANESHIRO hired DPA KEALOHA as a deputy prosecuting attorney.  On information and belief, Prosecutor KANESHIRO appointed DPA KEALOHA as the head of the Career Criminal Unit of the Office of the Prosecuting Attorney.  On information and belief, Prosecutor KANESHIRO assigned DPA KEALOHA to investigate and prosecute the FIRST criminal indictment.  Prosecutor KANESHIRO also hired Defendant BRANCO as an investigator.  All of these decisions were made by Prosecutor KANESHIRO in his administrative capacity as Prosecuting Attorney for the City and County of Honolulu.  Under §8-105 of the Honolulu City Charter

Prosecutor KANESHIRO is empowered to appoint deputies and other necessary staff.  DPA KEALOHA was appointed by Prosecutor KANESHIRO pursuant to this provision in the Honolulu City Charter.  The powers set forth in §8-105 of the Honolulu City Charter are separate and apart from those powers given to Prosecutor KANESHIRO in §8-104 of the Honolulu City Charter, the latter provision setting for powers that Prosecutor KANESHIRO has in reference to prosecuting offenses in court and instituting proceedings in court and making appearances in criminal cases.

32.     The presentation of evidence before the grand jury in the FIRST criminal indictment was done by DPA KEALOHA and another deputy prosecuting attorney and her presentation resulted in the issuance of an indictment by the grand jury on May 1, 2014.  At the grand jury proceedings in the FIRST criminal indictment on May 1, 2014, DPA KEALOHA presented the testimony of Defendant BRANCO, an investigator with the Office of the Prosecuting Attorney, and Lt. Aaron Young of the Honolulu Police Department, alleging that Plaintiff YOSHIMURA was the owner of businesses with the following trade names: Bellagio, the Game Zone, the Game Zone II, Panico (phonetic) Promotions, Lucky 777, Pure Luck, and New World Group.  Bellagio, Game Zone, Game Zone II, Lucky 777, Pure Luck and New World Group were arcades or businesses which

Defendant BRANCO entered his undercover capacity as set forth in Paragraphs 24, 25 and 26 herein.

33.     At the time of Defendant BRANCO's undercover investigation, Plaintiff YOSHIMURA was NOT the owner of businesses with the following trade names: Bellagio, the Game Zone, the Game Zone II, Panico (phonetic) Promotions, Lucky 777, Pure Luck, and New World Group, and this was proven by records on file with the Dept. of Commerce and Consumer Affairs of the State of Hawaii. DPA KEALOHA filed a Declaration with the First Circuit Court in the First criminal indictment on October 9, 2014, stating that she: "was not aware at the time of the Grand Jury presentation that Tracy Yoshimura was not the owner of record on file with the DCCA of: New World Group d/b/a Gamezone; the Game Zone, Game Zone II, Lucky 777, and Pure Luck."  Thus DPA KEALOHA admitted that Plaintiff YOSHIMURA was not the owner of record on file with the DCCA of: New World Group d/b/a Gamezone; the Game Zone, Game Zone II, Lucky 777, and Pure Luck, which is contrary to the testimony that was presented in the grand jury proceedings, specifically the testimony of Defendant BRANCO.

34.     On June 12, 2014 Plaintiff YOSHIMURA, in the FIRST criminal indictment, filed a Motion to Disqualify the Department of the Prosecuting Attorney ("Motion to Disqualify").  This motion was joined in by Plaintiffs GENE SIMEONA, MILLER, DANLEY, CANENCIA, HAINA, MADALI, CLAYTON

SIMEONA and Alexander Alejandro. The hearing on this motion was originally scheduled for June 17, 2014 and was rescheduled for July 7, 2014, and then was continued to September 2, 2014.

35. On September 2, 2014 Plaintiff YOSHIMURA's attorney in the FIRST criminal indictment filed a Declaration of Keith M. Kiuchi as a supplement to the Motion to Disqualify. This declaration raised the question of the ownership of New World Group, Inc., one of the entities that Plaintiff YOSHIMURA was alleged to have owned and/or operated, which the declaration stated was actually owned and operated by a woman named Soon Yun. The declaration further stated that DPA KEALOHA was fully aware that New World Group, Inc. was not owned by Plaintiff YOSHIMURA but was owned by Soon Yun. New World Group, Inc. owned that arcade described in Paragraph 25 herein.

36. On September 2, 2014 the court held a status conference instead of a hearing on the Motion to Disqualify. At this status conference DPA KEALOHA stated that she intended to defend against the Motion to Disqualify and would be filing declarations contesting the statements in the Motion to Disqualify. Plaintiff YOSHIMURA's attorney and the attorneys for the other defendants in the FIRST criminal indictment stated at this status conference that motions would be filed to dismiss the FIRST criminal indictment based on excessive hearsay, insufficient evidence, failure to present exculpatory evidence, and misrepresentation of the

evidence.  The hearing date on the Motion to Disqualify and the new motions was then set for October 14, 2014.

37.     On September 26, 2014 Plaintiff YOSHIMURA's attorney attorneys for two other defendants in the FIRST criminal indictment filed motions to dismiss the FIRST criminal indictment for various reasons.  The motion to dismiss filed by Plaintiff YOSHIMURA's attorney in the FIRST criminal indictment included a September 25, 2014 Declaration of Keith M. Kiuchi which further detailed that Plaintiff YOSHIMURA did not own or operate the businesses he was alleged to have operated in the FIRST criminal indictment to have owned and/or operated. On October 6, 2014, DPA KEALOHA filed a motion to continue the hearings on the various motions and asked for additional time to properly research and respond to the motions.  The court in the FIRST criminal indictment denied this motion to continue these hearings and set the motions for hearing on October 14, 2014.

38.     Plaintiffs assert, based upon the foregoing, that DPA KEALOHA knowingly or intentionally presented false evidence at the grand jury proceedings to mislead the grand jury regarding the ownership of businesses with the following trade names: Bellagio, Game Zone, Game Zone II, Panico (phonetic) Promotions, Lucky 777, Pure Luck, and New World Group.

