```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3
      TRACY T. YOSHIMURA, et al.,    ) CV 18-00038LEK-RLP
 4                                   )
               Plaintiffs,           )
 5                                   ) Honolulu, Hawaii
          vs.                        ) March 1, 2019
 6                                   )
      KEITH M. KANESHIRO, et al.,    ) [58-1] MOTION for Summary
 7                                   ) Judgment
               Defendants.           ) [66-1] MOTION for Joinder
 8      _____) Re[58]Motion for Summary
                                       Judgment of Defendant City
 9                                     and County of Honolulu
                                       [74-1]MOTION for Joinder
10                                     Re[58]Motion for Summary
                                       Judgment Filed on December
11                                     13, 2018

12                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE LESLIE E. KOBAYASHI
13                 UNITED STATES DISTRICT JUDGE

14    APPEARANCES:

15    For the Plaintiffs:       KEITH M. KIUCHI
                                1001 Bishop Street, Suite 985
16                              Honolulu, Hawaii 96813

17                              MIA D. OBCIANA
                                Law Office of Mia D. Obciana LLC
18                              700 Bishop Street, Suite 1101
                                Honolulu, Hawaii 96813
19

20    For the Defendant City    NICOLETTE WINTER
      and County of Honolulu:   City and County of Honolulu
21                              Office of Corporation Counsel
                                530 S. King Street, Room 110
22                              Honolulu, Hawaii 96813

23

24

25
```

```
 1   APPEARANCES CONTINUED:

 2
     For the Defendant Keith    LISA W. CATALDO
 3   M. Kaneshiro,              McCorriston Miller Mukai MacKinnon
     Individual and in his      Five Waterfront Plaza 4th floor
 4   capacity as the            500 Ala Moana Boulevard
     Prosecuting Attorney of    Honolulu, Hawaii 96813
 5   the City and County of
     Honolulu:
 6

 7   For the Defendant          GREG TAKASE
     Katherine Kealoha,         Law Offices of Cary T. Tanaka
 8   Individually and in her    Bishop Street Tower
     capacity as Deputy         700 Bishop Street, Suite 1010
 9   Prosecuting Attorney:      Honolulu, Hawaii 96813

10

11

12

13

14

15

16

17

18

19

20

21
     Official Court Reporter:   Debra Read, CSR CRR RMR RDR
22                              United States District Court
                                300 Ala Moana Boulevard
23                              Honolulu, HI 96850
                                readit3949@gmail.com
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

```
 1   FRIDAY, MARCH 1, 2019                    10:33 A.M.

 2           THE COURTROOM MANAGER:  Civil 18-00038 LEK-KFC,

 3   Tracy T. Yoshimura versus Keith M. Kaneshiro -- I'm sorry.

 4   It's LEK-RLP -- Tracy T. Yoshimura, et al. versus Keith M.

 5   Kaneshiro, et al.

 6           This case has been called for a hearing on the Defendant

 7   City and County of Honolulu's Motion for Summary Judgment, also

 8   for a hearing on Defendant Katherine Kealoha's, individually

 9   and in her capacity as Deputy Prosecuting Attorney, Joinder in

10   the Motion for Summary Judgment, and also for a hearing on

11   Defendant Keith M. Kaneshiro's Joinder in a Motion for Summary

12   Judgment.

13           Counsel, please make your appearances for the record.

14   Please speak into a microphone at all times

15           MR. KIUCHI:  Good morning, Your Honor.

16           Keith Kiuchi and Mia Obciana on behalf of all plaintiffs.

17   Also present is Tracy T. Yoshimura.

18           Your Honor, Ms. Obciana will be arguing the motion.

19           THE COURT:  All right.  Thank you very much and good

20   morning to all of you.

21           MS. WINTER:  Good morning, Your Honor.

22           Nicolette Winter, Deputy Corporation Counsel, on behalf

23   of the City and County of Honolulu.

