IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TRACY T. YOSHIMURA, ET AL., | ) | CIVIL 18-00038 LEK-RLP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| KEITH M. KANESHIRO, ETC., ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANT CITY & COUNTY OF HONOLULU'S MOTION TO DISQUALIFY COUNSEL AND DENYING DEFENDANT KEITH M. KANESHIRO'S JOINDER

Before the Court is Defendant City & County of Honolulu's ("the City") Motion to Disqualify Attorney Keith M. Kiuchi ("Motion"), filed on February 19, 2019. [Dkt. no. 84.] On March 4, 2019, Defendant Keith M. Kaneshiro, in his individual capacity ("Kaneshiro"), filed his joinder of simple agreement in the Motion. [Dkt. no. 93.] Plaintiffs Tracy T. Yoshimura ("Yoshimura"), Eugene M. Simeona, Jr. ("G. Simeona"), Michael D. Miller, Jr. ("Miller"), Gary G. Danley, Jr. ("Danley"), Quentin D.R. Canencia ("Canencia"), Desiree U. Haina ("Haina"), Michael A. Madali, Jr. ("Madali"), and Clayton Simeona ("C. Simeona" and "Plaintiffs") filed their memorandum in opposition on March 8, 2019, and the City filed its reply on March 15, 2019. [Dkt. nos. 102, 108.] The Court finds this

matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). The City's Motion is hereby denied for the reasons set forth below.

## BACKGROUND

Plaintiffs initiated the instant action on January 26, 2018, asserting federal question jurisdiction. [Complaint, dkt. no. 1.] On August 14, 2018, this Court issued an order dismissing Plaintiffs' Complaint and granting Plaintiffs leave to file an amended complaint. [Dkt. no. 27.] On September 25, 2018, Plaintiffs filed an amended complaint, and on November 8, 2018, Plaintiffs filed a Second Amended Complaint. [Dkt. nos. 31, 52.] The Second Amended Complaint is now the operative pleading.

## I.   Second Amended Complaint

The defendants named in the Second Amended Complaint are: Kaneshiro, in his individual capacity; Katherine Kealoha, in her individual capacity ("Kealoha"); Vernon Branco, in his individual capacity ("Branco"); the City; Jacob Delaplane, in his individual capacity ("Delaplane"); and Tommy Kong, in his individual capacity ("Kong" and collectively "Defendants"). [Second Amended Complaint at pgs. 3-4.] The Second Amended Complaint concerns the seizure of the Products Direct

Sweepstakes ("PDS") terminals on various dates and Plaintiffs'
subsequent criminal indictments. [Id. at ¶ 20.]

Yoshimura was the managing member of PJY
Enterprises, LLC ("PJY"), which was a distributor of the PDS
terminals; G. Simeona and Miller were owners of Hawai`i
corporations that owned arcades in the City and County of
Honolulu. [Id. at ¶¶ 20-21.[1]] On September 27, 2012, Kaneshiro
and the Honolulu Police Department ("HPD") seized seventy-seven
PDS terminals from six separate arcades that Plaintiffs allege
they did not own or operate.[2] Following the September 27
seizures, Yoshimura made statements to the media that were
critical of Kaneshiro's actions. [Id. at ¶ 22.] On
December 13, 2012 and February 14, 2013, HPD seized additional
PDS terminals at several different arcade locations; a majority
of those seizures were made in arcades belonging to the
corporations owned by G. Simeona and Miller. [Id. at ¶ 23.]

As a result of the seizures of the PDS terminals,
Plaintiffs allege that, on May 1, 2014, a state grand jury

---

[1] G. Simeona was the owner of GS Entertainment, Inc. and
Miller was the owner of Mike, Inc. [Second Amended Complaint at
¶ 21.]

[2] These arcades included "Winnerz Zone Ewa Beach," "Winnerz
Zone Waikiki," "Winnerz Zone Pearl City," "Winnerz Zone Ward,"
"Winnerz Zone Wahiawa," and "Winnerz Zone Waipio." [Second
Amended Complaint at ¶ 22.]