39.     On October 9, 2014 the Office of the Prosecuting Attorney presented to the court in the FIRST criminal indictment an Ex Parte Motion to Nolle

Prosequi Without Prejudice ("Motion to Nolle Prosequi").  The court in the FIRST

criminal indictment approved the State's Motion to Nolle Prosequi.

40.     On October 14, 2014 Plaintiff's attorney in the FIRST criminal

indictment filed a Motion to Reconsider Order Granting State of Hawaii's Ex Parte

Motion to Nolle Prosequi Without Prejudice ("Reconsideration Motion").  A

hearing on this Reconsideration Motion was set for November 18, 2014.

41.     The court in the FIRST criminal indictment subsequently denied the

Reconsideration Motion in an oral decision issued on November 21, 2014 and a

written order dated and filed on December 1, 2014.  Thus the FIRST criminal

indictment was dismissed without prejudice.

42.     On January 28, 2016 a state grand jury convened in the Circuit Court

of the First Circuit indicted Plaintiffs DANLEY, CANENCIA, HAINA, MADALI,

CLAYTON SIMEONA and Alexander Alejandro in that matter entitled: ***State of

Hawai`i vs. Gary G. Danley, Jr., et. al.***, Cr. No. 16-1-0145 (the "SECOND

criminal indictment").  These six individuals were each charged with Promoting

Gambling in the First Degree under HRS §712-1221(1)(c) and Unlawful

Ownership or Operation of a Business under HRS §842-2(3) and 842-3.  The

presentation to the grand jury was made by DPA KEALOHA.

43.     In this SECOND criminal indictment Plaintiff CLAYTON SIMEONA

was charged with these criminal offenses for acting as a cashier at the Lucky

Touch 2 location at Stadium Mall in Honolulu.  However at the grand jury proceeding on January 28, 2016 DPA KEALOHA failed to inform the grand jury that the State's expert, who testified at the grand jury proceedings in the SECOND criminal indictment, did NOT examine any PDS machines from the Stadium Mall location.  In all 22 PDS machines were seized on February 14, 2013 from five (5) different locations, but no PDS machines were seized from the Stadium Mall location and DPA KEALOHA failed to disclose this to the grand jury on the SECOND criminal indictment.

44.     Plaintiffs DANLEY, CANENCIA, HAINA, MADALI, and CLAYTON SIMEONA were all arraigned on February 4, 2016 in the SECOND criminal indictment and an initial trial setting was set for April 4, 2016.  All of these Plaintiffs formally requested discovery shortly after they were arraigned, meaning requesting police reports and other reports in the possession of the Office of the Prosecuting Attorney.  This includes but is not limited to any expert witness reports.

45.     The City did not produce any expert witness report(s) to any of these Plaintiffs or Alexander Alejandro until July 13, 2016.  That expert witness report, which was prepared by Richard LaBrocca, was dated April 15, 2016.  The expert witness report of Mr. LaBrocca was not produced until this report was demanded in a separate criminal indictment against Plaintiffs YOSHIMURA, GENE

SIMEONA and MILLER.  Plaintiffs assert that the Prosecutor KANESHIRO and the Doe Defendants intentionally delayed the release of Mr. LaBrocca's expert witness report to Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA and MADALI.

46.     Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA and MADALI all had no ownership in any of the six (6) arcades that were subject to the seizures on December 13, 2012 and February 14, 2013.  These Plaintiffs all worked as cashiers in these six (6) arcades which had separate owners.

47.     On February 24, 2016 a state grand jury convened in the Circuit Court of the First Circuit indicted Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER in that matter entitled: ***State of Hawai`i vs. Tracy T. Yoshimura, et. al.***, Cr. No. 16-1-0288 (the "THIRD criminal indictment").  These three individuals were each charged with Promoting Gambling in the First Degree under HRS §712-1221(1)(c) and Unlawful Ownership or Operation of a Business under HRS §842-2(3) and 842-3.  The presentation to the grand jury was made by DPA KEALOHA.

48.     At the grand jury proceeding in the THIRD criminal indictment Defendant BRANCO testified that Plaintiff YOSHIMURA owned businesses known as Bellagio Entertainment Center (825 Keeaumoku St.), Game Zone which later became Pure Luck (3012 Waialae Ave.), and Game Zone (3221 Waialae Ave.) at the time of Defendant BRANCO's investigation into activities at these

three arcades as described in Paragraphs 24, 25, and 26 herein.  Plaintiff YOSHIMURA never owned any of these businesses and the trade names for these businesses were transferred to Plaintiff YOSHIMURA without his knowledge on November 1, 2013, which is AFTER the dates of Defendant BRANCO's investigation.  Defendant BRANCO wrote a report to Prosecutor KANESHIRO and DPA KEALOHA in which he specifically stated the entities that owned these three arcades, and none of the entities were connected to Plaintiff YOSHIMURA. DPA KEALOHA knew that Plaintiff YOSHIMURA did not own these businesses and that the trade names for these businesses were transferred to Plaintiff YOSHIMURA without his knowledge on November 1, 2013.  Despite having this knowledge, DPA KEALOHA allowed Defendant BRANCO to falsely testify before the grand jury in the THIRD criminal indictment about Plaintiff YOSHIMURA's alleged ownership of these three arcades.

49.    At the grand jury in the THIRD criminal indictment, despite having this knowledge DPA KEALOHA repeated the same malicious conduct that she committed in the FIRST indictment by intentionally suborning injury by asking Defendant BRANCO questions that led him to provide false testimony before the grand jury regarding Plaintiff YOSHIMURA's alleged ownership of these three arcades.