24           THE COURT:  All right.  Good morning, Ms. Winter.

25           MS. CATALDO:  Good morning, Your Honor.
```

UNITED STATES DISTRICT COURT

1          Lisa Cataldo on behalf of Defendant Kaneshiro.

2              THE COURT:  Good morning, Ms. Cataldo.

3              MR. TAKASE:  Good morning, Your Honor.

4          Greg Takase on behalf of Defendant Katherine Kealoha.

5              THE COURT:  All right.  Good morning, Mr. Takase.

6          All right.  Thank you very much for your extensive

7     briefing.  I appreciate it.  My inclination is that, you know,

8     I'm inclined to grant the City's motion for summary judgment.

9     It is an inclination.  It's not a final ruling.  But I would

10    particularly -- I'm inclined to grant it except as to

11    Mr. Yoshimura, finding that in terms of the

12    identity -- identicalness of the parties for purposes of claim

13    preclusion doesn't appear to apply to Mr. Yoshimura.

14         I would invite you folks to particularly address the issue

15    of whether he is bound to the terms of the settlement agreement

16    in Civil No. 12-00057 entered into by his limited liability

17    company PJY Enterprises, LLC.

18         Particularly, I sort of want to drill down to the issue is

19    is a member of an LLC precluded from filing a separate action

20    based on the same set of facts in a prior action.  So where it

21    is, first, the law, and secondly, where it is in the record

22    that reflects his control over the LLC such that the release by

23    the LLC should then be applied to Mr. Yoshimura.  All right?

24         So, Ms. Winters, it's your motion, so I'm happy to hear

25    from you first.  I'm happy to hear from the podium, but if you

1    have too many documents or something, you're unable to address

2    the court from the podium, then you can be at counsel table.

3    Thank you.

4            MS. WINTER:  Thank you, Your Honor.

5        With respect to -- I'm just going to address the issue

6    that you --

7            THE COURT:  Yes.

8            MS. WINTER:  -- raised.  With respect to the issue

9    of whether Mr. Yoshimura's bound, the way I understood the

10   argument in the opposition was that the issue with respect to

11   HR Section 428-201 and 428-303 was only with respect to the

12   privy argument with respect to claim and issue preclusion.

13           THE COURT:  Yes.

14           MS. WINTER:  And I guess I was wondering whether the

15   Court -- because I see it as a separate argument that

16   the -- than the argument of the release actually precluding the

17   instant case.

18       And, for example, in the case *Association of Apartment*

19   *Owners of Waipouli Beach Resort v. Unlimited Construction*

20   *Services*, that's 2017 Haw. App. Lexis 335, 2019 case, I think

21   there was -- there were two separate analyses with respect to I

22   believe claim and issue -- or claim preclusion, at least, and

23   then the second portion of the opinion talks about whether the

24   parties were released under the prior settlement agreement.

25       So I think those are separate analyses and --

 1            THE COURT:  All right.  So cutting to the chase, I

 2   ruled in a case called *Metzler Contracting Co. LLC v. Stephens*

 3   that the arbitration clause that -- in the agreement signed by

 4   the managing member on behalf of the LLC bound the LLC, but it

 5   didn't bind the individual.

 6       Okay.  So how is that different with regard to here as to

 7   Mr. Yoshimura?  Why is Mr. Yoshimura -- why should

 8   Mr. Yoshimura's individual claims be considered released as a

 9   result of the settlement agreement?

10            MS. WINTER:  Well, Your Honor, I haven't read the

11   case, but I believe in the instant case you have to look at the

12   language of the contract, and --

13            THE COURT:  So does the contract -- does the

14   settlement agreement specifically release Mr. Yoshimura's

15   individual claims?

16            MS. WINTER:  Yes.  I mean, I believe it does and in

17   terms of --

18            THE COURT:  Okay.  Show me where that is.

19            MS. WINTER:  So under subsection C --

20            THE COURT:  This is what exhibit to your --

21            MS. WINTER:  Exhibit B to the motion for summary

22   judgment.

23            THE COURT:  Okay.

24            MS. WINTER:  This is the release.

25            THE COURT:  Yes.

1          MS. WINTER:  Exhibit C says, "For and in

2   consideration of" --

3          THE COURT:  What paragraph are we at?

4          MS. WINTER:  Page 3 of 7 on paragraph C.

5          THE COURT:  Okay.

6          MS. WINTER:  (Reading:)  Plaintiff's Release of

7   Claims, "For and in consideration of the above, Plaintiffs, and

8   all persons and/or any entities related to, owned by, or in

9   which any of the Plaintiffs have any interest therein

10  whatsoever, in whole or in part, hereby release and forever

11  discharge Defendants."

12      So in this case, you know, if -- you know, if we don't

13  take as an admission the fact that -- you know, because in the

14  Second Amended Complaint --

15         THE COURT:  How does this apply to Mr. Yoshimura,

16  though?  He's not a plaintiff.

17         MS. WINTER:  Tracy -- Tracy Yoshimura is not a

18  plaintiff in the --

19         THE COURT:  In the settlement agreement?

20         MS. WINTER:  -- PJY.

21         THE COURT:  Yeah?  Is he?  Okay.  Let's look at

22  page 1.  It says, "This agreement is made between PJY

23  Enterprises LLC," and it lists various people.  Where is

24  Mr. Yoshimura's name in that first paragraph?

25         MS. WINTER:  No, it's not in the settlement

1    agreement.  I would argue that it's an admission in the instant

2    lawsuit based on Second Amended Complaint saying that -- they

3    say it several times in the first complaint, second

4    complaint -- First Amended Complaint, Second Amended Complaint

5    that plaintiff -- that all of the plaintiffs in the instant

6    lawsuit were plaintiffs in this PJY lawsuit.

7              THE COURT:  Right.

8              MS. WINTER:  I would say that's admission.

9              THE COURT:  That's not true, though.  We can look at

10   that, right?  That's not true.

11             MS. WINTER:  Well, he's -- there's other references

12   to -- I mean, there's other evidence in the motion and even in

13   the opp that shows that --

14             THE COURT:  Well, was he a plaintiff in -- in the

15   underlying lawsuit, the lawsuit --

16             MS. WINTER:  The underlying -- for the -- for the

17   release, the case that the release was part of, it was just PJY

18   named.

19             THE COURT:  Right.

20             MS. WINTER:  But he was the --

21             THE COURT:  Yeah, he was not --

22             MS. WINTER:  He was the --

23             THE COURT:  -- named individually, correct?

24             MS. WINTER:  Yes, that's correct.

25             THE COURT:  He was not.  Okay.  So then we look at

1    the release of claims by the plaintiffs that -- under paragraph

2    C, does that include Mr. Yoshimura?

3              MS. WINTER:  I would -- I would say that he

4    is -- Plaintiff Yoshimura is certainly related to PJY, at the

5    very least, and that it's termed in the -- it says, "Related

6    to, owned by, or," you know, and so he is related to --

7              THE COURT:  So does PJY -- so does PJY own

8    Mr. Yoshimura?

9              MS. WINTER:  Well, I think it -- I think --

10             THE COURT:  Yes or no?

11             MS. WINTER:  I think the answer is that --

12             THE COURT:  The answer's no.  No.  PJY doesn't own

13   Mr. Yoshimura, right?

14             MS. WINTER:  I think he's related to Mr. Yoshimura.

15   Mr. Yoshimura's related to him.  He's the owner and managing

16   partner.  He's the -- he's the -- I think -- there was also an

17   email as part of his opp that said he was the representative or

18   something along those lines.  So there's plenty of evidence

19   that he's --

20             THE COURT:  Okay.  So let's look at that language.

21   Let's sort of drill down.  It says, "And all persons" -- that's

22   the language you're looking at, right? -- "related to any of

23   the plaintiffs who have an interest."  So you're saying because

24   he's a person related to, right?

25             MS. WINTER:  Mr. Yoshimura is related to PJY, yes.


UNITED STATES DISTRICT COURT

```
 1              THE COURT:  Okay.  All right.

 2              MS. WINTER:  He's certainly --

 3              THE COURT:  Where in the record does it indicate

 4    that he's related to?

 5              MS. WINTER:  In the record?  It's -- well,

 6    the -- the Second Amended Complaint in this action is the

 7    admission, and then there's also references in the record to

 8    him being the principal of PJY, and that, I believe, is in the

 9    opposition.  One of the exhibits refers to him as being the

10    principal.

11        I'm sorry.  Let me pull up the exhibits.  It was one of

12    the emails that was attached to -- let's see here.  Let's see

13    here.  Uhm --

14              THE COURT:  I couldn't find any indication, like you

15    guys went to the DCCA, gave me a verified or a certified copy

16    that indicates who the managing partner is for PJY Enterprises

17    LLC.  I don't see any admissible evidence that he is the

18    managing partner.

19        I may have overlooked it, so I'm asking if you could point

20    that out to me anywhere in the supporting documents if it

21    establishes.  For purposes of a summary judgment, as you know,

22    I can only rely on admissible evidence.  So hearsay, et cetera,

23    would not be something that I could make a factual

24    determination for purposes of summary judgment.