(. . . continued)

indicted Yoshimura, G. Simeona, Miller, Danley, Canencia, Haina, Madali, and C. Simeona ("First Indictment"). [Id. at ¶ 29.[3]] On June 12, 2014, Yoshimura's then-defense attorney[4] filed a motion to disqualify the Department of the Prosecuting Attorney, and on September 2, 2014, filed the declaration of Mr. Kiuchi to supplement the motion. Plaintiffs allege that Mr. Kiuchi's declaration clarified that Yoshimura was not the owner of New World Group, Inc., one of the entities where PDS terminals were seized, and stated that Kealoha was aware that New World Group, Inc. was not owned by Yoshimura. [Id. at ¶ 35.] Yoshimura had also filed a motion to dismiss, which included the September 25, 2014 declaration of Mr. Kiuchi stating that Yoshimura did not own or operate the businesses which he was alleged to have owned and operated in the First Indictment. [Id. at ¶ 37.] The First Indictment was later dismissed without prejudice. [Id. at ¶ 41.]

On January 28, 2016, Danley, Canencia, Haina, Madali, and C. Simeona were indicted ("Second Indictment") for promoting

---

[3] The First Indictment also included non-party Alexander Alejandro. [Second Amended Complaint at ¶ 29.] The Second Amended Complaint does not specify the charges in the First Indictment.

[4] It is not clear from the Second Amended Complaint whether Mr. Kiuchi was Yoshimura's defense attorney in the First Indictment.

(. . . continued)

gambling in the first degree and unlawful ownership or operation of a business. [Id. at ¶ 42.[5]] On February 24, 2016, the state court indicted Yoshimura, G. Simeona, and Miller ("Third Indictment"), for promoting gambling in the first degree and unlawful ownership or operation of a business. [Id. at ¶ 47.] The criminal charges in the Third Indictment were later dismissed on October 27, 2017; and, on April 5, 2017, the criminal charges raised in the Second Indictment were also dismissed. [Id. at ¶¶ 51-52.] Plaintiffs allege that the other owners of the game arcades where PDS terminals were seized on September 27, 2012 were not indicted, and that Branco conducted all of the undercover investigations of the PDS terminals without the assistance of HPD or the Attorney General's office. [Id. at ¶¶ 23-24.] According to the Second Amended Complaint, Kaneshiro had been investigating Yoshimura since 2010, long before the PDS terminals were seized, and later targeted individuals who were involved in a civil lawsuit against Kaneshiro, the City, and others involved in the PDS terminal seizures, known as PJY Enterprises, LLC, et al. v. Kaneshiro, et al., CV 12-00577 LEK-RLP ("PJY Lawsuit" and "CV 12-00577"). Id. at ¶¶ 24, 27; and see infra, II.

---

[5] The Second Indictment also included Mr. Alejandro. [Second Amended Complaint at ¶ 42.]

The Second Amended Complaint alleges the following
claims:

-a 42 U.S.C. § 1983 claim against Kaneshiro, Kealoha, Branco,
and the City for retaliatory prosecution, in violation of the
First Amendment of the United States Constitution and the
applicable provision of the Hawai`i State Constitution
("Count I");

-a § 1983 claim against Kaneshiro, Kealoha, Branco, and the City
based on allegations of selective enforcement, in violation of
the Equal Protection Clause ("Count II");

-a § 1983 claim against Kaneshiro, Kealoha, Branco, and the City
based on an alleged violation of due process ("Count III");

-a § 1983 claim by Canencia against Kaneshiro, Kong, and the
City based on an alleged violation of due process ("Count IV");

-a state claim by Danley, Canencia, Haina, C. Simeona, and
Madali against Kealoha and the City for the initiation of
malicious prosecution based on allegations regarding the Second
Indictment ("Count V");

-a state claim by Yoshimura against Kaneshiro, Kealoha,
Delaplane, and the City for the initiation of malicious
prosecution based on allegations regarding the First Indictment
("Count VI");

-a state claim by Yoshimura against Kaneshiro, Kealoha,
Delaplane, and the City for the initiation of malicious
prosecution based on allegations regarding the Third Indictment
("Count VII");