50.     DPA KEALOHA represented the Office of the Prosecuting Attorney

in a Motion for Return of Property Under Rule 41(e) of the Hawaii Rules of Penal

Procedure in the First Circuit Court of the State of Hawaii as a special proceeding

("Rule 41(e) motion").  This Rule 41(e) motion is entitled ***New World Group, Inc.***

***v. Dept. of the Prosecuting Attorney***, S.P. No. 13-1-00455, and was filed on or

about September 6, 2013 and was brought for the return of PDS terminals seized

by the Office of the Prosecuting Attorney on or about August 14, 2013 at 3221

Waialae Ave.  In that Rule 41(e) motion New World Group, Inc. submitted: (a) a

Declaration of Soon Yun stating that she was the President of New World Group,

Inc., (b) a property receipt for the PDS terminals made out by the Office of the

Prosecuting Attorney to Soon Yun, and (c) a letter from the landlord of the game

arcade at 3221 Waialae Ave., Unit A-5 to Soon Yun dated August 29, 2013

terminating their lease in part because of the seizure of the PDS terminals.

51.     DPA KEALOHA defended against the Rule 41(e) motion and was

thus aware of the three documents described in Paragraph 50 above that clearly

established that Soon Yun was the owner, officer and director of New World

Group, Inc. and that Plaintiff YOSHIMURA was not involved in the ownership or

operation of New World Group, Inc.  Even having this knowledge DPA

KEALOHA proceeded with the THIRD criminal indictment alleging that Plaintiff

YOSHIMURA owned the arcade at 3221 Waialae Ave.  DPA KEALOHA was

21

aware that Plaintiff YOSHIMURA had no ownership in the arcade at 3221

Waialae Ave. based upon a memorandum written from Defendant BRANCO to

DPA KEALOHA and Prosecutor KANESHIRO.

52. On October 27, 2016, the criminal charges against Plaintiffs

YOSHIMURA, GENE SIMEONA and MILLER in the THIRD criminal

indictment were dismissed upon filing of that: Findings of Fact, Conclusions of

Law, and Order Granting Defendant Yoshimura's Motion to Dismiss Indictment

for Violation of Rule 48 of the Hawaii Rules of Penal Procedure (the

"YOSHIMURA Dismissal Order").  The YOSHIMURA Dismissal Order was not

appealed from by the Office of the Prosecuting Attorney.  The YOSHIMURA

Dismissal Order dismissed all charges against Plaintiffs YOSHIMURA, GENE

SIMEONA and MILLER with prejudice.

53. On April 5, 2017, the criminal charges against Plaintiffs DANLEY,

CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI in the SECOND

criminal indictment were dismissed upon filing of that: (a) Findings of Fact,

Conclusions of Law and Order Granting in Part and Denying in Part Defendant

Gary G. Danley Jr's Motion to Dismiss Indictment Due to Prosecutorial

Misconduct, and (b) Findings of Fact and Conclusions of Law and Order Granting

in Part and Denying in Part Defendant Gary G. Danley, Jr.'s Motion to Dismiss

Indictment for Insufficiency of the Evidence (the "DANLEY Dismissal Orders").

22

The DANLEY Dismissal Orders were not appealed from by the Office of the Prosecuting Attorney.  The DANLEY Dismissal Orders collectively dismissed all charges against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI with prejudice.  On April 12, 2017 an order entered entitled: Findings of Fact, Conclusions of Law and Order Granting Defendant Desiree U. Haina's Motion to Dismiss Charges for Violation of HRPP Rule 48 and Speedy Trial Rights (the "HAINA Dismissal Order").  The HAINA Dismissal Order also dismissed the SECOND criminal indictment based upon HRPP Rule 48 and Speedy Trial Rights as to Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI with prejudice.  The DANLEY Dismissal Orders and the HAINA Dismissal Order were not appealed from by the Office of the Prosecuting Attorney.

54.    Based upon the Orders described in Paragraphs 48 and 49 herein, ALL criminal charges have been dismissed against all Plaintiffs herein with prejudice.

**COUNT I**
**(42 U.S.C. §1983 Civil Rights Claim for Retaliatory Prosecution by ALL Plaintiffs Against Prosecutor KANESHIRO, Defendants DPA KEALOHA, BRANCO and CITY)**

55.    The allegations contained in paragraphs 1 through 54 herein are realleged and incorporated herein by reference.

56.     Plaintiff YOSHIMURA has made statements critical of Prosecutor KANESHIRO regarding Prosecutor KANESHIRO's seizure of the PDS terminals, including but not limited to statements like: "We're within the law.  We're not committing any crimes.  That's the important thing for us."  Plaintiff YOSHIMURA has also accused Prosecutor KANESHIRO's actions as being a form of harassment and has publicly challenged Prosecutor KANESHIRO as set forth in Paragraph 25 herein.  Plaintiff YOSHIMURA's statements about Prosecutor KANESHIRO are protected free speech under the First Amendment to the United States Constitution and the applicable provision of the Hawaii Constitution.

57.     Plaintiffs were all plaintiffs in the Federal action against Prosecutor KANESHIRO and others, which asserted claims for monetary damages and civil rights claims against Prosecutor KANESHIRO and others.  The owners of the six arcades described in Paragraph 22 herein were initially plaintiffs in the Federal action, but the owners of those six arcades withdrew their claims for monetary damages against Prosecutor KANESHIRO and others when the Second Amended Complaint was filed on June 25, 2013, and in 2014 the owners of the six arcades described in Paragraph 22 withdrew all of their claims.  The filing of the Federal action, both in the initiation of the Federal action and subsequent pleadings (including but not limited to the Second Amended Complaint), are protected by the

First Amendment of the United States Constitution and the applicable provision of the Hawaii Constitution in that the right to petition the Government for a redress of grievances shall not be abridged.  Plaintiffs thus have the constitutional right to file a civil suit that includes Prosecutor KANESHIRO as a defendant.