25              But if you'd like --
```

UNITED STATES DISTRICT COURT

```
 1              MS. WINTER:  Well, I mean, I don't -- I mean, other
 2    than the admissions that they make, and then also --
 3              THE COURT:  But you keep saying "these admissions,"
 4    but they're not admissions.
 5              MS. WINTER:  Well, if they allege it in their
 6    complaint -- I don't understand -- and they're not denying --
 7              THE COURT:  So show me in the complaint where they
 8    allege he's the managing director and why that judicial
 9    admission should be sufficient to then apply that -- that
10    portion of paragraph C of the settlement agreement.  So where
11    in the -- where in the complaint?  Where is that in record?
12              MS. WINTER:  Second Amended Complaint is
13    paragraph 27.  It just says, in the Second Amended Complaint,
14    "The plaintiffs in this complaint were all plaintiffs in the
15    Second Amended Complaint in the federal action" --
16              THE COURT:  Okay.  But that's not true.  We know
17    that's not true because we can compare it.  Mr. Yoshimura is
18    not -- was not a plaintiff in that thing.  But, okay, so where
19    else does it say that?
20              MS. WINTER:  I believe it also talks about managing.
21              THE COURT:  Okay.  What paragraph?  Why don't I give
22    you a few minutes to go through the -- your exhibits to the
23    motion --
24              MS. WINTER:  Thank you.
25              THE COURT:  -- and I'll hear from plaintiffs'
```

1    counsel, and then I'll give the defendants an opportunity to

2    address.

3              MS. WINTER:  Thank you, Your Honor.

4              THE COURT:  Okay.  Thank you.

5         All right.  So it's Ms. Obciana?

6              MS. OBCIANA:  Yes.

7              THE COURT:  Good morning.

8              MS. OBCIANA:  Good morning, Your Honor.  Thank you.

9         If I could just briefly -- I understand Your Honor's

10   inclination.

11             THE COURT:  Yes.  I mean, I'm not saying it's my

12   final decision, so if you feel that there's something you want

13   to point out to me that would then cause me to change my

14   inclination, I'm happy to hear it.  I don't mean to cut you off

15   from any argument.

16             MS. OBCIANA:  Thank you, Your Honor.

17        First, I'd just like to point out that, you know, Your

18   Honor is more than well aware of the underlying facts of the

19   first litigation --

20             THE COURT:  Correct.

21             MS. OBCIANA:  -- as opposed to this litigation.

22             THE COURT:  Yes.

23             MS. OBCIANA:  The claims in this current lawsuit

24   could not have been brought in the prior lawsuit because the

25   events were not complete at the time that that lawsuit was

 1    filed.

 2            THE COURT:  Correct.

 3            MS. OBCIANA:  With respect to the issues of res

 4    judicata and claim preclusion, in *Wong v. Cayetano*, the Hawaii

 5    Supreme Court did note that "res judicata does not bar

 6    litigation matters not within the scope of the first action.

 7    The scope of the litigation is framed by the complaint at the

 8    time that it is filed... claims arising after the complaint are

 9    filed are not barred by res judicata."

10            And I would just like to point out the prior action, the

11    complaint was filed October 12th of 2012.  The criminal

12    investigation and proceedings that resulted from that initial

13    complaint were not resolved until October 27th of 2016.  There

14    was no action for any type of malicious prosecution claim or

15    anything with respect to the faulty underlying investigation

16    that took place that resulted in those criminal allegations

17    until that date in October 27th, 2016.  Therefore, those claims

18    were impossible for the plaintiffs to have brought in the first

19    action, and they're wholly separate and distinct from each

20    other.

21            One is an action based on, you know, the business is

22    saying, Look, we're involved in a legal operation.  The State

23    or the City should be barred from any further interference with

24    our business and should return our property to us.

25            The instant action is the investigation that led to that

UNITED STATES DISTRICT COURT

1    criminal investigation.  Those criminal seizures, the charges,

2    the indictments was faulty.  There was evidence that the

3    defendants were aware of that; they hid and acted in -- in

4    spite of the facts that went contrary to their investigation.

5          So I believe that those two things are separate and

6    distinct from each other and should not be conflated as having

7    to have been able to be brought at the same time.

8          More importantly, Your Honor, I believe that when you're

9    looking at the settlement agreement, there are various cases

10   where you're talking about a settlement agreement and some of

11   the terms are in dispute, and in particular I would point you

12   to the *Constantino* case from this district decided in 2011.

13         And it was very difficult to find cases that were directly

14   on point because, to put it simply, the City made an error in

15   the underlying litigation.  Their error was that they filed the

16   stipulation for dismissal prior to obtaining a fully executed

17   settlement agreement.  That's just not something that happens

18   every day.  It's not something that normally happens without

19   the parties putting the terms on the record or without some

20   clarification as to what exactly is being agreed to.  But

21   that's what happened in the first case.  The City jumped the

22   gun, filed the stipulation without receiving the assent of all

23   of the plaintiffs in the prior action.

24               THE COURT:  Did any of the plaintiffs seek to set it

25   aside?

UNITED STATES DISTRICT COURT

 1          MS. OBCIANA:  I don't believe that's happened, Your

 2   Honor.  I mean, I don't think that there's any dispute on the

 3   plaintiffs' side in the prior suit that there was an agreement

 4   to dismiss their remaining claim in exchange for a waiver of

 5   the bill of costs.  That is not being disputed by anyone in

 6   this action.

 7          The dispute here lies in this universal release that was

 8   then thrown into the draft settlement agreement by the City

 9   without notifying plaintiffs' counsel or the Court.  I mean, it

10   was never discussed in any of the correspondence attached by

11   the City in their exhibits, none of the emails discussed the

12   release.  It's never mentioned.

13          I believe in the minutes from the settlement conferences

14   there is also, again, no mention of a release of claims by the

15   Court.  I don't -- and the City's own declarations never

16   affirmatively assert that, Yes, we told the plaintiffs that

17   this was a condition of settlement and they agreed.  That

18   evidence is wholly absent from their motion and from their

19   supporting evidence.

20          THE COURT:  Okay.  So -- but even assuming that they

21   did -- the plaintiffs didn't agree to that specific language,

22   there is a stipulation for the dismissal with prejudice.

23          MS. OBCIANA:  Yes, Your Honor.

24          THE COURT:  All right.  So then I would look at

25   what -- for purposes of res judicata or claim preclusion, issue

1   preclusion, et cetera, I would look at what was brought in the

2   2012 case, who the parties were, were they in privity, all of

3   that analysis to the claims that are brought in the instant

4   case, right?

5          MS. OBCIANA:  Yes.

6          THE COURT:  So clearly, all of the plaintiffs in the

7   2012 case intended to release all of their claims without

8   limitation, and so anything that arises out of that same fact

9   pattern with any parties that were in privity and so forth then

10  would be precluded by the claim preclusion doctrine.

11       Regardless of whether -- I understand that you have that

12  problem with the release language, you know, the breadth of the

13  release language, but clearly all of those parties then

14  released the claims out of any claims that they brought or

15  could have brought that arise out of that same fact pattern.

16         MS. OBCIANA:  I don't necessarily agree with that,

17  Your Honor.  I believe -- I know that that's standard and that

18  is a normal term that parties put into their settlement

19  agreements all the time, but --

20         THE COURT:  No, no.  Aside from the settlement

21  agreement, just the fact that there's a stipulation for

22  dismissal.

23         MS. OBCIANA:  They agreed to release the claim that

24  was pending at the time.  Now only that one count --

25         THE COURT:  No, the law is if there's a stipulation

1    with dismissal with prejudice as to those claims, then they

2    cannot bring any of those claims.

3              MS. OBCIANA:  Correct.

4              THE COURT:  Right.

5              MS. OBCIANA:  And the only --

6              THE COURT:  And so the issue and claim preclusion

7    law is that you look at what those claims were, what facts they

8    arise out of.  For instance, if there's a construction