-a state claim by Danley, Canencia, Haina, C. Simeona, and
Madali against Kealoha, Kaneshiro, and the City for maintaining
a malicious prosecution based on allegations regarding the
Second Indictment ("Count VIII");

-a state claim by Yoshimura, G. Simeona, and Miller against
Kealoha, Kaneshiro, and the City for maintaining a malicious
prosecution based on allegations regarding the Third Indictment
("Count IX");

-a state claim by all Plaintiffs against Kealoha and the City
for abuse of process ("Count X");

-a state claim by all Plaintiffs against Kaneshiro and the City for negligent hiring of Kealoha, Delaplane, Branco, and Kong ("Count XI"); and

-a state claim by all Plaintiffs against Kaneshiro and the City for negligent retention and supervision of Kealoha, Delaplane, and Branco ("Count XII").

## II.  **PJY Lawsuit**

Shortly after the initial investigation against the Plaintiffs began, but after the September 27, 2012 seizure of the PDS terminals, Plaintiffs PJY Enterprises, LLC ("PJY"), Lucky G Enterprises, Inc. ("Lucky G"), S L & G Investments, LLC ("S L & G"), WZ Waikiki Partners, LLC ("WZ Waikiki"), WZ Wahiawa Partners, LLC ("WZ Wahiawa"), PMG Entertainments, LLC ("PMG"), GS Entertainment, Inc. ("GS"), Haina, G. Simeona, C. Simeona, Aloha Arcade, Inc. ("Aloha"), Danley, Canencia, Mike, Inc. ("Mike"), and Madali (collectively "PJY Plaintiffs") filed their Complaint in the PJY Lawsuit.  See CV 12-00577, Order Granting Defs.' Motion for Summary Judgment, filed 4/30/14 (dkt. no. 164) ("PJY Summary Judgment Order"), at 1.[6]]  The action named Kaneshiro, Louis M. Kealoha, Scott Yip, Aaron Young, and the Honolulu Police Department as defendants ("PJY City

_____

[6] The PJY Summary Judgment Order is also available at 2014 WL 12694456.

(. . . continued)

7

Defendants").[7]  PJY Summary Judgment Order, 2014 WL 12694456,

at *1.  Mr. Kiuchi represented the PJY Plaintiffs in the PJY

Lawsuit.  Id.

On June 25, 2013, the PJY Plaintiffs filed their

second amended complaint ("PJY Complaint") to include additional

factual allegations related to the December 13, 2012 seizure and

the February 14, 2013 seizure of PDS terminals from the game

arcades operated by Mike, GS, and Aloha.  Id. at *2.  This Court

noted that the PJY Complaint alleged the following claims:

> a claim by PJY, the Winner'z Zone Plaintiffs, and
> the Lucky Touch Plaintiffs seeking a declaratory
> judgment that the seizure and retention of the
> PDS terminals and Kaneshiro's statements violate
> various rights under the United States
> Constitution and the Hawai`i State Constitution
> ("[PJY] Count I"); a claim by PJY, the Winner'z
> Zone Plaintiffs, and the Lucky Touch Plaintiffs
> seeking an injunction requiring the return of the
> seized PDS terminals, preventing any future
> seizures of PDS terminals, preventing
> interference with Plaintiffs' operation and
> distribution of PDS terminals, and preventing
> further infringement on Plaintiffs'
> constitutional rights ("[PJY] Count II"); a claim
> by PJY and the Lucky Touch Plaintiffs for damages
> from the violations described in Count I
> ("[PJY] Count III"); a property damage claim by
> GS and Mike against HPD arising from damage to
> their personal property, fixtures, and premises
> during the February 14, 2013 seizure
> ("[PJY] Count IV"); and a claim by the individual
> plaintiffs against Yip and Young pursuant to 42
> U.S.C. § 1983 and Article I, §§ 4, 5, and 7 of

---

[7] Kaneshiro and Louis M. Kealoha were named in their
official capacities.  The PJY Plaintiffs attempted to name Scott
Yip, but apparently service was never completed on him.  PJY
Summary Judgment Order, 2014 WL 12694456, at *1 n.3.

the Hawai`i Constitution for the violation of the
individual plaintiffs' rights during their
allegedly unlawful arrests ("[PJY] Count V").