58.     The Office of the Prosecuting Attorney never filed any criminal charges against the owners or employees of the numerous "OTHER" arcades that were the subject of the September 27, 2012 seizures (Par. 22) or the owners or employees of any of the numerous "OTHER" arcades that were the subject of the undercover investigation instigated by Prosecutor KANESHIRO with the assistance of Defendant BRANCO as described in Paragraphs 24, 25, and 26 herein, with the exception that Plaintiff YOSHIMURA was wrongfully accused by the Office of the Prosecuting Attorney in the FIRST criminal indictment and then again in the THIRD criminal indictment of ownership for three arcades described in Paragraphs 24, 25, and 26 herein.  At the time of both the FIRST criminal indictment and the THIRD criminal indictment, DPA KEALOHA and Prosecutor KANESHIRO were both in possession of reports prepared by Defendant BRANCO, which included attachments of documents he admittedly retrieved from the Dept. of Commerce and Consumer Affairs (DCCA) as part of his investigation, which clearly showed that Plaintiff YOSHIMURA did not own the arcades described in Paragraphs 24, 25, and 26 herein.  In the FIRST criminal indictment,

Plaintiff YOSHIMURA was charged, in Counts 247 through 257 of the indictment, with the possession of gambling machines. The dates alleged in Counts 247 through 257 match with entries made by Defendant BRANCO into arcades that again, he knew that Plaintiff YOSHIMURA did not own or operate and thus Defendants KANESHIRO, KEALOHA and BRANCO all knowingly indicted Plaintiff YOSHIMURA for possession of gambling machines that they KNEW he did not own.

59.    The FIRST, SECOND and THIRD criminal indictment are a reprisal against Plaintiffs for both Plaintiff YOSHIMURA's protected speech and the Plaintiffs right to petition the Government for a redress of grievances by filing the Federal action. Prosecutor KANESHIRO singled out the Plaintiffs herein for criminal prosecution because: (a) these Plaintiffs maintained the Federal action against Prosecutor KANESHIRO and others where the owners of the six arcades described in Paragraph 22 withdrew their claims, and (b) Plaintiff YOSHIMURA was vocal in his criticism of Prosecutor KANESHIRO. Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO all participated in this reprisal, which constitutes retaliatory prosecution, depriving all Plaintiffs of their constitutional rights as set forth above. Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO are not entitled to absolute immunity for this reprisal because, in part, they have specifically engaged in investigatory activities on their

own, as described in Paragraphs 24, 25, and 26 herein.  Defendant BRANCO

engaged in this investigatory activity at the direction of Prosecutor KANESHIRO

and Defendant BRANCO then reported the findings of his investigatory activities

directly to Prosecutor KANESHIRO and DPA KEALOHA.

  60. At the time that Prosecutor KANESHIRO, DPA KEALOHA and

Defendant BRANCO participated in this retaliatory prosecution, they did so under

the color of state law, in violation of 42 U.S.C. § 1983.

  61. The actions of Prosecutor KANESHIRO, DPA KEALOHA and

Defendant BRANCO constituted a retaliatory prosecution, violating Plaintiffs'

constitutional rights, because only these Plaintiffs and employees of Plaintiffs

GENE SIMEONA and MILLER were ever charged with criminal offenses relating

to these investigations and seizures.  By contrast, the operators or owners of the

arcades described in Paragraphs 22, 24, 25, and 26 were never charged despite

having been engaged in activities identical to that of the Plaintiffs in this case.  By

example, Plaintiff YOSHIMURA was charged in Counts 42 – 240 with Gambling

in the First Degree and the dates of each of these charges coincide with shipping

invoices for PDS machines from Pace-O-Matic to owners of several arcades.

These shipping invoices, which Defendants KANESHIRO and KEALOHA

obtained from discovery produced in the Federal action, show shipments of PDS

machines to entities other than the entities owned by Plaintiffs MILLER and

GENE SIMEONA and yet only Plaintiffs MILLER and GENE SIMEONA were

included in the FIRST and THIRD criminal indictments.   Thus there exists a

causal connection between the Plaintiffs filing and participation in the Federal

action and the reprisal exacted by Prosecutor KANESHIRO, DPA KEALOHA and

Defendant BRANCO.  Prosecutor KANESHIRO, as a city official, made a policy

determination to prosecute the Plaintiffs but not the owners or operators of the

arcades described in Paragraphs 22, 24, 25 and 26 herein.  DPA KEALOHA and

Defendant BRANCO both supported and participated in Prosecutor

KANESHIRO's decisions to make these policy determinations to prosecute the

Plaintiffs and not the other owners or operators.

  62. There was no probable cause to establish that Plaintiff YOSHIMURA

owned or operated any of the three arcades that he was indicted for in the THIRD

criminal indictment and to the contrary, Prosecutor KANESHIRO, DPA

KEALOHA and Defendant BRANCO were all aware, because of reports written

by Defendant BRANCO, that persons other than Plaintiff YOSHIMURA owned

and operated the three arcades Plaintiff YOSHIMURA was indicted for in the

THIRD criminal indictment.  There was also no probable cause to establish that

Plaintiff YOSHIMURA owned or operated any of the arcades that he was indicted

for in the FIRST criminal indictment, and the reports done by Defendant

BRANCO admit that Plaintiff YOSHIMURA did not own or operate any of the

arcades that he was indicted for owning or operating in the FIRST criminal indictment or for PDS machines he was charged with possessing.  The reports written by Defendant BRANCO and sent to Prosecutor KANESHIRO and DPA KEALOHA were withheld from both the Plaintiffs and the court during the FIRST criminal indictment, and were withheld from the grand jury in the THIRD criminal indictment.

63.     There was no probable cause to establish that Plaintiffs DANLEY, CANENCIA, HAINA, MADALI and CLAYTON SIMEONA owned or were part of an unlawful business as defined under HRS § 842-2(3) and § 842-3.

64.     There was no probable cause to establish that Plaintiff CLAYTON SIMEONA committed any criminal offense, given that no PDS terminals were seized from the store at Stadium Mall where he worked and that this fact was concealed from the grand jury by DPA KEALOHA.