9    litigation claim and the apartment owners release all of their

10   claims having to do with allegedly defective construction, and

11   then one of the apartment owners drives out of the unit, their

12   unit, out of the building, and then one of the construction

13   company trucks mows them down, they clearly didn't release that

14   claim, even though it's the same parties, because this is a new

15   factual situation.  This is a personal injury claim.

16             MS. OBCIANA:  Yes.

17             THE COURT:  So that's not going to be released

18   because of the construction litigation.  All right.

19        The problem here is that many of the claims that are

20   brought in the new action, the 2018 action, they arise out of

21   the same set of facts and are similar or identical to the

22   claims that were brought in the 2012, except for what you're

23   claiming with regard to malicious prosecution and so forth.

24        You're saying -- I understand your argument that that

25   didn't exist at the time because it wasn't fully resolved and

1   so forth, so that's exempted from the dismissal of the claims

2   that occurred as to the 2012 lawsuit.

3           MS. OBCIANA:   And, Your Honor, respectfully, I would

4   disagree only because if you look at the claims that existed at

5   the time of the stipulation, there was only one claim and it

6   was on behalf of an individual plaintiff and it was a 1983

7   claim against one particular police officer.   And if you look

8   at the allegations, the factual allegations underlying this

9   complaint and the previous complaint, there are only two

10  instances where they cite to the same facts.   Every other fact

11  alleged in the instant complaint is different and has nothing

12  to do with the actual seizure of the items or the actual arrest

13  of the plaintiffs.

14      This case is about the investigation and the malfeasance

15  that occurred with respect to the investigation and the

16  prosecution of them despite those facts, the repeated

17  indictments in light of facts that went contrary to the

18  criminal charges that were being alleged against those

19  plaintiffs.

20      So I would submit, Your Honor, I understand what you're

21  saying, I do, but I don't believe that the facts are at all

22  alike.   I don't believe that the claims are alike, and I

23  believe they're more akin to your hypothetical of the

24  construction case rather than them being identical.

25      If the claims in this case only had to do with their

1  arrest, I would agree with you.  I would say these are

2  identical facts and these claims are based on the same

3  allegations as the first complaint.  Now, I believe that's

4  true.

5       However, all of the facts alleged in the complaint in this

6  case are separate and distinct from the allegations in the

7  prior complaint.  There are only, again, two instances where

8  they're even alike.  Every other factual allegation is

9  different and I would submit that that is the distinction here.

10      I would also like to point out, Your Honor, that

11  Mr. Yoshimura is not the only plaintiff in this case who was

12  also not a party to the underlying settlement agreement that's

13  being disputed here.

14           THE COURT:  Okay.  Who is that?

15           MS. OBCIANA:  Mr. Miller.

16           THE COURT:  Oh, right.  You're right.  That's right,

17  Mr. Yoshimura and Mr. Miller.  Everyone else is --

18           MS. OBCIANA:  Correct.  He was also not an

19  individual plaintiff in the earlier action.

20      But aside from that, Your Honor, looking at what you have

21  pointed out in terms of the identity of the parties, I think

22  that the point that the City has missed is that an LLC is a

23  separate and distinct legal entity from its members.  There is

24  just no disputing that.  It's in the statute; it's enshrined in

25  law.  You cannot get around that.  The City cannot merely

1    pierce that veil because it wants to, because it thinks that

2    Mr. Yoshimura's claims and the claims of all the individual

3    plaintiffs should be extinguished because their LLCs were

4    represented in an underlying action.

5         One of the most important determination of privity with

6    respect to claim preclusion is whether or not the party -- the

7    nonparty had its interest represented in that earlier action,

8    and I would submit that, Your Honor, it was impossible for

9    Mr. Yoshimura and Mr. Miller's interests to be represented in

10   the earlier litigation.

11        An LLC can be held liable for looking after the interests

12   of an individual member over the interests of the entity as a

13   whole, and the entity's attorneys are liable for looking out

14   for the interest of anyone other than their client who is the

15   LLC and not the member.  And as you're well aware, an

16   individual member in an LLC can have competing interests.

17        So to put the LLC's attorney in a position where he must

18   look out not only for the interests of the LLC but for the

19   individual members as well would fly in the face of ethical

20   rules that the attorneys are bound by and the law.

21        THE COURT:  Well, that's not true because that

22   happens in corporations all the time.  They'll sometimes have a

23   general counsel that will look at the obligations or the -- for

24   the best interests of the company, and then they have

25   individual attorneys or separate attorneys for the board of

1    directors.

2            MS. OBCIANA:  Correct, but they're separate

3    attorneys.  You're not asking the same attorney -- you're not

4    asking the LLC's general counsel to give counsel to individual

5    members based on their individual liabilities --

6            THE COURT:  No, no, no.  But that counsel should

7    then --

8            MS. OBCIANA:  -- and interests.

9            THE COURT:  -- advise them that they need to get

10   their own --

11           MS. OBCIANA:  Yes.

12           THE COURT:  -- and has an ethical obligation, but

13   that shouldn't prevent then the individual -- 'cause the LLC

14   can only act through its members.  It's like a corporation, you

15   know.

16           MS. OBCIANA:  Right.

17           THE COURT:  Yeah.  There's actually a Western

18   District of Texas that applied the doctrine of claim preclusion

19   under Missouri law and said that -- barred a plaintiff's claim

20   against individual members of the LLC when the LLC was

21   released.

22       So there is competing -- I mean, it's not controlling on

23   this court, but there is -- there are courts that have found

24   that -- the very thing that you're arguing against.

25           So, you know, it's an interesting legal issue

1   that -- where you have -- particularly in an LLC as opposed to

2   a corporation, that you can have a managing partner basically

3   be the LLC, I mean, take all of the actions and make all the

4   decisions for the -- binding legal decisions for the LLC.  So

5   it's an interesting issue and I don't think there's anything

6   definitive.  There's certainly nothing in Hawaii law right now

7   that we --

8           MS. OBCIANA:  Well, it would certainly --

9           THE COURT:  -- would be exactly on point.

10          MS. OBCIANA:  Well, it would certainly expose that

11  LLC and that individual managing member to potential liability

12  from other members if they were attacked in such a manner.

13      I mean, I can say personally I was involved in a

14  litigation; it was a derivative suit by a member of an LLC

15  against the LLC and the managing member.  I was retained to

16  represent the interests of the LLC while a separate attorney

17  was retained to represent the interests of the individual

18  managing member.  And I would just submit that that's

19  appropriate only because they're separate and distinct entities

20  that may not have their interests a hundred percent aligned.

21      So to say that Mr. Yoshimura and Mr. Miller's interests

22  were represented in the underlying action simply because their

23  LLC were parties is just incorrect.

24      And I think that pointing out the language also of that

25  release, as I pointed out in the memorandum in opposition, as

1  well as the way you pointed out this morning, is correct, that

2  the language of the release simply doesn't cover the individual

3  members.  It doesn't apply to them.  The LLC cannot release

4  claims that don't belong to it.

5          THE COURT:  I thought you said the release doesn't

6  apply because it wasn't executed by them.

7          MS. OBCIANA:  It both --

8          THE COURT:  Yeah.

9          MS. OBCIANA:  The argument is twofold:  one, that it

10  doesn't apply because it was never part of the settlement

11  agreement.  But if it did, it still would not bar the claims

12  that Mr. Yoshimura and Mr. Miller and the other individual

13  plaintiffs may have because the language of the release that

14  was put into this draft settlement agreement simply isn't

15  adequate.

16          THE COURT:  Right.  I mean, I could find that

17  Mr. Yoshimura's claims are barred if I follow the reasoning set

18  forth in that Western District of Texas case which indicates,

19  you know, that, you know, the individual members of the LLC