Id. at *2, see also CV 12-00577, PJY Complaint, filed 6/25/13

(dkt. no. 79), at pgs. 14-23.

On May 13, 2014, PJY Count IV was deemed dismissed

pursuant to Fed. R. Civ. P. 41(a). [CV 12-00577, EO: Court

Order Granting Pltfs.' Motion to: (1) Certify this Court's Order

of April 30, 2014 as Final Judgment for Appeal Pursuant to Rule

54(b) of the Fed. R. Civ. P., (2) Stay Further Proceedings

Pending Appeal; and (3) Leave to Dismiss Count IV of the

Complaint, dkt. no. 183, at 2.] On May 15, 2014, this Court

entered judgment in favor of the PJY City Defendants as to the

PJY Counts I, II, and III. [CV 12-00577, Judgment in a Civil

Case (dkt. no. 185).] On May 22, 2014, the PJY Plaintiffs filed

a notice of appeal with regard to the PJY Summary Judgment Order

and the May 15, 2014 Judgment, which the Ninth Circuit affirmed

on March 9, 2017 in a memorandum disposition. [CV 12-00577,

dkt. nos. 186 (Notice of Appeal), 208 (3/9/17 mem. dispo.).[8]]

On June 7, 2017, the parties agreed to settle the case

during the settlement conference before the magistrate judge;

the PJY Plaintiffs were represented by Mr. Kiuchi, and the PJY

City Defendants were represented by attorney Ernest H. Nomura,

---

[8] The memorandum disposition is available at PJY
Enterprises, LLC v. Kaneshiro, 679 F. App'x 621 (9th Cir. 2017).

Esq.  [CV 12-00577, Minutes, filed 6/7/17 (dkt. no. 215).]  On

July 12, 2017, the parties filed their Stipulation to Dismiss

with Prejudice Count V of the PJY Complaint.  [CV 12-00577, dkt.

no. 216.]

## III. **Motion**

The Motion seeks to disqualify Mr. Kiuchi from

representing Plaintiffs in the instant matter.  The City argues

Mr. Kiuchi is a necessary witness because: 1) he was heavily

involved in the PJY Lawsuit settlement agreement and

negotiations, which forms the basis of the City's counterclaims

in the instant matter; see City's answer, filed 11/21/18 (dkt.

no. 55), Counterclaim at pgs. 8-11; and 2) Plaintiffs' factual

allegations in the Second Amended Complaint are based in part on

Mr. Kiuchi's declarations submitted in the criminal indictments.[9]

As to the settlement agreement and negotiations in the

PJY Lawsuit, the City contends that the terms of the settlement

included "a release of claims that covers the claims asserted in

this case."  [Mem. in Supp. of Motion at 3.]  The City asserts

that Plaintiffs dispute this issue, and have relied upon the

---

[9] Although the Motion only identifies Mr. Kiuchi's
declarations submitted in the First Indictment, the City argues
and Plaintiffs do not dispute that Mr. Kiuchi submitted other
declarations in the Second and Third Indictments.  See, e.g.,
Mem. in Opp., Declaration of Keith M. Kiuchi ("Kiuchi Decl."),
at ¶¶ 9, 11 (stating that declarations were filed to certify
documents).

declaration of Mr. Kiuchi to describe the discussions that took place during the settlement conference, the subsequent correspondence between Mr. Kiuchi and Mr. Nomura, and finally the PJY Plaintiffs' refusal to sign the settlement agreement. [Id. at 3-4.[10]]  The City asserts that it will depose Mr. Kiuchi and call him as a witness to testify as to both issues.