65.     Plaintiffs assert that there may be other facts, both alleged above and which will be determined upon further discovery, which will be presented at the trial in this matter that will also establish the retaliatory prosecution committed by Prosecutor KANESHIRO, DPA KEALOHA, and Defendant BRANCO, which is a violation under 42 U.S.C. § 1983 based upon the United States Supreme Court rulings in *Bivens v. Six Unknown Fed. Narcotics Agents*, and *Hartman v. Moore*. Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO all knew

that their actions, as described herein, would violate the constitutional rights of the Plaintiffs.

66.     Prosecutor KANESHIRO made the decision to prosecute Plaintiffs and not the other owners and operators of other arcades described herein as a policymaker of the CITY, being that he is the Prosecuting Attorney of the CITY. The CITY is liable to the Plaintiffs under this count of the Complaint because the decision of Prosecutor KANESHIRO was made by a decisionmaker who possessed final authority to establish municipal policy in regards to the prosecution of the Plaintiffs and the decision not to prosecute others.  Even the single decision made by Prosecutor KANESHIRO constitutes an act of official government policy by the CITY.

67.     As a direct and proximate result of the retaliatory prosecution committed by Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO, all of the Plaintiffs incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, these Plaintiffs also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award.  The CITY is liable for these damages incurred by Plaintiffs because Prosecutor KANESHIRO's decisions as to the prosecution of the Plaintiffs was made by a decisionmaker that possessed final authority to establish City policy with respect to the actions he ordered.

## COUNT II
### (42 U.S.C. §1983 Civil Rights Claim for Violation of Equal Protection Clause Based on Selective Enforcement by ALL Plaintiffs Against Prosecutor KANESHIRO, Defendants KEALOHA, BRANCO and CITY)

68.     The allegations contained in paragraphs 1 through 67 herein are realleged and incorporated herein by reference.

69.     Plaintiffs GENE SIMEONA and MILLER owned and operated arcades and based upon their ownership they were indicted in the FIRST criminal indictment and the THIRD criminal indictment based upon this ownership. Plaintiffs DANLEY, CANENCIA, HAINA, MADALI, CLAYTON SIMEONA and any other defendants indicted in the FIRST criminal indictment and the SECOND criminal indictment all worked as cashiers in the arcades operated by Plaintiffs GENE SIMEONA and MILLER and they were indicted in the FIRST criminal indictment and the SECOND criminal indictment based upon their work as cashiers.  Plaintiff YOSHIMURA was the distributor of the PDS terminals and his company sold PDS terminals to the arcades owned by Plaintiffs GENE SIMEONA and MILLER and he was also indicted in the FIRST criminal indictment and the THIRD criminal indictment.

70.     That the owners and employees of the arcades mentioned in Paragraph 22 herein, which were six separate arcades, were never indicted by the CITY despite having operated and owned PDS terminals in these six separate arcades that were seized by the CITY.  The owners of the arcades mentioned in Paragraph

22 herein were not indicted despite the fact that Plaintiff YOSHIMURA was indicted for arranging the sale of PDS machines to the owners of the arcades mentioned in Paragraph 22 herein.  The owners of the arcades mentioned in Paragraph 22 herein withdrew their claim for monetary damages in the Federal action in the filing of the Second Amended Complaint on June 25, 2013, and later in 2014 withdrew all of their claims in the Federal action.

71.     The owners and employees of the arcades mentioned in Paragraphs 24, 25, and 26 herein were never indicted by the CITY despite all of these arcades having PDS terminals in these arcades and where the investigation into these arcades was conducted by Defendant BRANCO into the PDS terminals, and that investigation was not conducted with the assistance or the cooperation of the Attorney General's Office nor the Honolulu Police Department.  Instead, DPA KEALOHA and Prosecutor KANESHIRO, with the assistance of Defendant BRANCO, charged Plaintiff YOSHIMURA in the FIRST criminal indictment and the THIRD criminal indictment for owning or operating the businesses set forth in Paragraphs 24, 25, and 26 herein, where that allegation was false.

72.     Thus the Plaintiffs here were selectively treated by Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO in that they were subjected to criminal prosecution where the owners and employees of the arcades set forth in Paragraphs 22, 24, 25, and 26 herein were not subjected to criminal

prosecution.  Instead, DPA KEALOHA and Defendant BRANCO falsely asserted before the grand jury on the THIRD criminal indictment that Plaintiff YOSHIMURA owned three of the arcades set forth in Paragraphs 24, 25, and 26.

73.     The selective treatment of Plaintiffs by Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO was motivated by an intention to discriminate on the basis of impermissible considerations, in this case specifically to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure Plaintiffs.  Specifically, Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO singled out Plaintiffs because: (a) they filed the Federal action against Prosecutor KANESHIRO and other defendants and did not withdraw their claims, (b) Plaintiffs DANLEY, CANENCIA, HAINA, MADALI and CLAYTON SIMEONA all worked for arcades owned by Plaintiffs GENE SIMEONA and MILLER, (c) Plaintiff YOSHIMURA had criticized Prosecutor KANESHIRO in the media as set forth above, and (d) Plaintiffs were part of a group that insisted that their actions were legal.  Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO all had an improper motive when they singled out Plaintiffs.

74.     The similarity in circumstances between the arcades described in Paragraphs 22, 24, 25, and 26 herein, and the arcades owned by Plaintiffs GENE SIMEONA and MILLER where Plaintiffs DANLEY, CANENCIA, HAINA,

CLAYTON SIMEONA and MADALI worked (specifically the similarity being that they all had PDS terminals in the arcades), and their difference in treatment (in that Plaintiffs herein were indicted but no owners, operators or employees from the arcades described in Paragraphs 22, 24, 25, and 26 were indicted), are sufficient to exclude the possibility that Prosecutor KANESHIRO, DPA KEALOHA, and Defendant BRANCO acted on the basis of a mistake.  Prosecutor KANESHIRO and DPA KEALOHA also did not file criminal charges against numerous other operators in the City and County of Honolulu that were operating "sweepstakes" machines that were similar in nature to the PDS machines, as they selectively enforced the laws only against Plaintiffs.