20  clearly are aware of this lawsuit and are participating to that

21  extent and are aware that it's being dismissed so that he

22  should then be held in privity with these other defendants

23  under claim preclusion.  I mean, that's one way of looking at

24  it on that Western District case.

25          On a separate issue, having to interpret who is bound by

1    an arbitration agreement or the clause in a construction

2    contract and arbitration clause signed by the LLC, you know, I

3    found the other way which is that the individual -- that the

4    managing partner was not individually bound by that, but the

5    LLC was.

6            MS. OBCIANA:  Yes, Your Honor.

7            THE COURT:  Yeah.  So, you know, there's -- we

8    looked into this and, you know, unfortunately, we don't have

9    any Hawaii law on this, but, you know, we have cases going both

10   ways and we don't have anything controlling in the Ninth

11   Circuit, so it's an interesting issue.

12           MS. OBCIANA:  And I understand that.  I would also

13   just like to point out the case cited by the City earlier, the

14   *Association of Apartment Owners of Waipouli Beach Resort*, for

15   the purposes of summary judgment I believe the City's motion

16   should fail because similar to that case, the City has not

17   presented any evidence in support of its summary judgment

18   demonstrating the relationship between Mr. Yoshimura and the

19   LLC or Mr. Miller and the LLC.

20           THE COURT:  Right.  Is there anything in -- in -- so

21   I couldn't find anything that was an exhibit that is admissible

22   evidence that establishes their relationship.  But is there

23   anything that was attached to any of the substantive pleadings,

24   i.e., the complaints, the First or Second Amended Complaint?

25           MS. OBCIANA:  I was unable to find anything that

1    definitively tied Mr. Yoshimura to that LLC as well, and that

2    lack of evidence, I think, by itself, is sufficient to deny the

3    motion for summary judgment.

4           THE COURT:  But that would be without prejudice to

5    refiling, you'd agree, right?  Because it's that they just

6    don't have that piece of evidence?

7           MS. OBCIANA:  And that would be within the Court's

8    discretion as to whether it was with or without prejudice, but

9    again, I don't think that solves the issue that they have of

10   the settlement agreement, this draft settlement agreement that

11   was never signed, that all its terms were incorporated.

12         The settlement agreement based on their evidence --

13          THE COURT:  But I understand what your argument is

14   with regard to that.  But even setting that aside, if I find

15   that by the LLC participating in it and Mr. Yoshimura having to

16   have knowledge of that as the managing partner, what have you,

17   then is that sufficient enough then to bind him in terms of

18   privity and knowledge and his ability?

19          MS. OBCIANA:  I don't think it is.  In *Bush v.*

20   *Watson*, the Supreme Court said that there are -- one of the

21   most obvious rules to limit the extent of preclusion by

22   representation is that the representative, one, must have been

23   appointed by a valid procedure.  There's no evidence of that

24   and I don't think there is any evidence of that.  Even if they

25   were able to show that Mr. Yoshimura is a member, there's no

UNITED STATES DISTRICT COURT

1    evidence about a valid procedure being established and his

2    representation in that case being done pursuant to that valid

3    procedure.  And there's --

4         THE COURT:  I don't know that they have to establish

5    that.  I do agree with you they have to establish that he's a

6    member of the LLC, which I don't see it in the record, but

7    maybe Ms. Winter can elucidate that for us during this time

8    that she's looking through the record.  But I could give them

9    leave to supplement the record and get the appropriate

10   certified document from the DCCA.

11        But you're saying that in addition to that, they have to

12   show somehow that even though he's a member of the LLC, was a

13   member at the time the litigation was going on, that that alone

14   is insufficient to indicate that he had knowledge or awareness

15   of the litigation and the subsequent settlement -- or agreement

16   to dismiss all the claims?

17        MS. OBCIANA:  Well, Your Honor, I don't think that

18   knowledge of the settlement agreement or the proceedings in the

19   underlying case are the only factors that courts look at when

20   determining whether or not his interests were represented.  The

21   courts have pointed out in several different cases that in

22   order for his interests to be represented, he has to have had

23   his individual interests represented.  The court has had to

24   look out for his individual interests.

25        And I would submit in the underlying case that was not

UNITED STATES DISTRICT COURT

1   done.  Even if he were acting on behalf of the LLC, even if he

2   were the sole member of the LLC and the only person allowed to

3   proceed and enter into agreements on behalf of the LLC, his

4   individual interests, which are separate and distinct from the

5   LLC, were never represented, they were never protected.

6           THE COURT:  Well, how are they separate and

7   different from the LLC in the 2012 action?

8           MS. OBCIANA:  Well, because, for one thing,

9   his -- to waive his individual claims by the LLC, he would have

10  to have been advised, Look, this settlement agreement is going

11  to waive your individual claims.  But he was not represented.

12  His personal interests were not represented in the underlying

13  litigation.  His LLC was represented.  His LLC waived its

14  claims, entered into a settlement agreement and said, Fine,

15  we'll dismiss --

16          THE COURT:  No, no, no, I understand that.  But how

17  were his claims different from what the LLC --

18          MS. OBCIANA:  The LLC cannot bring a malicious

19  prosecution action.  The LLC isn't bringing a 1983 claim; only

20  the individual can do that.  Those are individual claims

21  belonging to him and distinct --

22          THE COURT:  And were those brought -- and were those

23  brought in the 2012 lawsuit?

24          MS. OBCIANA:  They were not.

25          THE COURT:  Right.

 1           MS. OBCIANA:  But they could not have been, Your

 2  Honor, because --

 3           THE COURT:  No, I understand that argument.  What

 4  I'm asking you is in terms of this what the claims were

 5  brought.  Aren't his claims in 2012 identical to the LLC?

 6           MS. OBCIANA:  They're not, Your Honor.  The LLC was

 7  looking to get its property back and looking to have the City

 8  enjoined from interfering with its business.  Those are

 9  separate and distinct from Mr. Yoshimura's individual claims to

10  be free of harassment by law enforcement, by a 1983 claim of

11  his civil rights being violated.  Those are separate and

12  distinct interests.

13           THE COURT:  Well, who brought those kinds of claims

14  in the 2012 action?

15           MS. OBCIANA:  It was individual employees of the

16  LLCs that were arrested.  So their claims were ripe at that

17  time because they had been arrested, their civil rights had

18  been violated.  Mr. Yoshimura's individual rights had not been

19  because there was no resolution to the criminal indictment.  So

20  until the end of that criminal case, Mr. Yoshimura's rights had

21  not been violated.  There was no -- no claim that he could have

22  brought prior to then.

23           THE COURT:  Well, he could have brought a claim for

24  the return of the property.

25           MS. OBCIANA:  That would be the LLC's claims.

UNITED STATES DISTRICT COURT

1          THE COURT:  Right.

2          MS. OBCIANA:  Because the property belonged to the

3   LLC and not to Mr. Yoshimura as an individual.

4          THE COURT:  But he's -- he is a member of the LLC,

5   so he has that claim as well.

6          MS. OBCIANA:  But not as an individual in his

7   capacity as a member.  So they are -- he can't act for his

8   individual member interests in his individual capacity.  He has

9   to act on behalf of the LLC.

10          THE COURT:  No, I understand that.  But what I'm

11   telling you is that all of the facts at that time, he and the

12   LLC were all in the same -- they wanted the same thing because

13   he was being harmed financially as a member of the LLC.  So I'm

14   not saying that he had individual claims, but their interests

15   are all aligned.  He and the LLC's are not at odds with each

16   other with regard to the claims that were brought in the 2012

17   lawsuit.

18          MS. OBCIANA:  But the LLC at that time is not

19   looking out for Mr. Yoshimura's individual interests --

20          THE COURT:  He has no individual --

21          MS. OBCIANA:  -- and individual claims.

22          THE COURT:  He -- to the extent that he is being

23   injured financially because the LLC cannot conduct its

24   financial business, he and the LLC, their interests are

25   aligned, so he had to be aware of the lawsuit because he's a