### STANDARD

"Every member of the bar of this court . . . shall be governed by and shall observe the standards of professional and ethical conduct required of members of the Hawaii State Bar." Local Rule LR83.3.  Attorneys who practice in the Hawai`i state courts must comply with the Hawai`i Rules of Professional Conduct.  See Rules of the Supreme Court of the State of Hawai`i Rule 2.2 ("The Hawai`i Rules of Professional Conduct . . . shall govern the conduct of all attorneys subject to discipline under this rule.").  Hawai`i Rule of Professional Conduct 3.7(a) provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> > (1) the testimony relates to an uncontested issue;

---

[10] Mr. Kiuchi's declaration is attached to Plaintiffs memorandum in opposition to the City's motion for summary judgment.  See City's motion for summary judgment, filed 12/13/18 (dkt. no. 58); Pltfs.' Mem. in Opp, filed 2/8/19 (dkt. no. 76), Declaration of Keith M. Kiuchi.

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

A motion to disqualify counsel should not be "decided on the basis of general and conclusory allegations." Chuck v. St. Paul Fire & Marine Ins. Co., 61 Haw. 552, 559, 606 P.2d 1320, 1325 (1980). In deciding whether to disqualify counsel under Rule 3.7(a), courts should consider the "significance of the matters to which [counsel] will testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established." Id. (citing Comden v. Superior Court of Los Angeles County, 20 Cal. 3d 906, 145 Cal. Rptr. 9, 12, 576 P.2d 971, 974 (1978)). "[D]isqualification motions should be subjected to particularly strict judicial scrutiny." Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotation marks and citations omitted). This district court has recognized that "[t]he party seeking disqualification carries a heavy burden and must satisfy a high standard of proof because of the potential for abuse." Franson v. City & Cty. of Honolulu, CIVIL NO. 16-00096 DKW-KSC, 2017 WL 372976, at *9 (D.

Hawai`i Jan. 25, 2017) (internal quotation marks and citations omitted).

**DISCUSSION**

## I. <u>Necessary Witness</u>

The City argues Mr. Kiuchi is a necessary witness because Plaintiffs cited Mr. Kiuchi's declarations in the Second Amended Complaint as a part of their claims, and because Mr. Kiuchi was heavily involved in the PJY Lawsuit settlement agreement and negotiations.  Moreover, the City asserts that it intends to depose Mr. Kiuchi and/or call him as a witness at to testify about these two issues, which would improperly place him in the position of both an advocate and a witness.  In support of its position, the City has cited to this Court's prior decisions in <u>Royal Travel, Inc. v. Shell Management Hawaii, Inc.</u>, Civil No. 08-00314 JMS-LEK, 2009 WL 649929, at *1 (D. Hawai`i Mar. 12, 2009), and <u>Shaughnessy v. Ass'n of Apartment Owners of Moana Pacific</u>, Civil No. 09-00051 ACK-LK, 2011 WL 613580, at *1 (D. Hawai`i Feb. 10, 2011).

In <u>Royal Travel</u>, this Court ruled that plaintiffs' counsel, J. Charles Blanton, Esq., was a necessary witness, and therefore disqualified him from further participating as counsel in the matter.  2009 WL 649929, at *1.  Mr. Blanton represented the plaintiff property owners who filed suit against the defendants, the property manager and the directors of the Keahou

13

Gardens I Association of Apartment Owners ("AOAO"), for their performance of, or failure to perform, certain changes and maintenance at Keahou Gardens I.  Id.  The defendants argued Mr. Blanton's representation was improper because he was: the president of Royal Travel, Inc. ("Royal"), one of the plaintiffs in the matter; a unit owner at Keahou Gardens I; and a past and current member of the Board of Directors of the AOAO, who participated in many of the meetings, events, and decisions that were at issue in the case.  Id.  Based on these representations, this Court concluded that Mr. Blanton would likely be a necessary witness, whose anticipated testimony would conflict with other witnesses' testimony.  Moreover, this Court concluded the defendants would be prejudiced by Mr. Blanton's continued representation because "his dual role may create an improper inference that his testimony is more credible than that of Defendants' witnesses."  Id. at *6.  This Court also noted that the plaintiffs had two other able attorneys to represent their interests in the matter, and there was ample time for them to prepare the case and delegate any duties previously managed by Mr. Blanton.  Id.