75.     Plaintiffs assert that there may be other facts, both alleged above and which will be determined upon further discovery, which will presented at the trial in this matter that will also establish that they were singled out and thus Prosecutor KANESHIRO, DPA KEALOHA, and Defendant BRANCO all violated the Equal Protection rights of Plaintiffs based upon selective enforcement, which is a violation under 42 U.S.C. § 1983.

76.     Prosecutor KANESHIRO made the decision to prosecute Plaintiffs and not the other owners and operators of other arcades described herein, as a policymaker of the CITY, being that he is the Prosecuting Attorney of the CITY. The CITY is liable to the Plaintiffs under this count of the Complaint because the

decision of Prosecutor KANESHIRO was made by a decisionmaker who possessed final authority to establish municipal policy in regards to the prosecution of the Plaintiffs and the decision not to prosecute others.  Even the single decision made by Prosecutor KANESHIRO constitutes an act of official government policy by the CITY.

77.     As a direct and proximate result of Prosecutor KANESHIRO, DPA KEALOHA and Defendant BRANCO violating the Equal Protection rights of Plaintiffs based upon selective enforcement, all of the Plaintiffs incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, these Plaintiffs also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award. The CITY is liable for these damages incurred by Plaintiffs because Prosecutor KANESHIRO's decisions as to the prosecution of the Plaintiffs was made by a decisionmaker that possessed final authority to establish City policy with respect to the actions he ordered.

**COUNT III**
**(State Claim for Initiation of Malicious Prosecution – Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA and MADALI Against Defendants KEALOHA and CITY)**

78.     The allegations contained in paragraphs 1 through 77 herein are realleged and incorporated herein by reference.

79.     The SECOND criminal indictment against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI has been terminated in favor their favor as all charges in this indictment have been dismissed WITH prejudice.

80.     The SECOND criminal indictment against Plaintiffs was instituted without probable cause against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI as to any allegation that they owned or were part of an unlawful business as defined under HRS § 842-2(3) and § 842-3.

81.     The SECOND criminal indictment against Plaintiff CLAYTON SIMEONA was also instituted without probable cause both as to the charge under HRS § 842-2(3) and § 842-3 AND the charge of Promoting Gambling in the First Degree.

82.     DPA KEALOHA was specifically aware that the charges against these Plaintiffs in the SECOND criminal indictment were instituted without probable cause because: (a) DPA KEALOHA knew that Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI were cashiers in separate locations and that there was no continuity of structure and personnel to show that they were functioning as a continuing unit.

82.     DPA KEALOHA was specifically aware that the charges against Plaintiff CLAYTON SIMEONA in the SECOND criminal indictment was

instituted without probable cause because she concealed from the grand jury in the SECOND criminal indictment that no PDS machines were seized from the Stadium Mall location where Plaintiff CLAYTON SIMEONA worked as a cashier and despite knowing this DPA KEALOHA created the unfair inference to the grand jury in the SECOND criminal indictment that Plaintiff CLAYTON SIMEONA worked at an arcade where a PDS machine had been seized and examined by the expert retained by the Office of the Prosecuting Attorney.

83.     DPA KEALOHA acted with malice in the initiation of the SECOND criminal indictment proceedings against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI before the grand jury.  DPA KEALOHA acted with malice because: (a) she proceeded to indict these Plaintiffs under HRS § 842-2(3) and § 842-3 despite knowing that these Plaintiffs were cashiers had no ownership in any of the businesses and that they were not part of an organization with any continuity of structure, (b) she knew that CLAYTON SIMEONA worked at an arcade, Stadium Mall, where no PDS machines were seized, (c) because the Office of the Prosecuting Attorney intended to offer these Plaintiffs plea bargains to dismiss these charges in return for testimony against Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER, (d) she asked for excessive bail amounts to be posted by all Plaintiffs with the full intention of putting all Plaintiffs in a financially disadvantageous position, and (e) because

37

these Plaintiffs were only indicted because they were all plaintiffs in the Federal action.  These Plaintiffs asserts that there may be other facts, both alleged above and which will be determine upon further discovery, which will presented at the trial in this matter that will also establish DPA KEALOHA's malice.

84.    Based upon the foregoing DPA KEALOHA is liable to Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI under the tort of malicious prosecution in initiating the SECOND criminal indictment against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI.

85.    Because DPA KEALOHA is an employee of the City, the City is responsible for their actions under the theory of respondeat superior and thus has liability for her actions under this count of the Complaint.

86.    As a proximate result of the malicious prosecution of Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI by initiating the SECOND criminal indictment, Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, these Plaintiffs also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award.

**COUNT IV**
**(State Claim of Initiation of Malicious Prosecution – Plaintiff YOSHIMURA Against Defendants KEALOHA and CITY)**

87.     The allegations contained in paragraphs 1 through 86 herein are realleged and incorporated herein by reference.

89.     The THIRD criminal indictment against Plaintiff YOSHIMURA has been terminated in his favor as all charges in this indictment have been dismissed WITH prejudice.

90.     The THIRD criminal indictment against Plaintiff YOSHIMURA was instituted without probable cause as to all charges against Plaintiff YOSHIMURA in that indictment, but especially as to the allegations that Plaintiff YOSHIMURA owned or was employed by those businesses with the trade names: New World Group d/b/a Gamezone; the Game Zone, Game Zone II, Bellagio Entertainment Center, and Pure Luck.

91.     DPA KEALOHA was specifically aware that any allegation in the SECOND criminal indictment that Plaintiff YOSHIMURA owned or was employed by those businesses with the trade names: New World Group d/b/a Gamezone; the Game Zone, Game Zone II, Bellagio Entertainment Center, and Pure Luck was false based upon her involvement in the Rule 41(e) motion and her involvement in the FIRST criminal indictment.  Because DPA KEALOHA knew that the aforesaid allegations regarding Plaintiff YOSHIMURA were false she

39

acted with malice in the initiation of the criminal indictment proceedings against Plaintiff YOSHIMURA before the grand jury and she further acted with malice against Plaintiff YOSHIMURA in retaliating against him because he was a plaintiff in the Federal action.  Plaintiff YOSHIMURA asserts that there may be other facts, both alleged above and which will be determine upon further discovery, which will presented at the trial in this matter that will also establish DPA KEALOHA's malice.