```
 1   member of the LLC, so their interests are exactly aligned.
 2   This is -- set aside the malicious prosecution in the 1983 --
 3   but the interests of the LLC and Mr. Yoshimura are aligned at
 4   that point.  He is on notice as a member of the LLC of the
 5   litigation and what's being litigated, you know, ostensibly,
 6   you know, LLC funds are being used to fund the lawsuit.  So
 7   whatever rights the LLC gave up, the argument goes,
 8   Mr. Yoshimura gave up those rights too to those claims.
 9             MS. OBCIANA:  And I just don't think that if you're
10   treating the LLC and the individual members as separate and
11   distinct legal entities, I don't think you can make that
12   argument.  I don't think it's a genuine -- because the courts
13   say that you have to look out for the individual member's
14   interests in order for them to be waived.
15             THE COURT:  But the individual interests are
16   identical with the LLC at this point.
17             MS. OBCIANA:  Notwithstanding, even -- even though
18   they're identical at that point in time, who is to say that
19   they're always going to be identical?  So you can't say that
20   only when the LLC and the individual member's interests are
21   identical then the LLC can waive the individual's claims.
22        I think --
23             THE COURT:  No, I'm not saying -- I think you're not
24   understanding what the issue is.  So you're not understanding
25   what the issue is.
```

1    Okay.  So the issue is what was -- with regard to a claim

2    preclusion, who's in privity, and so, as a result, what claims

3    are waived.  So if he is a member of the LLC, their interests

4    are identical in terms of the financial harm of these machines

5    being taken, et cetera, and the LLC gives up these claims.

6    Then to that extent, then can claim preclusion be used against

7    Mr. Yoshimura if those identical claims get raised.

8        You're confusing he has separate and different claims from

9    the LLC.

10       MS. OBCIANA:  No.  I think where maybe I'm not being

11   clear -- I do understand what you're saying.  But based on that

12   logic, if, for example, there was an operating agreement in

13   existence with the LLC that says Mr. Yoshimura's entitled to

14   pay no matter what happens -- at a specific rate, no matter

15   what happens to the LLC's finances.  So the LLC can be losing

16   money, but it still has to pay Mr. Yoshimura X amount of money.

17       So even if the LLC's property is being seized and it's

18   losing money, Mr. Yoshimura himself personally as a member

19   isn't losing any money because he's still going to get paid one

20   way or another, akin to a guarantee -- right? -- a guaranteed

21   distribution.

22       In that instance, if the LLC's property is seized, only

23   the LLC is suffering that financial harm.  The member is not.

24       THE COURT:  And you're representing as an officer of

25   the court that those facts apply here?