        In Shaughnessy, this Court disqualified the plaintiff's attorney, Michael L. Biehl, Esq., due to his involvement in a contract dispute between the defendant/third-party plaintiff/cross-claim defendant KC Rainbow Development

Co., LLC ("Rainbow") and the third-party defendant Architects Hawaii, Ltd. ("AHL"). 2011 WL 613580, at *1. AHL refused to defend and indemnify Rainbow pursuant to the indemnity provision, which Rainbow and AHL specifically negotiated and added to the standard form agreement. Id. at *1-2.[11] After the district court ruled the indemnity provision was ambiguous and that an evidentiary hearing was necessary to determine the intent of provision, Rainbow argued Mr. Biehl should be disqualified as counsel because he was a necessary witness to the drafting of the indemnity provision. Id. at *3. In ruling on Rainbow's motion to disqualify, this Court noted that: 1) AHL admitted that Mr. Biehl "was the only person AHL identified as being involved with and/or having knowledge about the negotiations and/or drafting of" the provision at issue; 2) Mr. Biehl's declaration was the only document AHL submitted with its concise statement of facts in support of its memorandum in opposition to Rainbow's motion for summary judgment; 3) based on emails between Mr. Biehl and Rainbow's counsel, it was unlikely that AHL's president remembered the negotiations of the indemnity provision. Id. at *5. Based on these circumstances, this Court granted Rainbow's motion to disqualify where it was

---

[11] The contract at issue was the Standard Form of Agreement Between Owner and Architect with Standard Form of Architect's Service (AIA Document B-141), with Changes, dated January 2005. Shaughnessy, 2011 WL 613580, at *1-2.

likely Mr. Biehl would or should be called as a witness.  Id.
at *8.

Both Royal Travel and Shaughnessy are distinguishable
from the circumstances currently before the Court.  In the
instant Motion, the only evidence the City has presented in
support of its contention that Mr. Kiuchi will be a necessary
witness are: Mr. Kiuchi's declarations submitted in the
underlying criminal matters; and Mr. Kiuchi's declaration
attached to Plaintiffs' memorandum in opposition to the City's
motion for summary judgment regarding Mr. Kiuchi's role in the
PJY Lawsuit settlement negotiations.

The Court acknowledges that the PJY Lawsuit settlement
agreement is central to the City's counterclaims against
Plaintiffs, however, the Court finds that the testimony of
Mr. Kiuchi would not be significant and that the same issues can
be obtained from other witnesses or evidence.  Plaintiffs submit
that both Mr. Nomura and the magistrate judge were present
during the settlement conference, and the events of the
settlement conference were summarized in Mr. Nomura's April 17,
2017 letter to this Court, which outlined the settlement
agreement between the parties ("4/17/17 Letter").  [Kiuchi Decl.
at ¶ 3.]  Mr. Kiuchi also represents that Yoshimura will be able
to testify that none of the PJY Plaintiffs signed the PJY
Lawsuit settlement agreement, and that Mr. Kiuchi was not given

authority to sign any settlement agreement.  [Id. at ¶ 4.]
Thus, it appears that Mr. Kiuchi is not the sole source through
which information pertaining to the PJY Lawsuit settlement
negotiations can be established.  See Chuck, 61 Haw. at 559, 606
P.2d at 1325; cf. Caluori v. One World Techs., Inc., 2012 WL
2004173, at *5 (C.D. Cal. June 4, 2012) ("A lawyer is likely to
be a necessary witness where the proposed testimony is relevant,
material, not merely cumulative, and unobtainable elsewhere."
(internal quotation marks and citation omitted)).