92.     Based upon the foregoing DPA KEALOHA is liable to Plaintiff YOSHIMURA under the tort of malicious prosecution in initiating the THIRD criminal indictment against Plaintiff YOSHIMURA.

93.     Because DPA KEALOHA is an employee of the City, the City is responsible for their actions under the theory of respondeat superior and thus has liability for her actions under this count of the Complaint.

94.     As a proximate result of the malicious prosecution of Plaintiff YOSHIMURA by initiating the THIRD criminal indictment, Plaintiff YOSHIMURA incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, Plaintiff YOSHIMURA also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award.

## COUNT V
### (State Claim of Maintaining a Malicious Prosecution – Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA and MADALI Against Defendants KEALOHA, Prosecutor KANESHIRO and CITY)

95.     The allegations contained in paragraphs 1 through 94 herein are realleged and incorporated herein by reference.

96.     The SECOND criminal indictment against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI has been terminated in their favor because it was dismissed WITH prejudice.

97.     The SECOND criminal indictment against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI was maintained maliciously because DPA KEALOHA, Prosecutor KANESHIRO, the Doe Defendants and the CITY intentionally delayed the release of the expert witness report to these Plaintiffs.  Prosecutor KANESHIRO was involved as evidenced by him personally preparing and filing a Memorandum in opposition to these Plaintiffs' motion to dismiss that set forth facts which show that he participated in delaying the release of the expert witness report to these Plaintiffs.  The Doe Defendants are employees of the CITY that participated in delaying the release of the expert witness report to these Plaintiffs.  The withholding of this expert witness report constitutes misconduct that rises to the level of maintaining a malicious prosecution.

98.     DPA KEALOHA, Prosecutor KANESHIRO and the Doe Defendants are liable to Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI under the tort of malicious prosecution in <u>maintaining</u> the SECOND criminal indictment against these Plaintiffs.

99.     Because DPA KEALOHA, Prosecutor KANESHIRO and the Doe Defendants are employees of the City, the City is responsible for their actions under the theory of respondeat superior and thus has liability for their actions under this count of the Complaint in maintaining the criminal indictment against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI.

100.   As a proximate result of DPA KEALOHA, Prosecutor KANESHIRO and the Doe Defendants maintaining the malicious prosecution against Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI, these Plaintiffs incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, Plaintiffs DANLEY, CANENCIA, HAINA, CLAYTON SIMEONA, and MADALI also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award.

**COUNT VI**
**(State Claim of Maintaining a Malicious Prosecution – Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER Against Defendants KEALOHA, Prosecutor KANESHIRO and CITY)**

101.   The allegations contained in paragraphs 1 through 100 herein are realleged and incorporated herein by reference.

102.   The THIRD criminal indictment against Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER has been terminated in their favor because it was dismissed WITH prejudice.

103.   The THIRD criminal indictment against Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER was maintained maliciously because DPA KEALOHA, Prosecutor KANESHIRO, the Doe Defendants and the CITY intentionally delayed the release of the expert witnesses' report to these Plaintiffs. Prosecutor KANESHIRO was involved as evidenced by him personally preparing and filing a Memorandum in opposition to these Plaintiffs' motion to dismiss that set forth facts which show that he participated in delaying the release of the expert witness report to these Plaintiffs.  The Doe Defendants are employees of the CITY that participated in delaying the release of the expert witness report to these Plaintiffs.  The withholding of this expert witness report constitutes misconduct that rises to the level of maintaining a malicious prosecution.

104.   DPA KEALOHA, Prosecutor KANESHIRO and the Doe Defendants are liable to Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER under the tort of malicious prosecution in maintaining the THIRD criminal indictment against these Plaintiffs.

43

105.   Because DPA KEALOHA, Prosecutor KANESHIRO and the Doe Defendants are employees of the City, the City is responsible for their actions under the theory of respondeat superior and thus has liability for their actions under this count of the Complaint in maintaining the criminal indictment against Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER.

106.   As a proximate result of DPA KEALOHA, Prosecutor KANESHIRO and the Doe Defendants maintaining the malicious prosecution against Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER, these Plaintiffs incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER also suffered severe mental and emotional distress, to which they are entitled to a monetary award.

## COUNT VII
### (State Claim of Abuse of Process – All Plaintiffs Against Defendants KEALOHA, Doe Defendants and CITY)

107.   The allegations contained in paragraphs 1 through 106 herein are realleged and incorporated herein by reference.

108.   The actions of DPA KEALOHA in causing Plaintiffs to be criminally prosecuted without probable cause (both in the initiation of the proceedings and the maintaining of the proceedings), were done with an ulterior purpose.  That ulterior purposes included, but was not limited to: (a) indicting Plaintiffs DANLEY,

CANENCIA, HAINA, MADALI, and CLAYTON SIMEONA on charges of owning an unlawful business that she knew were charges without probable cause, and she intended to offer one or more of these Plaintiffs a plea agreement in return for testimony against Plaintiffs YOSHIMURA, GENE SIMEONA and MILLER, (b) indicting the Plaintiffs as retaliation for the Plaintiffs' participation in the Federal action, (c) placing all Plaintiffs in a weakened financial position by asking for excessive bail amounts to be posted by all of the Plaintiffs and by seizing the PDS terminals without seeking forfeiture of those PDS terminals, and (d) retaliation against Plaintiff YOSHIMURA because of his critical statements of Prosecutor KANESHIRO.  DPA KEALOHA also issued various forms of process in connection with all three criminal indictments.  Her actions, and the actions of the Doe Defendants were willful acts in the use of the process not proper in the regular conduct of a criminal prosecution.  DPA KEALOHA and the Doe Defendants acted in definite manner not authorized by the process, or aimed at an objective not legitimate in the use of the process in making certain that Plaintiffs were subjected to unwarranted criminal process.