```
 1              MS. OBCIANA:  No.  What I'm saying is --

 2              THE COURT:  No.  I --

 3              MS. OBCIANA:  I'm not saying that that's the case

 4    here.

 5              THE COURT:  I think that you're not being candid

 6    with the court.  I think you're trying to obfuscate the issue

 7    before the court, with all due respect.

 8          So the issue really here is with regard to Mr. Yoshimura.

 9    You're helping me change my inclination.  Now I think maybe it

10    does have issue preclusion as to him -- but, you know, anyway,

11    we're kind of going down this whole thing and this is not

12    helpful.

13          So anything else that you want to add?

14              MS. OBCIANA:  No, Your Honor.

15              THE COURT:  Okay.  Thank you.  I'll turn to

16    Ms. Winter.

17          Ms. Winter?

18              MS. WINTER:  Thank you, Your Honor.

19          I just wanted to point to some places in the MSJ record.

20    If you look at Exhibit C to the City's motion for summary

21    judgment -- excuse me -- the first page, there's an email from

22    Keith Kiuchi to the Court saying," Tracy Yoshimura, a principal

23    of PJY, will be present.  Prior to the settlement agreement

24    conference I anticipate receiving full authority from the

25    individual defendants."
```

UNITED STATES DISTRICT COURT

1          And then in the opposition to the MSJ which is --

2               THE COURT:  I'm sorry.  So what's the significance

3    of Exhibit C?  Do you think this is admissible evidence that

4    shows that PJYY is, one, an LLC, and, two, that Mr. Yoshimura

5    is a member of that LLC?  So if you were in court in a trial,

6    do you think this would be admissible to prove that fact?

7               MS. WINTER:  I'm not sure about that.

8               THE COURT:  Yeah, I don't think so.

9               MS. WINTER:  The other thing we pointed to -- well,

10   in the opposition to the motion for summary judgment which is

11   ECF No. 76, on page 17, you know, even their argument admits

12   that -- well, let's look at the bottom.  It's the bottom of

13   paragraph 2.  It says -- the last sentence says, "The City's

14   motion merely states that there is privity because

15   Mr. Yoshimura is the managing member of PJY Enterprises LLC.

16   That alone is insufficient to establish privity for the purpose

17   of claim preclusion.  Mr. Yoshimura was not represented in the

18   PJY lawsuit, his business was."

19          So I -- you know, they're admitting that he's a managing

20   member and that it's his business.  And let's see here -- and

21   then just --

22               THE COURT:  Okay.

23               MS. WINTER:  -- Exhibit E --

24               THE COURT:  Again, I would say do you think this is

25   admissible evidence, so if there was a trial that I would be

1    able to receive this in evidence?

2         MS. WINTER:  I think it's just for -- no, that's not

3    what I'm saying.  I'm saying for purposes of this motion, I

4    think admissions that they make and arguments that they make

5    would be binding upon them if that's what they're arguing.

6    That's all I'm trying to say.

7         THE COURT:  No, no, no, but what I'm pointing out to

8    you is on a summary judgment motion, your burden is to base it

9    on admissible evidence.  It's kind of like a mini trial.

10        MS. WINTER:  Okay.

11        THE COURT:  So it has to meet the rules of evidence.

12   So, you know, lawyers say all kinds of things in -- you know,

13   in their briefing, but that doesn't mean it's a judicial -- I

14   can accept it as an admission for purposes of meeting the

15   evidentiary standard that you would have to in a trial.

16        MS. WINTER:  Okay.

17        THE COURT:  Okay.  So, for instance, what would --

18   the type of evidence that would establish that would be, for

19   instance, a certified document from the Department of Commerce

20   and Consumer Affairs that says, "PJYY has been registered as an

21   LLC as of this date, they are currently an LLC, these are its

22   members."

23        MS. WINTER:  Okay.  Yeah, and I believe Tracy

24   Yoshimura's the only -- well, I don't know -- there may be

25   two -- but it's my understanding that he's the only member of

1    that PJY and that would certainly be in our next motion.

2        But so -- and then I'm not sure if this would be

3    admissible or not, but there is your prior order, which is our

4    Exhibit E.  It's the prior order in the order granting

5    defendants' motion for summary judgment in the PJY case.  It's

6    Exhibit E to our MSJ, and --

7            THE COURT:  But was -- so was that a finding of fact

8    and conclusion of law that the court made pursuant to a trial

9    or based on some sort of admissible evidence?

10           MS. WINTER:  Right.  So I believe, you know, it was

11   the motion for summary judgment in the prior case that was

12   based on admissible evidence that was granted and upheld by the

13   Ninth Circuit.

14           THE COURT:  Okay.  So where is it that I found that

15   PJYY is an LLC and Mr. Yoshimura is not a member -- the

16   only --

17           MS. WINTER:  So the reference is -- or one reference

18   is on footnote -- in footnote 18 on page 25 of Exhibit E saying

19   that, "Tracy Yoshimura is the owner and member of PJY."  And I

20   think -- you know, I would just read that in terms of --

21           THE COURT:  Okay.  So that's based on his

22   declaration.  Okay.  So that is something that would be

23   admissible evidence, okay?  So that is a sworn declaration

24   under oath, so that would be a -- it would be admissible

25   evidence.

1          MS. WINTER:  Okay.

2          THE COURT:  Okay?

3          MS. WINTER:  Okay.  You know, and there's -- you

4    know, there's other references to emails and -- but --

5          THE COURT:  But, see, references to emails -- I

6    mean, I don't want to belabor this point, but you have to think

7    about what the difference is between admissible evidence and

8    inadmissible evidence, i.e., hearsay, right?  So to get in an

9    email from Mr. Kiuchi would be, you know, you'd have to do

10   certain things in order to have the custodian of records and

11   establish it and so forth and, you know, what he based it on

12   and --

13         MS. WINTER:  Right.

14         THE COURT:  Yeah.

15         MS. WINTER:  Right.  You're right.  And all we have

16   is the declaration of Mr. Nomura authenticating the email, so I

17   guess that probably wouldn't be enough.  So --

18         THE COURT:  Well, it would be enough to show that he

19   received it in ordinary course and that it's the -- but not for

20   the truth of the matter that's in it.

21         I mean, you know, Mr. Yoshimura could say, you know, "So

22   and so is the greatest quarterback in the history of football,"

23   but I don't -- you know, I could accept that that was sent to

24   Mr. Nomura as, you know -- and so it comes under an exclusion

25   in terms of regularly -kept documents in regularly-conducted

1  activities and so forth.  But I don't know that I would accept

2  Mr. Kiuchi's statement in it as true.  You see what the

3  difference is?

4        MS. WINTER:  Yes.  Yes, Your Honor.

5        THE COURT:  Okay.