        Further, Mr. Kiuchi's ability to enter into a
settlement agreement on behalf of the PJY Plaintiffs is
dependent on the scope of his settlement authority.  See Alt v.
Krueger, 4 Haw. App. 201, 207, 663 P.2d 1078, 1082 (1983) ("The
law is clear that an attorney cannot compromise and settle a
client's claim without specific authorization to do so. . . .
Therefore, the threshold question of authorization [is]
determinative of all other issues." (citations omitted)); see
also Haw. Rev. Stat. § 605-7 (requiring an attorney to obtain
special authority from his client in writing to either
compromise, arbitrate, or settle the client's matters).  The
relevant question would therefore be whether the PJY Plaintiffs
gave their express authorization to Mr. Kiuchi to agree to the
terms of the settlement agreement – not whether Mr. Kiuchi

intended to, or represented to the City that he would, obtain
his client's signatures.

Because the City has not demonstrated that Mr. Kiuchi
has particular or unique knowledge, or that his testimony will
significantly impact a material issue, the Court finds that
Mr. Kiuchi is not a necessary witness as to the validity of the
PJY Lawsuit settlement agreement.[12]  See In re Moore, 488 B.R.
120, 127 (D. Hawai`i 2013) (citations omitted) (affirming
bankruptcy court's ruling denying the debtor's motion to
disqualify counsel and finding the attorney-witness was not
"necessary" under Rule 3.7 because the debtor failed to identify
what testimony she anticipated eliciting from the attorney, and
whether the same information was available from other sources).

As to the City's contention that Mr. Kiuchi's
testimony is necessary because it was included in the Second
Amended Complaint as a part of Plaintiffs' factual allegations,
the City has not explained how Mr. Kiuchi's testimony would be
critical to the issue of whether Kealoha had notice of – and

---

[12] The Court also notes that the City stated that
"Mr. Kiuchi **and his clients in the PJY Lawsuit** . . . will also
be the sole witnesses as to whether Mr. Kiuchi sought to obtain
their consent to the Settlement Agreement." [Reply at 5
(emphasis added).]  The PJY Plaintiffs consist of nine business
entities and six individuals.  It is doubtful that all of the
PJY Plaintiffs would be unable to submit testimony on issues
related to the Settlement Agreement, and the City has not
submitted any evidence to the contrary.

allegedly disregarded - the filings in the criminal matter.  The
City merely asserts that, because Plaintiffs rely upon
Mr. Kiuchi's declaration in the Second Amended Complaint as
"proof" of Kealoha's knowledge that Yoshimura was not affiliated
with the establishments that led to the criminal indictments,
this constitutes a judicial admission that Mr. Kiuchi is a
necessary witness.  [Reply at 10.]  On the other hand,
Mr. Kiuchi represents that the subject matter of his
declarations submitted in the First Indictment are not at issue
in this civil action, and his declarations submitted in the
Second and Third Indictments were merely to certify documents,
which could be certified through other sources, such as the
public filings of the Department of Commerce and Consumer
Affairs, or the transcripts from the grant jury proceedings.
[Kiuchi Decl. at ¶¶ 9, 11.]

       This Court does not agree with the City's suggestion
that Plaintiffs' reference to Mr. Kiuchi's declarations in the
underlying criminal matters in the Second Amended Complaint
automatically renders him a necessary witness.  From the
allegations in the Second Amended Complaint, it appears that the
substance of Mr. Kiuchi's declarations: clarified that Yoshimura
did not own New World Group, Inc.; and noted that Kealoha was
aware that Yoshimura did not own New World Group, Inc., however,
this does not appear to call for substantive testimony from

19

Mr. Kiuchi that cannot be obtained elsewhere.  For example, in paragraph thirty-three, Plaintiffs allege:

> At NO time before, during or after Defendant BRANCO's undercover investigation, was Plaintiff YOSHIMURA ever the owner of businesses with the following trade names: Bellagio, the Game Zone, the Game Zone II, Panico (phonetic) Promotions, Lucky 777, Pure Luck, and New World Group, Inc., and this was proven by **records on file with the DCCA.  Defendant BRANCO's investigation reports and/or memorandums which were directly addressed to Prosecutor KANESHIRO and DPA KEALOHA, also clearly stated that Plaintiff YOSHIMURA did not own these entities**.

Second Amended Complaint at ¶ 33 (emphasis added).  Further, the City has not indicated that this information cannot be readily ascertained from another source, such as Kealoha herself, Yoshimura, or the state court records in the criminal indictments.  The City has also failed to identify what testimony it would elicit from Mr. Kiuchi on this issue, and how or if this would significantly impact the claims or defenses in this matter.  In sum, the City's conclusory statement that Mr. Kiuchi must be disqualified because Plaintiffs have cited his declarations in the Second Amended Complaint does not meet the high burden of proof necessary to disqualify an attorney, which is a "drastic measure which courts should hesitate to impose except when absolutely necessary."  See <u>White v. Time Warner Cable</u>, Civ. No. 12-00406 JMS-BMK, 2013 WL 772848, at *1

(D. Hawai`i Feb. 27, 2013) (citing <u>Schiessle v. Stephens</u>, 717 F.2d 417, 420 (7th Cir. 1983)).

The Court finds that: the City has not established that Mr. Kiuchi is the only person with the particular knowledge as to either the PJY Lawsuit settlement agreement or the declarations submitted in the criminal indictments; Mr. Kiuchi's particular knowledge is not material or relevant to the claims in the instant matter; and the City has failed to identify what Mr. Kiuchi would be called to testify to, why his testimony is significant, and how it would affect the critical issues in this case. This Court therefore concludes that Mr. Kiuchi is not a "necessary" witness under Rule 3.7(a).

## II. <u>Other Considerations</u>

Because Mr. Kiuchi is not a necessary witness, the Court need not address whether any of the exceptions under Rule 3.7(a) should apply. Nevertheless, this Court must ensure that the proper balance is struck between Plaintiffs' right to select their own counsel, and the City's argument that Mr. Kiuchi's representation and anticipated testimony will be prejudicial against the City because it will likely confuse the jury. <u>See</u> <u>Franson</u>, 2017 WL 372976, at *9 ("'a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the

profession'" (quoting <u>GSI Commerce Sols., Inc. v. Babycenter, L.L.C.</u>, 618 F.3d 204, 209 (2d Cir. 2010)).

Based on the same factors considered above, the Court finds that, even if called to testify, Mr. Kiuchi's representation of Plaintiffs will not be prejudicial to the City because his testimony will be cumulative of the testimony of other witnesses or documentary evidence, and would not relate to the critical issues required to establish either Plaintiffs' claims, or the City's counterclaims. Furthermore, Plaintiffs have submitted that they would be substantially prejudiced if Mr. Kiuchi were disqualified because it is unlikely that they would be able to afford new counsel, and Mr. Kiuchi has specific knowledge of the underlying criminal matters that puts him in the best position to question Defendants. [Kiuchi Decl. at ¶ 14.[13]] After balancing the parties' arguments, the purpose of Rule 3.7(a), and the Ninth Circuit's guidance that disqualification motions must be subjected to "particularly strict judicial scrutiny," <u>see</u> <u>Optyl</u>, 760 F.2d at 1050, this Court concludes that, under these particular circumstances, it is appropriate to deny the City's Motion and permit Mr. Kiuchi to continue to represent Plaintiffs in this matter. The Court

---

[13] Mr. Kiuchi states that he has agreed to represent Plaintiffs on a contingency basis and has previously represented Yoshimura and Danley on a pro bono basis. [Kiuchi Decl. at ¶ 14.]

notes that the denial is without prejudice to the City filing a similar motion at a later point if it can present evidence that meets the criteria for attorney disqualification set forth in this Order.

**CONCLUSION**

On the basis of the foregoing, the City's Motion to Disqualify Attorney Keith M. Kiuchi, filed February 19, 2019, is HEREBY DENIED. Kaneshiro's joinder of simple agreement to the Motion, filed March 4, 2019, is also DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, April 29, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

TRACY T. YOSHIMURA, ET AL. VS. KEITH M. KANESHIRO, ET AL.;
CV 18-00038 LEK-RLP; ORDER DENYING DEFENDANT CITY & COUNTY OF
HONOLULU'S MOTION TO DISQUALIFY COUNSEL AND DENYING DEFENDANT
KEITH M. KANESHIRO'S JOINDER

23