109.   Because DPA KEALOHA is an employee of the City, the City is responsible for their actions under the theory of respondeat superior and thus has liability for their actions under this count of the Complaint for abuse of process.

110.   As a proximate result of DPA KEALOHA's abuse of process against Plaintiffs and the Doe Defendants abuse of process against Plaintiffs, Plaintiffs incurred monetary damages in an amount to be proven at the trial in this matter. As a proximate result thereof, Plaintiffs also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award.

## COUNT VIII
### (State Claim of Negligent Hiring – All Plaintiffs Against Defendants KANESHIRO and CITY)

111.   The allegations contained in paragraphs 1 through 110 herein are realleged and incorporated herein by reference.

112.   Prosecutor KANESHIRO is an elected executive officer of the City and County of Honolulu.

113.   As an elected executive officer of the City and County of Honolulu Prosecutor KANESHIRO is require to adhere to the Declaration of Policy set forth in §11-101 of the Honolulu City Charter which states: "Elected and appointed officers and employees shall demonstrate by their example the highest standards of ethical conduct, to the end that the public may justifiably have trust and confidence in the integrity of government.  They, as agents of public purpose, shall hold their offices or positions for the benefit of the public, shall recognize that the public interest is their primary concern, and shall faithfully discharge the duties of their

offices regardless of personal considerations." Based upon this Declaration of Policy, Prosecutor KANESHIRO has a duty to the public.

114. Part of that duty to the public is Prosecutor KANESHIRO's administrative duties which includes, under § 8-105 of the Honolulu City Charter, the appointment of deputies, administrative or execute assistants, and other necessary staff. Prosecutor KANESHIRO thus has a duty to the public to hire competent staff.

115. Prosecutor KANESHIRO hired DPA KEALOHA, Defendant BRANCO and the Doe Defendants to work in the Office of the Prosecuting Attorney.

116. Prosecutor KANESHIRO was negligent in his hiring of DPA KEALOHA, Defendant BRANCO and the Doe Defendants, and as a direct and proximate result of Prosecutor KANESHIRO's negligent hiring of DPA KEALOHA, Defendant BRANCO and the Doe Defendants, Plaintiffs were damaged. Plaintiff incurred monetary damages in an amount to be proven at the trial in this matter. As a proximate result thereof, Plaintiffs also suffered severe mental and emotional distress.

117. Because Prosecutor KANESHIRO is an employee of the City, the City is responsible for his actions under the theory of respondeat superior and thus has liability for his actions under this count of the Complaint for his negligent

hiring of DPA KEALOHA and the Doe Defendants, to be proven at the trial in this matter, to which they are entitled to a monetary award.

## COUNT IX
### (Negligent Retention and Negligent Supervision – All Plaintiffs Against Defendants KANESHIRO and CITY)

118.   The allegations contained in paragraphs 1 through 117 herein are realleged and incorporated herein by reference.

119.   Prosecutor KANESHIRO assigned DPA KEALOHA and the Doe Defendants to work on the criminal indictments of Plaintiffs.  As the city prosecutor, Prosecutor KANESHIRO made the determination, especially in this case, as to when cases are brought to the grand jury and is responsible for the retention and supervision of DPA KEALOHA and the Doe Defendants who subsequently handled the SECOND criminal indictment and the THIRD criminal indictment.

120.   Prosecutor KANESHIRO was negligent in his supervision of DPA KEALOHA because of: (a) his assignment of the case involving Plaintiffs to a deputy prosecuting attorney who was ill-equipped to handle the case, (b) his authorization to reindict Plaintiffs after the FIRST criminal indictment had been dismissed, and (c) his general failure to review the actions of DPA KEALOHA.

121.   Prosecutor KANESHIRO was negligent in his supervision of the Doe Defendants because of: (a) upon information and belief, supported by a filing in

the SECOND criminal indictment, Prosecutor KANESHIRO authorized the delay in the release of the expert witness report as to all Plaintiffs, and (b) his general failure to review the actions of the Doe Defendants.

122.   The resulting failure of DPA KEALOHA was foreseeable given: (a) the inexperience of DPA KEALOHA in "white collar" cases, (b) the circumstances of DPA KEALOHA including but not limited to her health issues and other personal issues, and (c) the lack of research done by DPA KEALOHA before the case was presented to a grand jury.

123.   Prosecutor KANESHIRO was also negligent in his supervision of the Doe Defendants in not insuring that the release of the expert report was not delayed by the Doe Defendants.

124.   As a direct and proximate result of Prosecutor KANESHIRO's negligent retention and supervision of DPA KEALOHA and the Doe Defendants, Plaintiffs were damaged.  Plaintiffs incurred monetary damages in an amount to be proven at the trial in this matter.  As a proximate result thereof, Plaintiffs also suffered severe mental and emotional distress, to be proven at the trial in this matter, to which they are entitled to a monetary award.

125.   Because Prosecutor KANESHIRO is an employee of the City, the City is responsible for his actions under the theory of respondeat superior and thus

has liability for his actions under this count of the Complaint for his negligent retention and supervision of DPA KEALOHA and the Doe Defendants.

WHEREFORE, Plaintiffs respectfully request that judgment be entered as follows:

A.      General and special punitive damages in an amount to be proven at trial, for costs and attorneys' fees, and for such other and further relief as the Court deems just and proper;

B.      Punitive damages against the individual defendants in an amount to be proven at trial, for costs and attorneys' fees, and for such other and further relief as the Court deems just and proper;

C.      Such other and further relief as the Court deems just and appropriate.

DATED:  Honolulu, Hawaii, September 25, 2018.


                              /s/ Keith M. Kiuchi
                              _____
                              KEITH M. KIUCHI
                              Attorney for Plaintiffs