6        MS. WINTER:  So we would either ask that, you know,

7  of course, whatever dismissal be without prejudice.  Either

8  that or we would ask for leave to submit the DCCA documents as

9  part of the record.

10      You know, in terms of the argument that the interests

11  diverged with Mr. Yoshimura and PJY, you know, I -- you know, I

12  would submit that they could have obtained separate attorneys

13  and they're basically using it as a shield belatedly, extremely

14  belatedly, and --

15      THE COURT:  Okay.  But what about our argument with

16  regard to -- so even assuming it's sort of how I've indicated

17  is that whatever claims were released in the 2012 lawsuit on

18  behalf of PJYY also applies to Mr. Yoshimura, but their

19  argument is really, So what?  Because his claims now are

20  different than PJYY -- is it PJY?

21      MS. WINTER:  PJY Enterprises.

22      THE COURT:  -- PJY, and so any release by PJY, even

23  if their interests were exactly aligned in the 2012 lawsuit,

24  the 2018 lawsuits are, first, claims that are only personal to

25  Mr. Yoshimura, not claims that can be brought by PJY, so

1   they're distinct in that respect.  And, two is they did not --

2   they were inchoate, they didn't exist, they weren't ripe at the

3   time the 2012 lawsuit was brought nor when the settlement was

4   reached, and so it was impossible for them to be released.

5       So what is your position with regard to those arguments?

6           MS. WINTER:  Well, I believe that they were ripe.  I

7   mean, there was a -- you know, the dismissal with prejudice

8   with respect to the criminal cases had occurred at the time

9   that the release was entered into and at the time that the

10  settlement agreement conference had occurred, and they were

11  specifically put on notice because there was a prior lawsuit

12  which I believe you had handled as well that was brought

13  against the City with respect to the same issues that are in

14  this lawsuit, only at that point in time it hadn't -- I guess

15  the second and third criminal indictment hadn't been dismissed

16  with prejudice, and so it was dismissed on -- on ripeness

17  grounds.

18      So at that point that they entered into settlement

19  discussions and that Mr. Kiuchi said, "Okay," you know, "the

20  language in this settlement release is okay.  I don't have any

21  substantive problems with it," at that point in time he knew

22  his -- the plaintiffs knew that criminal charges had been

23  dismissed with prejudice so they were specifically put on

24  notice that they were ripe at that point because they had been

25  dismissed with prejudice, and he still agreed to the settlement

1    agreement language, and he said, "Okay," you know, "I agree to

2    this.  Let's -- you know, we'll try to get signatures."

3         And so I don't see the -- I don't really understand their

4    argument that it's barring future claims.  It's everything

5    within their knowledge at the point in time that the settlement

6    release was agreed to by Mr. Kiuchi, and, you know --

7              THE COURT:  So where in the record does it -- is

8    there admissible evidence that the criminal action was

9    dismissed with prejudice?

10             MS. WINTER:  Uhm, I believe it's in the complaint.

11   Uhm, so the Second Amended Complaint it talks about everything

12   being -- I think it goes to the ripeness of the claim, so it

13   says -- I apologize.  It's not an exhibit, but it is part of

14   this case, the Second Amended Complaint in this.

15             THE COURT:  Right, right.  So I can take judicial

16   notice of the complaint.

17             MS. WINTER:  Right.

18             THE COURT:  The complaint is sort of an allegation,

19   you know, that's set forth.  I mean, if that's something that

20   you want the court to make a determination that that's -- that

21   would have been within the ambit of the release -- because if I

22   go with their argument that the release was never executed and

23   therefore, you know, it's not binding, but clearly the parties

24   intended to stipulate to dismiss the claims in the 2012 case,

25   then to the extent that any of those claims exist in the 2018

UNITED STATES DISTRICT COURT

1    lawsuit, then, you know, the stipulation dismissed those.  And

2    so then you have your claim preclusion argument.

3        But that would be limited to the claims that were brought.

4    So that's what their argument -- Hey, a claim was just -- you

5    know, we want our stuff back and you arrested our employees.

6    It has nothing to do with the claims now that we're bringing,

7    although it arises out of these machines and the seizure and so

8    forth.  We're now making these allegations that that -- the

9    whole criminal prosecution and intent and so forth had a

10   malicious purpose and these are claims that are separate and

11   apart from we want our machines back, you wrongly took them,

12   and you arrested our -- you know, wrongfully arrested our

13   employees.

14           MS. WINTER:  Yeah.  I mean, I think they could have

15   easily amended the complaint and I think the release -- the

16   language of the settlement release is definitely broader than

17   the claim preclusion and issue preclusion in terms of its scope

18   because it talks about arising out of anything related

19   whatsoever out of that language.

20           THE COURT:  Right.  That's if I find the settlement

21   agreement applies.

22           MS. WINTER:  Right.

23           THE COURT:  If it doesn't apply, then you're only

24   looking at the stip to dismiss.  It's only the claims that were

25   brought.

 1          MS. WINTER:  Yeah, no, I agree with that, Your

 2   Honor.  And I agree that we have -- other than just the issue

 3   in terms of probable cause, claim preclusion is a -- is a

 4   harder argument for us to make in terms of the claims being

 5   identical.

 6        But I -- but, yeah, certainly our main argument is with

 7   respect to the release language.

 8          THE COURT:  Okay.  Thanks.

 9          MS. WINTER:  Thank you, Your Honor.

10          THE COURT:  All right.  Thank you.

11        Anyone want to add anything now?

12        All right.  So I'm going to take the matter under

13   advisement and we will -- if we don't issue the decision by the

14   end of the month, we'll issue an outline of our decision so

15   that you folks will know the determination.  All right?

16        Thank you very much.  We're in recess.

17          (Proceedings concluded at 11:26 A.M.)

18

19

20

21

22

23

24

25


                    UNITED STATES DISTRICT COURT

1                    COURT REPORTER'S CERTIFICATE

2

3           I, DEBRA READ, Official Court Reporter, United

4    States District Court, District of Hawaii, do hereby certify

5    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

6    true, and correct transcript of the stenographically reported

7    proceedings held in the above-entitled matter and that the

8    transcript page format is in conformance with the regulations

9    of the Judicial Conference of the United States.

10                  DATED at Honolulu, Hawaii, March 6, 2019.

11

12

13                     */s/ Debra Read*

14                  DEBRA READ, CSR CRR RMR RDR

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT