IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TRACY T. YOSHIMURA, ET AL.,      )      CIVIL 18-00038 LEK-WRP
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
KEITH M. KANESHIRO, ETC., ET     )
AL.,                             )
                                 )
          Defendants.            )
_____  )


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY &
COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART DEFENDANT KATHERINE
KEALOHA'S AND DEFENDANT KEITH M. KANESHIRO'S JOINDERS**

          Before the Court is Defendant City & County of

Honolulu's ("the City") Motion for Summary Judgment ("Motion"),

filed on December 13, 2018. [Dkt. no. 58.] Plaintiffs Tracy T.

Yoshimura ("Yoshimura"), Eugene M. Simeona, Jr. ("G. Simeona"),

Michael D. Miller, Jr. ("Miller"), Gary R. Danley, Jr.

("Danley"), Quentin D.R. Canencia ("Canencia"), Desiree U. Haina

("Haina"), Michael A. Madali, Jr. ("Madali"), and Clayton

Simeona ("C. Simeona" and collectively "Plaintiffs") filed their

memorandum in opposition on February 8, 2019, and the City filed

its reply on February 15, 2019. [Dkt. nos. 76, 82.[1]] On

_____

          [1] Both Plaintiffs and the City filed an amended version of
the memorandum in opposition and the reply. Plaintiffs filed
two versions of their memorandum in opposition on February 8,
                                        (. . . continued)

January 9, 2019, Defendant Katherine Kealoha, individually and in her capacity as Deputy Prosecuting Attorney ("Kealoha"), filed her joinder of simple agreement, and on February 4, 2019, Defendant Keith M. Kaneshiro, in his individual capacity ("Kaneshiro"), filed his joinder of simple agreement (collectively "the Joinders"). [Dkt. nos. 66, 74.] These matters came on for hearing on February 26, 2019.

On March 6, 2019, Plaintiffs filed their motion for leave to file supplemental briefs on the City's Motion, which this Court granted on March 20, 2019. [Dkt. nos. 97 (motion for leave), 109 (EO: Court Order Granting Pltfs.' Motion for Leave to File Suppl. Briefs).] On April 3, 2019, Plaintiffs filed their supplemental brief in opposition to the Motion, and on April 10, 2019, the City filed its reply memorandum to Plaintiffs' supplemental brief. [Dkt. nos. 112, 117.] The

_____

2019. [Dkt. nos. 76, 77.] The second filing removed Plaintiffs' objection to the City's separate and concise statement in support of the Motion, and Plaintiffs' separate and concise statement in support of Plaintiffs' memorandum in opposition to the Motion, [dkt. nos. 76-2, 76-3,] but the memorandum in opposition, declaration of counsel, and exhibits appear to be the same. Compare dkt. nos. 76, with dkt. no. 77. The Court construes the second filing as duplicative of Plaintiffs' first-filed memorandum in opposition. On February 11, 2019, Plaintiffs filed their Notice of Errata to correct the judges' initials reflected on the caption, and to correct the title of Plaintiffs' second-filed memorandum in opposition. [Dkt. no. 81.] The City filed an amended reply ("Amended Reply") on February 15, 2019. [Dkt. no. 83.] The City did not identify the relevant change between its original Reply and the Amended Reply.

City's Motion is hereby granted in part and denied in part for the reasons set forth below. Specifically, summary judgment is granted in favor of the City as to: 1) G. Simeona, Danley, Canencia, Haina, Madali, C. Simeona, and Miller's claim for negligent hiring against Kaneshiro and the City in Count XI of the Second Amended Complaint; and 2) the City's arguments regarding issue preclusion, insofar as Plaintiffs are barred from asserting that the PDS terminals are not gambling devices.

**BACKGROUND**

A summary of the procedural background has been set forth in this Court's April 29, 2019 Order ("4/29/19 Order") denying the City's motion to disqualify Keith Kiuchi, Esq. [Dkt. no. 119.[2]] The Court hereby incorporates the relevant background summary from the 4/29/19 Order in the instant order. Because the City's Motion seeks summary judgment based on the allegations and events in the prior litigation known as PJY Enterprises LLC, et al. v. Kaneshiro, et al., CV 12-00577 LEK-RLP ("PJY Lawsuit" and "CV 12-00577"), the Court addresses the lawsuits in chronological order.

I. **The PJY Lawsuit**

This Court summarized the relevant background of the PJY Lawsuit and underlying criminal investigation in its

---

[2] The 4/29/19 Order is also available at 2019 WL 1905160.

April 30, 2014 Order Granting Defendants' Motion for Summary
Judgment ("PJY Summary Judgment Order"). [CV 12-00577, dkt.
no. 164.[3]] On September 27, 2012, Kaneshiro and the Honolulu
Police Department ("HPD") seized seventy-seven Products Direct
Sweepstakes ("PDS") terminals from game arcades operated by
Lucky G Enterprises, Inc. ("Lucky G"), S L & G Investments, LLC
("S L & G"), WZ Waikiki Partners, LLC ("WZ Waikiki"), and PMG
Entertainments, LLC ("PMG") on the grounds that the PDS
terminals were gambling machines. There were additional
seizures made on December 13, 2012 and February 14, 2013 from
the game arcades operated by Mike, Inc. ("Mike"),
GS Entertainment, Inc. ("GS"), and Aloha Arcade, Inc. ("Aloha").
PJY Summary Judgment Order, 2014 WL 12694456, at *2. During the
February 14, 2013 seizure, HPD officers arrested employees of
Mike, GS, and Aloha without first obtaining an arrest warrant.
Those arrested included C. Simeona, Madali, Canencia, Haina, and
Danley. Id. When G. Simeona attempted to bail out the arrested
employees at the police station, he too was arrested. Id.

Shortly after the initial investigation against the
Plaintiffs began, but after the September 27, 2012 seizure of
the PDS terminals, Plaintiffs PJY Enterprises, LLC ("PJY"),
Lucky G, S L & G, WZ Waikiki, WZ Wahiawa Partners, LLC ("WZ

_____

[3] The PJY Summary Judgment Order is also available at 2014
WL 12694456.

4

Wahiawa"), PMG, GS, Haina, G. Simeona, C. Simeona, Aloha, Danley, Canencia, Mike, and Madali (collectively "PJY Plaintiffs") filed their Complaint in the PJY Lawsuit.[4] Id. at *1. The action named Kaneshiro, Louis M. Kealoha, Scott Yip ("Yip"), Aaron Young ("Young"), and HPD as defendants ("PJY City Defendants").[5] Id.

On June 25, 2013, the PJY Plaintiffs filed their second amended complaint ("PJY Complaint") to include additional factual allegations related to the December 13, 2012 seizure and the February 14, 2013 seizure of PDS terminals from the game arcades operated by Mike, GS, and Aloha. Id. at *2. This Court noted that the PJY Complaint alleged the following claims:

> a claim by PJY, the Winner'z Zone Plaintiffs, and
> the Lucky Touch Plaintiffs seeking a declaratory
> judgment that the seizure and retention of the
> PDS terminals and Kaneshiro's statements violate
> various rights under the United States
> Constitution and the Hawai`i State Constitution
> ("[PJY] Count I"); a claim by PJY, the Winner'z
> Zone Plaintiffs, and the Lucky Touch Plaintiffs
> seeking an injunction requiring the return of the
> seized PDS terminals, preventing any future
> seizures of PDS terminals, preventing

---

[4] In the PJY Summary Judgment Order, this Court referred to Lucky G, S L & G, WZ Waikiki, WZ Wahiawa, and PMG collectively as "the Winner'z Zone Plaintiffs." 2014 WL 12694456 at *1 n.5. This Court also referred to Mike, GS, and Aloha collectively as "the Lucky Touch Plaintiffs." Id. at n.6.

[5] Kaneshiro and Louis M. Kealoha were named in their official capacities. The PJY Plaintiffs apparently never completed service on Yip. PJY Summary Judgment Order, 2014 WL 12694456, at *1 n.3.

interference with Plaintiffs' operation and
distribution of PDS terminals, and preventing
further infringement on Plaintiffs'
constitutional rights ("[PJY] Count II"); a claim
by PJY and the Lucky Touch Plaintiffs for damages
from the violations described in Count I
("[PJY] Count III"); a property damage claim by
GS and Mike against HPD arising from damage to
their personal property, fixtures, and premises
during the February 14, 2013 seizure
("[PJY] Count IV"); and a claim by the individual
plaintiffs against Yip and Young pursuant to 42
U.S.C. § 1983 and Article I, §§ 4, 5, and 7 of
the Hawai`i Constitution for the violation of the
individual plaintiffs' rights during their
allegedly unlawful arrests ("[PJY] Count V").

Id.

On May 13, 2014, PJY Count IV was deemed dismissed
pursuant to Fed. R. Civ. P. 41(a). [CV 12-00577, EO: Court
Order Granting Pltfs.' Motion to: (1) Certify this Court's Order
of April 30, 2014 as Final Judgment for Appeal Pursuant to Rule
54(b) of the Fed. R. Civ. P., (2) Stay Further Proceedings
Pending Appeal; and (3) Leave to Dismiss Count IV of the
Complaint (dkt. no. 183) at 2.] On May 15, 2014, this Court
entered judgment in favor of the PJY City Defendants as to PJY
Counts I, II, and III. [Id., Judgment in a Civil Case (dkt.
no. 185).] On May 22, 2014, the PJY Plaintiffs filed a notice
of appeal with regard to the PJY Summary Judgment Order and the
May 15, 2014 Judgment, which the Ninth Circuit affirmed on

March 9, 2017 in a memorandum disposition.  [Id., dkt. nos. 186
(Notice of Appeal), 208 (3/9/17 mem. dispo.).[6]]

On June 7, 2017, the parties agreed to settle the case
during the settlement conference before the magistrate judge;
the PJY Plaintiffs were represented by Mr. Kiuchi, and the PJY
City Defendants were represented by Deputy Corporation Counsel
Ernest Nomura.  [Id., Minutes, filed 6/7/17 (dkt. no. 215).]  On
July 12, 2017, the parties filed their Stipulation to Dismiss
with Prejudice Count V of the PJY Complaint ("Dismissal
Stipulation").  [Id., dkt. no. 216.]

It appears that, on or about July 10, 2017 at
approximately 12:13 p.m., Mr. Nomura sent the proposed draft
settlement agreement to Mr. Kiuchi for his review.  [City's
Separate Concise Statement of Facts in Supp. of Motion, filed
12/13/18 (dkt. no. 59) ("City CSOF"), Decl. of Ernest Nomura
("Nomura Decl."), Exh. C at 000006 (emails dated 7/10/17 between
Mr. Nomura and Mr. Kiuchi).]  Although Mr. Nomura and Mr. Kiuchi
exchanged a number of emails from that date up to December 5,
2017, it does not appear that the PJY Plaintiffs ever signed and
returned the proposed settlement agreement to the City.  [Id. at
000006-12 (various emails between 7/10/17 and 12/5/17 between
Mr. Nomura and Mr. Kiuchi on the status of the PJY Plaintiffs'

---

[6] The memorandum disposition is available 679 F. App'x 621.

signatures to the settlement agreement); Mem. in Opp., Decl. of

Keith M. Kiuchi ("Kiuchi Decl."), Exh. 10 (email dated 12/5/17

(email dated 12/5/17 between Mr. Nomura and Mr. Kiuchi on the

status of the PJY Plaintiffs' signatures to the settlement

agreement).[7]]

## II.  <u>Second Amended Complaint</u>

In the instant case, Plaintiffs filed their Second

Amended Complaint on November 8, 2018 against Kaneshiro;

Kealoha, in her individual capacity; Vernon Branco, in his

individual capacity ("Branco"); the City; Jacob Delaplane, in

his individual capacity ("Delaplane"); and Tommy Kong, in his

individual capacity ("Kong" and collectively "Defendants").

[Second Amended Complaint (dkt. no. 52) at pgs. 3-4.]

Plaintiffs allege that, as a result of the seizures of the PDS

terminals, on May 1, 2014, a state grand jury indicted

Yoshimura, G. Simeona, Miller, Danley, Canencia, Haina, Madali,

and C. Simeona ("First Indictment") for, *inter alia*, gambling

and possession of gambling machines.  [<u>Id.</u> at ¶¶ 29, 58.]  The

---

[7] Both the Kiuchi Declaration and all of Plaintiffs'
exhibits are attached to Plaintiffs' memorandum in opposition,
rather than Plaintiffs' concise statement of facts.  <u>See</u> Local
Rule LR56.1(h) ("Affidavits or declarations setting forth facts
and/or authenticating exhibits as well as exhibits themselves,
shall only be attached to the concise statement.").
Nevertheless, this Court will consider the Kiuchi Declaration
and the exhibits themselves.

First Indictment was later dismissed without prejudice.  [Id. at ¶ 41.]

On January 28, 2016, Danley, Canencia, Haina, Madali, and C. Simeona were indicted ("Second Indictment") for promoting gambling in the first degree and unlawful ownership or operation of a business.  [Id. at ¶ 42.[8]]  On February 24, 2016, the state grand jury indicted Yoshimura, G. Simeona, and Miller ("Third Indictment"), for promoting gambling in the first degree and unlawful ownership or operation of a business.  [Id. at ¶ 47.]  The criminal charges in the Third Indictment were dismissed on October 27, 2017; and, on April 5, 2017, the criminal charges in the Second Indictment were also dismissed.  [Id. at ¶¶ 51-52.]  Plaintiffs allege that the other owners of the game arcades where PDS terminals were seized on September 27, 2012 were not indicted, and that Branco conducted all of the undercover investigations of the PDS terminals without the assistance of HPD or the Attorney General's office.  [Id. at ¶¶ 23-24.]

The Second Amended Complaint alleges the following claims:

-a 42 U.S.C. § 1983 claim by all Plaintiffs against Kaneshiro, Kealoha, Branco, and the City for retaliatory prosecution, in violation of the First Amendment of the United States Constitution and the corresponding provision of the Hawai`i State Constitution ("Count I");

---

[8] The Second Indictment also included Alexander Alejandro. [Second Amended Complaint at ¶ 42.]

-a § 1983 claim by all Plaintiffs against Kaneshiro, Kealoha, Branco, and the City based on allegations of selective enforcement, in violation of the Equal Protection Clause ("Count II");

-a § 1983 claim by all Plaintiffs against Kaneshiro, Kealoha, Branco, and the City based on an alleged violation of due process ("Count III");

-a § 1983 claim by Canencia against Kaneshiro, Kong, and the City based on an alleged violation of due process ("Count IV");

-a state claim by Danley, Canencia, Haina, C. Simeona, and Madali against Kealoha and the City for the initiation of malicious prosecution based on allegations regarding the Second Indictment ("Count V");

-a state claim by Yoshimura against Kaneshiro, Kealoha, Delaplane, and the City for the initiation of malicious prosecution based on allegations regarding the First Indictment ("Count VI");

-a state claim by Yoshimura against Kaneshiro, Kealoha, Delaplane, and the City for the initiation of malicious prosecution based on allegations regarding the Third Indictment ("Count VII");

-a state claim by Danley, Canencia, Haina, C. Simeona, and Madali against Kealoha, Kaneshiro, and the City for maintaining a malicious prosecution based on allegations regarding the Second Indictment ("Count VIII");

-a state claim by Yoshimura, G. Simeona, and Miller against Kealoha, Kaneshiro, and the City for maintaining a malicious prosecution based on allegations regarding the Third Indictment ("Count IX");

-a state claim by all Plaintiffs against Kealoha and the City for abuse of process ("Count X");

-a state claim by all Plaintiffs against Kaneshiro and the City for negligent hiring of Kealoha, Delaplane, Branco, and Kong ("Count XI"); and

-a state claim by all Plaintiffs against Kaneshiro and the City for negligent retention and supervision of Kealoha, Delaplane, and Branco ("Count XII").

On November 21, 2018, the City filed its Answer and Counterclaim, asserting a counterclaim for breach of contract based on the PJY Lawsuit settlement agreement and Plaintiffs' failure to perform their obligations under the settlement agreement, *i.e.*, filing the instant lawsuit ("Counterclaim I"); and equitable and/or promissory estoppel based on the PJY Plaintiffs' counsel's representations that all material terms of the settlement agreement had been accepted ("Counterclaim II"). [City's Answer, dkt. no. 55, Counterclaim at pgs. 8-11.]

## III. **Motion**

The City argues all of Plaintiffs' claims are barred by the settlement agreement entered into between the PJY Plaintiffs and the City in the PJY Lawsuit; and all of Plaintiffs' claims are barred by the doctrine of claim preclusion. Further, the City asserts that issue preclusion bars Plaintiffs from arguing that any of the Defendants lacked probable cause or that the PDS terminals were not illegal gambling devices. Finally, the City argues it is entitled to summary judgment on its Counterclaims I and II.

<u>**DISCUSSION**</u>

I.   **The PJY Lawsuit Settlement Agreement
     and the City's Counterclaims I and II**

     The City asserts it is entitled to summary judgment
because Plaintiffs have released all of their claims based on
the settlement agreement in the PJY Lawsuit, and if so, summary
judgment must be granted on the City's counterclaims for breach
of contract and promissory and/or equitable estoppel.  The Court
addresses the City's Counterclaim I first, as well as the issue
of whether there is a valid and express settlement agreement.

    A.   <u>**Breach of Contract**</u>

     "Typically, the construction and enforcement of
settlement agreements are governed by principles of local law
which apply to interpretation of contracts generally." <u>O'Neil
v. Bunge Corp.</u>, 365 F.3d 820, 822 (9th Cir. 2004) (internal
quotation marks and citation omitted).  Thus, the City's
counterclaim for breach of the settlement agreement is reviewed
under Hawai`i law, which provides:

> The elements of a breach of contract claim are
> "(1) the contract at issue; (2) the parties to
> the contract; (3) whether plaintiff performed
> under the contract; (4) the particular provision
> of the contract allegedly violated by defendants;
> and (5) when and how defendants allegedly
> breached the contract." <u>Liberty Mut. Ins. Co. v.
> Sumo-Nan LLC</u>, Civil No. 14-00520 DKW-KSC, 2015 WL
> 2449480, at *3 (D. Hawai`i May 20, 2015).
> Establishing the existence of the contract
> requires:

> "'an offer and acceptance, consideration,
> and parties who have the capacity and the
> authority to agree as they do.'" In re Doe,
> 90 Hawai`i 200, 208, 978 P.2d 166, 174
> (1999) (quoting Dowsett v. Cashman, 2 Haw.
> App. 77, 83, 625 P.2d 1064, 1068 (1981)).
> Further, "'[t]here must be mutual assent or
> a meeting of the minds on all essential
> elements or terms in order to form a binding
> contract.'" Carson v. Saito, 53 Haw. 178,
> 182, 489 P.2d 636, 638 (1971) (quoting
> Honolulu Rapid Transit Co. v. Paschoal, 51
> Haw. 19, 26-27, 449 P.2d 123, 127 (1968)).

> York v. Jordan, CIVIL NO. 13-00311 DKW-RLP, 2014
> WL 12596317, at *7 (D. Hawai`i Oct. 27, 2014)
> (alteration in York).

Marine Lumber Co. v. Precision Moving & Storage Inc., CIVIL 16-

00365 LEK-RLP, 2017 WL 1159093, at *6-7 (D. Hawai`i Mar. 28,

2017). "To determine the validity of the settlement agreement,

the court looks to the totality of the circumstances surrounding

the making of the agreement." Assocs. Fin. Servs. Co. of

Hawai`i, Inc. v. Mijo, 87 Hawai`i 19, 29, 950 P.2d 1219, 1229

(1998) (citation and quotation marks omitted). "Whether the

parties entered into an agreement is essentially a question of

fact." Id.; but see Doi v. Halekulani Corp., 276 F.3d 1131 (9th

Cir. 2002) (holding that, where the parties read the terms of

settlement in open court, and the parties orally agreed to

settlement, there was no need for an evidentiary hearing to

determine whether a settlement agreement existed). "As a

general rule, a properly executed settlement precludes future

litigation for its parties." <u>Amantiad v. Odum</u>, 90 Hawai`i 152, 161, 977 P.2d 160, 169 (1999) (citation omitted).

The crux of the issue here is whether or not there was "mutual assent or a meeting of the minds on all essential elements or terms" of the settlement agreement. <u>See Carson</u>, 53 Haw. at 182, 489 P.2d at 638; <u>see also</u> <u>United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc.</u>, 113 Hawai`i 127, 141, 149 P.3d 495, 509 (2006) ("It is an elementary rule of contract law that there must be a meeting of the minds on all essential elements or terms in order to create a binding contract[.]" (alteration in <u>Dawson</u>) (citations and quotation marks omitted)). The Hawai`i Supreme Court has stated that,

> The existence of mutual assent or intent to accept is determined by an objective standard. A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention. Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties.

<u>Dawson Int'l</u>, 113 Hawai`i at 141, 149 P.3d at 509 (citation omitted).

The City asserts that the proposed settlement agreement prepared by Mr. Nomura was based on Mr. Kiuchi's statements that his clients, the PJY Plaintiffs, agreed to settle the PJY Lawsuit. [Nomura Decl. at ¶ 5.] The City argues

that the settlement agreement included all terms of the agreement between the City and the PJY Plaintiffs, and that Mr. Kiuchi accepted the agreement by failing to raise any objections to its terms. Further, Mr. Kiuchi had actual or apparent authority to accept and bind the PJY Plaintiffs to the settlement agreement. The City argues that it fulfilled its part of the agreement by waiving its right to seek its Bill of Costs, and the PJY Plaintiffs took steps to fulfill their portion of the settlement by filing the Dismissal Stipulation.

Plaintiffs assert that the only material terms discussed prior to and at the settlement conference with the magistrate judge included: the PJY Plaintiffs dismissing the PJY Count V with prejudice, in exchange for the City waiving the collection of its Bill of Costs. [Kiuchi Decl. at ¶ 10.] According to Plaintiffs, the only other issue discussed was filing the Dismissal Stipulation. [Id.] At no point in time, Plaintiffs argue, did the City raise the issue of the PJY Plaintiffs releasing all of their future claims. Mr. Kiuchi's declaration states that, during the settlement conference before the magistrate judge, Mr. Kiuchi had settlement authority from six of the individual PJY Plaintiffs to release their § 1983 claims against Young, but at no time during the settlement conference did the City discuss that the PJY Plaintiffs were to release any future claims against the

15

City as a condition of the settlement. [Id.] Mr. Kiuchi's declaration also states that, upon reviewing the settlement agreement again in December 2017, he realized that "some language in the agreement might affect any future action taken by the individual plaintiffs[,]" and based on his concerns, did not have the agreement signed. [Id. at ¶ 16.]

Based on the record before the Court, the following events are relevant to the settlement agreement. On April 27, 2017, the City submitted a letter to the Court with the status of the parties' settlement negotiations. Therein, the City stated that it had "suggested to Mr. Kiuchi that the individual plaintiffs' [sic] walk away from their Section 1983 claim against Detective Young. In exchange, the City Defendants would walk away from its Bill of Costs." [Kiuchi Decl., Exh. 3 (letter dated 4/27/17 from Mr. Nomura).] On June 7, 2017, the City and the individual PJY Plaintiffs reached a settlement. [CV 12-00577, Minutes (dkt. no. 215) ("Settlement Conference held. Case settled. The parties shall submit the appropriate dismissal documents no later than July 7, 2017.").]

On July 10, 2017 at 11:05 a.m., Mr. Nomura sent Mr. Kiuchi an email stating that "I'm attaching a proposed Stip to Dismiss w/Prejudice. Please review and comment. If okay, let me know if okay to 'e-sign' for you. I'll send to you propose [sic] settlement agreement." [Nomura Decl., Exh. C at

000005.]  At 11:09 a.m., Mr. Kiuchi emailed Mr. Nomura stating

"Ernest – Looks find to me.  Okay for you to sign."  [Id.]

Later that same day at 12:13 p.m., Mr. Nomura sent Mr. Kiuchi an

email titled "PJY Settlement Agreement" which stated: "Keith, I

tried to keep it as simple as possible.  Please review.  If

okay, please print out and start the signature process.  I'll do

the same on my end."  [Nomura Decl., Exh. C at 000006.]  At

3:13 p.m., Mr. Kiuchi responded with the following: "I will

review, but I don't see any way that I'm going to get the WZ

entities to sign this.  They withdrew from the case a while back

and didn't participate in the appeal."  [Id.]

On July 12, 2017, this Court approved the Dismissal

Stipulation.  [CV 12-00577, dkt. no. 216.]  The Dismissal

Stipulation included the history of dismissals of the

PJY Counts I, II, III, IV, in addition to stating that

PJY Count V was dismissed with prejudice.  [Id. at 3.]  Finally,

it stated: "There are no further claims or parties in this case.

Each party to bear their respective attorneys' fees and costs in

this matter."  [Id. at 4.]

On July 20, 2017 Mr. Kiuchi sent an email titled

"Settlement Agreement" at 8:26 a.m. to Mr. Nomura, stating:

"Ernest – The only change to the settlement agreement would be

to ask that you add a counterparts paragraph because I'm going

to have the various plaintiffs sign at different times.  I have

been in contact with all of the plaintiffs and I don't foresee a problem getting their signatures." [Nomura Decl., Exh. C at 000007.] On July 25, 2017, Mr. Kiuchi emailed Mr. Nomura to follow up on the City's addition of "counterparts language" to the settlement agreement, to which Mr. Nomura replied that he would send it out that day. [Id. at 000009.] On September 18, 2017, Mr. Nomura sent the executed signature pages for the PJY City Defendants to Mr. Kiuchi, and asked Mr. Kiuchi to return the executed signature pages for the PJY Plaintiffs. [Id. at 000010.] In response, Mr. Kiuchi stated: "We're still in the process of getting signatures on our side." [Id.] On November 7, 2017, Mr. Nomura followed up with Mr. Kiuchi on the status of the signatures, to which Mr. Kiuchi stated: "I should be able to get that to you by the end of the week." [Id. at 000011 (email chain dated 11/7/17).] On December 5, 2017, Mr. Nomura again followed up with Mr. Kiuchi on his clients' signatures, to which Mr. Kiuchi stated: "We should be able to deliver it to you tomorrow." [Id. at 000012 (email chain dated 11/7/17).] Thereafter, it appears that neither counsel attempted to contact the other regarding the settlement agreement leading up to the filing of the instant action.

The simple fact is that the parties never executed the settlement agreement, and only executed the stipulation for dismissal of PJY Count V with prejudice. The City now contends

that the PJY Plaintiffs expressly agreed to paragraph "C" of the settlement agreement titled "PLAINTIFFS' RELEASE OF CLAIMS" ("Release Clause"). [Nomura Decl., Exh. B (settlement agreement) (emphasis in original).] The record, however, does not clearly support such a conclusion. The Court notes: the City's failure to mention the Release Clause in its April 27, 2017 letter to this Court; the apparent disagreement of counsel as to whether this was a material term agreed upon at the settlement conference; Mr. Nomura's declaration that does not state that the Release Clause was either negotiated or agreed upon at the settlement conference; and the language of the Dismissal Stipulation. The Court also notes Mr. Kiuchi's: failure to object to the included Release Clause in the proposed settlement agreement on July 20, 2017, when his only requested change was to add language that would permit the PJY Plaintiffs to sign the settlement agreement in counterparts; and his continued responses stating that he was working on obtaining his clients' signatures to the settlement agreement.

On balance, at the very least, there are questions of material fact as to whether the Release Clause was a material term of the settlement agreement between the parties, and whether Mr. Kiuchi and the PJY Plaintiffs mutually agreed to this material term. The City's reliance upon <u>Federated Service Insurance Co. v. STIHL Inc.</u>, No. 1:11-CV-3097-CL, 2013 WL

1100728 (D. Or. Mar. 14, 2013), is not persuasive and factually

distinguishable from the dispute at issue. In STIHL, the United

States District Court for the District of Oregon stated:

> Husqvarna [Professional Products ("Husqvarna")]
> prepared a five-page Dealer Agreement, which
> [Tyholm Big R., Inc., dba Big R Stores ("Big R")]
> signed and returned to Husqvarna around April
> 2008.[9]  While Husqvarna did not sign the
> contract, both parties indicated their intent to
> be bound: Husqvarna drafted the contract, Big R
> signed and returned it with no objection, and
> both Husqvarna and Big R have performed under the
> contract.

2013 WL 1100728, at *5.  Here, it appears the City prepared the

settlement agreement,[10] and that both the proposed settlement

agreement and Mr. Kiuchi's substantive response to it, came

after the Dismissal Stipulation had been filed on July 12, 2017.

---

[9] STIHL involved a dispute that arose from a fire caused by
two adjacent displays in Big R's window.  Big R's insurer filed
suit against Big R for negligence, and Big R filed third party
claims against the manufacturers, including third-party
defendant Husqvarna.  Husqvarna filed a motion to dismiss or
motion to strike the insurer's claim against Husqvarna, based on
a "Dealer Agreement" entered into between Husqvarna and Big R.
STIHL, 2013 WL 1100728, at *4.  Applying the law of North
Carolina, the United States District Court for the District of
Oregon ruled that the Dealer Agreement, though only signed by
Big R, was nonetheless enforceable against Big R's insurer,
which stepped into the shoes of its insured, Big R.  Id. at *5.

[10] The Court notes that the proposed settlement agreement
contains a clause titled: "No Party Deemed Drafter"; however,
the fact that Mr. Nomura first prepared and sent the settlement
agreement to Mr. Kiuchi implies that the proposed form was
drafted by the City.  [Nomura Decl., Exh. B (settlement
agreement) at ¶ 6, Exh. C at 000006 (email dated 7/10/17 from
Mr. Nomura to Mr. Kiuchi titled "PJY Settlement Agreement").]

Thus, the PJY Plaintiffs did not act in the same matter as the parties in STIHL, and instead, went forward with dismissal of PJY Count V before having a final agreement as to the terms of the written settlement agreement.

Additionally, the City and Plaintiffs have submitted competing declarations regarding the scope of the agreement reached at the settlement conference before the magistrate judge. Mr. Nomura asserts that he prepared the settlement agreement "[b]ased on my conversations with [Mr. Kiuchi] . . . and his statements to me that his clients agreed to settle the PJY Lawsuit." [Nomura Decl. at ¶ 5.] On the other hand, Mr. Kiuchi states that "[a]t no time during the settlement conference was there any discussion of the Plaintiffs providing a release both of the [PJY Lawsuit] and any future action." [Kiuchi Decl. at ¶ 10.] Because the City has not pointed to any undisputed evidence that the Release Clause was discussed or bargained for, deciding this issue would require this Court to make a credibility determination, which is inappropriate on a motion for summary judgment. See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (citation and quotation marks omitted)).

Viewing the evidence in the light most favorable to the nonmoving party, see McNeil v. Sherwood Sch. Dist. 88J, 918 F.3d 700, 706 (9th Cir. 2019), there is a genuine issue of material fact as to whether the City and the PJY Plaintiffs mutually agreed to all material terms of the proposed settlement agreement and, in particular, the release of claims clause. The Court finds it is arguably possible that a rational juror could resolve this "genuine issue of material fact in the nonmoving party's favor," and therefore this Court denies the portion of the City's Motion seeking summary judgment on Counterclaim I. See id. (citations and quotation marks omitted).

**B.    Promissory and Equitable Estoppel**

Next, the City argues in the alternative that it is entitled to summary judgment on its counterclaims for equitable and/or promissory estoppel. This district court has stated that,

> the party seeking to invoke the doctrine of
> equitable estoppel "must show that he or she has
> detrimentally relied on the representation or
> conduct of the person sought to be estopped, and
> that such reliance was reasonable." [Waimea
> Falls Park, Inc. v. Brown, 6 Haw. App. 83, 98,
> 712 P.2d 1136, 1146 (1985)] (citations omitted).
> The reliance element may be dispensed with in
> order to prevent manifest injustice. Id. (citing
> Filipo v. Chang, 62 Haw. 626, 633, 618 P.2d 295
> (1980)).

Boskoff v. Yano, 217 F. Supp. 2d 1077, 1089 (D. Hawai`i 2001). Equitable estoppel is "a device originative in courts of equity

and as such depends on a close analysis of individual fact situations for its application." Filipo, 62 Haw. at 634, 618 P.2d at 300.

The elements of promissory estoppel are: "(1) a promise, (2) foreseeability (the promisor must foresee reliance by the promise at the time the promise is made), (3) reliance, and (4) the necessity of enforcement to avoid injustice." Bill Darrah Builders, Inc. v. Hall at Makena Place, LLC, CIV. NO. 15-00518 JMS-KSC, 2018 WL 650195, at *7 (D. Hawai`i Jan. 31, 2018) (citing Gonsalves v. Nissan Motor Corp. in Haw., Ltd., 100 Haw. 149, 164, 58 P.3d 1196, 1211 (2002)). The "'essence' of promissory estoppel is 'detrimental reliance on a promise.'" Gonsalves, 100 Hawai`i at 165, 58 P.3d at 1212 (quoting Ravelo v. Cty. of Hawaii, 66 Haw. 194, 199, 658 P.2d 883, 887 (1983)). For the purposes of promissory estoppel, a "promise" is defined as a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." Id. (internal quotation marks and citation omitted). Promissory estoppel is an equitable claim. See id. at 164, 58 P.3d at 1211 ("a claim for promissory estoppel may arise as an application of the general principle of equitable estoppel" (citation omitted)).

"It is well settled that equitable remedies are not available when an express contract exists between the parties

concerning the same subject matter." Keahole Point Fish LLC v.
Skretting Canada Inc., 971 F. Supp. 2d 1017, 1040 (D. Hawai`i
2013) (internal quotations marks and citation omitted); see also
AAA Haw., LLC v. Haw. Ins. Consultants, Ltd., CV. No. 08-00299
DAE-BMK, 2008 WL 4907976, at *3 (D. Hawai`i Nov. 12, 2008)
("Where the parties to a contract have bargained for a
particular set of rights and obligations, all claims involving
those express rights and obligations properly lie in contract
law and not in equity."). Hawai`i law has also approved the
application of this principle. See Porter v. Hu, 116 Hawai`i
42, 55, 169 P.3d 994, 1007 (Haw. Ct. App. 2007) ("This court has
observed that '[t]he necessary prerequisite to the right to
maintain a suit for an equitable accounting, like all other
equitable remedies is . . . the absence of an adequate remedy at
law.'" (alterations in Porter) (quoting Bd. of Dirs. of the
Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency
Tower Venture, 2 Haw. App. 506, 513, 635 P.2d 244, 249 (1981))).

    Because this Court has determined that there are
genuine issues of material fact as to whether an express
agreement exists between the parties and what material terms
were incorporated therein, it cannot determine at this time
whether equitable remedies are necessary. The Court therefore
denies the portion of the Motion seeking summary judgment as to
the City's Counterclaim II.

## II.  **Res Judicata**

Next, the Court turns to the City's argument that the judicial doctrine of res judicata precludes the instant lawsuit. "The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008).  Under federal law, res judicata or claim preclusion "prohibits lawsuits on any claims that were raised or could have been raised in a prior action." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002) (internal quotation marks and citations omitted).  "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." Id.

### A.  **Identity of Claims**

The City and Plaintiffs dispute whether there is an identity of claims between the PJY Lawsuit and the instant action.  The City argues that Plaintiffs' claims arise out of the same nucleus of operative facts – *i.e.*, the PDS terminal seizures and subsequent criminal indictments – that were at issue in PJY Lawsuit, which would require largely the same evidence at trial.  [City CSOF at ¶ 17.]  Plaintiffs assert the claims in the instant matter follow a separate timeline of events and facts not addressed in the PJY Lawsuit, and do not seek the same remedies.  [Pltfs.' Objections to City CSOF, filed 2/8/19 (dkt. no. 76-2) at ¶ 17 (disputing the City's paragraph

17); Pltfs.' Separate and Concise Statement of Facts in Supp. of
Pltfs.' Mem. in Opp., filed 2/8/19 (dkt. no. 76-3) ("Pltfs.'
CSOF") at ¶ 12 (comparing the PJY Complaint with the Second
Amended Complaint and noting that only two paragraphs contain
similar or the same factual allegations).[11]]

The Ninth Circuit applies four criteria to determine
whether claims are identical:

> (1) whether rights or interests established in
> the prior judgment would be destroyed or impaired
> by prosecution of the second action; (2) whether
> substantially the same evidence is presented in
> the two actions; (3) whether the two suits
> involve infringement of the same right; and
> (4) whether the two suits arise out of the same
> transactional nucleus of facts. <u>United States v.
> Liquidators of European Fed. Credit Bank</u>, 630
> F.3d 1139, 1150 (9th Cir. 2011). The fourth
> criterion is the most important. <u>Id.</u> at 1151.

<u>Harris v. Cty. of Orange</u>, 682 F.3d 1126, 1132 (9th Cir. 2012).

"The inquiry about the same transactional nucleus of facts **is**
**the same inquiry** as whether the claim could have been brought in
the previous action." <u>Howard v. City of Coos Bay</u>, 871 F.3d
1032, 1039 (9th Cir. 2017) (emphasis in <u>Howard</u>) (internal
quotation marks, alteration, and citation omitted). Two suits
are considered to arise out of the same transactional nucleus if
they are related to the same set of facts, and if they could be
conveniently tried together. <u>Id.</u> Importantly, when determining

---

[11] Plaintiffs do not identify which two paragraphs are
identical in both actions.

if a claim could have been raised in a prior action, the Ninth Circuit has drawn a "bright-line rule which asks only whether a claim could have been brought at the time the operative complaint in the prior suit was filed." Id. at 1040.

The PJY Complaint is the relevant complaint, which was filed on June 25, 2013. [CV 12-00577, dkt. no. 79.] Plaintiffs' claims in the instant Second Amended Complaint indeed allege that a number of PDS terminals were seized within the 2012 and 2013 time frame, some of which occurred prior to the June 25, 2013 filing of the PJY Complaint, and some after. However those allegations do not appear to be the primary basis for all of the claims alleged in the Second Amended Complaint. Counts I, II, III, V, VI, VII, VIII, IX, X, and XII relate to the issuance of the First, Second, and Third Indictments, which allegedly were brought in response to the PJY Lawsuit. The First Indictment, as the earliest event, occurred on or about May 1, 2014, after the PJY Complaint was filed on June 25, 2013. Count IV, which is a claim by Canencia against Kaneshiro, Kong, and the City, concerns an incident in 2016.

Unlike the majority of Plaintiffs' other claims, Count XI, which is Plaintiffs' claim for negligent hiring against Kaneshiro and the City, is not relegated to any time-specific acts. See Second Amended Complaint at pgs. 62-64. Rather, Count XI alleges that Kaneshiro and the City – based on

27

the theory of respondeat superior – negligently hired Kealoha,
Delaplane, Branco, and Kong. [Id. at ¶ 136.] In order to
establish a claim for negligent hiring under Hawai`i law, a
plaintiff must show: (1) the defendant owed a duty of care to
the plaintiff; (2) this duty was breached by hiring an employee,
even though the defendant knew or should have known of the
employee's dangerous propensities; (3) the plaintiff suffered
monetarily compensable physical or emotional injuries; and
(4) the breach of the duty was the proximate cause of the
plaintiff's physical or emotional injuries. See Murphy v.
Lovin, 128 Hawai`i 145, 155-59, 284 P.3d 918, 928-32 (Ct. App.
2011), as corrected (Jan. 10. 2012) (affirming trial court's use
of jury instructions listing the elements of negligence hiring).
Insofar as Plaintiffs have not submitted any evidence that the
elements of this claim are tied to acts that occurred after the
operative complaint had been filed in the PJY Lawsuit, or why
this claim could not have been raised in the PJY Lawsuit, this
Court finds that Count XI could have been raised in the PJY
Lawsuit. Thus, for the purposes of res judicata, the Court
finds that only Count XI is identical to the claims in - or
could have been brought in - the prior PJY Lawsuit. The Court
now turns to the second and third elements of res judicata.

## B.    Final Judgment on the Merits

The parties do not dispute that there has been a final judgment on the merits in the PJY Lawsuit.  [City's CSOF at ¶ 14; Pltfs.' Objections to CSOF at ¶ 14 (not disputing the City's paragraph 14).]  PJY Counts I, II, and III were dismissed by this Court in the PJY Summary Judgment Order, and affirmed on appeal by the Ninth Circuit.  See 2014 WL 12694456, *aff'd*, 679 F. App'x 621 (9th Cir. 2017).  PJY Count IV was voluntarily dismissed with prejudice, [CV 12-00577, dkt. no. 183,] which the Ninth Circuit has stated operates as a final judgment on the merits.  See Beard v. Sheet Metal Workers Union, Local 150, 908 F.2d 474, 477 n.3 (9th Cir. 1990) (noting that a dismissal with prejudice bars a later suit under res judicata).  Finally, PJY Count V was also voluntarily dismissed with prejudice upon the filing of the Dismissal Stipulation on July 12, 2017. [CV 12-00577, dkt. no. 216.]  Thus, this Court finds that there has been a final judgment on the merits as to all claims in the PJY Lawsuit.

## C.    Privity Between the Parties

The Court next examines whether there is an identity of parties, or whether there is privity between the PJY Plaintiffs and Plaintiffs in the instant action.  Even where the parties in two matters are not identical, privity may still

exist if there is "substantial identity" or a "sufficient
commonality of interest." See Tahoe-Sierra Pres. Council, Inc.
v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1081 (9th Cir.
2003) (citations and quotation marks omitted). Privity is a
"flexible concept dependent on the particular relationship
between the parties in each individual set of cases." Id. A
close relationship supports a finding of privity, however, an
"identity of relevant interests between the named party and the
non-party is necessary to such a finding." Irwin v. Mascott,
370 F.3d 924, 929 (9th Cir. 2004) (citations omitted).

    In comparing the PJY Complaint to the Second Amended
Complaint, the Court finds that the following individual
Plaintiffs are identical in both actions: G. Simeona, Danley,
Canencia, Haina, Madali, and C. Simeona. Thus, there is
identity of parties as to these individual plaintiffs.

    Neither Yoshimura nor Miller were individual
plaintiffs in the PJY Lawsuit. Nevertheless, the City argues
that privity exists between Yoshimura and PJY Enterprises LLC,
and Miller and Mike, Inc., because Yoshimura is the managing
member of PJY Enterprises LLC and Miller is the owner of
Mike, Inc. [Mem. in Supp. of Motion at 14.] The City also
argues that Plaintiffs have made a judicial admission that all
of the Plaintiffs in the instant matter were named plaintiffs in
the PJY Complaint. Specifically, the City points to the Second

Amended Complaint and its prior iteration, which both state
that: "In the Second Amended Complaint the Plaintiffs in this
Complaint were all Plaintiffs in the Second Amended Complaint in
the Federal action." [Mem. in Supp. of Motion at 14 (citing
dkt. no. 31 at ¶ 27; Second Amended Complaint at ¶ 27).]

In general, a statement in a complaint may serve as a
judicial admission that is binding on the party. See Am. Title
Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). A
judicial admission may however be retracted where the party
making the ostensible judicial admission explains the error in a
later pleading or by amendment, and the trial court must accord
the explanation due weight. See Sicor Ltd. v. Cetus Corp., 51
F.3d 848, 860 (9th Cir. 1995) (concluding that the plaintiff had
retracted its judicial admission through its subsequent
recharacterization of the alleged oral agreement in its
opposition to the defendant's motion for summary judgment).

Here, Plaintiffs have vigorously asserted that
Yoshimura was neither a party to, nor were his interests
represented in, the PJY Lawsuit. [Mem. in Opp. at 16-17.]
Plaintiffs argue that, as a matter of law, PJY could not have
represented Yoshimura's interests in the PJY Lawsuit and that
the City has presented no evidence in support of its assertion
that privity exists between Yoshimura and PJY. The Court takes
Plaintiffs' arguments as to Yoshimura's non-party status in the

PJY Lawsuit as their correction of their factual allegation that all of the Plaintiffs in the instant case were plaintiffs in the PJY Lawsuit. See Sicor, 51 F.3d at 860; Lacelaw, 861 F.2d at 226-27 (holding that "statements of fact contained in a brief **may** be considered admissions of the party in the discretion of the district court" (emphasis in Lacelaw)). Accordingly, the Court, in the exercise of its discretion, finds that Plaintiffs have corrected and amended their prior statement that Yoshimura was a plaintiff in the PJY Lawsuit. Further, the Court finds that there is a question of material fact as to whether Yoshimura's interests were substantially aligned with PJY in the prior lawsuit. In its Reply, the City argues Yoshimura submitted declarations in the PJY Lawsuit that demonstrate his role in the limited liability company, but appears to largely rely on the position that Yoshimura was the "owner and member of PJY" as conclusive of the privity issue. [Reply at 9 (citing ECF No. 59-6, at p. 25 n.18).[12]] This is insufficient to meet the high standard on a motion for summary judgment. Viewing the record in the light most favorable to Plaintiffs, there is a

_____

[12] ECF No. 59-6 is Exhibit E to the City's CSOF, which is the PJY Summary Judgment Order. [City CSOF, Nomura Decl., Exh. E at 25, n.18.] The specific quotation is taken from the Declaration of Tracy Yoshimura, attached to the PJY Plaintiffs' concise statement of facts in response to the PJY City Defendants' separate concise statement of facts in support of their motion for summary judgment, filed on December 16, 2013. [CV 12-00577, (dkt. no. 110).]

genuine issue of material fact as to whether Yoshimura is in privity with PJY.

On the other hand, Plaintiffs have offered no corrective statement as to Miller to amend or explain the ostensible judicial admissions in the Second Amended Complaint that Miller was also a plaintiff in the PJY Lawsuit.  Because "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of that fact," see Lacelaw, 861 F.2d at 226 (citation and internal quotation marks omitted), this Court finds that there are no genuine issues of material fact that Miller is identical to, or in privity with, Mike, Inc., which was a plaintiff in the PJY Lawsuit.

### D.   Summary

This Court concludes that res judicata applies to G. Simeona, Danley, Canencia, Haina, Madali, C. Simeona, and Miller's claim for negligent hiring against Kaneshiro and the City in Count XI of the Second Amended Complaint.  Accordingly, the Court grants this portion of the City's Motion, and dismisses Count XI of the Second Amended Complaint as to G. Simeona, Danley, Canencia, Haina, Madali, C. Simeona, and Miller, only.  The Court denies the City's res judicata arguments in all other respects.

## III. **Issue Preclusion**

Next, the City points to this Court's PJY Summary
Judgment Order in which it concluded that "as a matter of law, .
. . at the time of the seizures on September 27, 2012,
December 13, 2012, and February 14, 2013, the use of the PDS
terminals constituted 'gambling,' as that term is defined in
Haw. Rev. Stat. § 712-1220(4)." 2014 WL 12694456, at *15. The
City asserts that, as a matter of law, issue preclusion bars
Plaintiffs from asserting that the City lacked probable cause,
which is an element of Plaintiffs' retaliatory prosecution and
state claims for malicious prosecution. [Mem. in Supp. of
Motion at 16.] Further, the City argues Plaintiffs are barred
from arguing the PDS terminals are not gambling devices, that
the raids of the PDS terminals were improper, or that the
alleged lack of PDS machines at the Stadium Mall location
eliminated probable cause. [Id.]

The party invoking issue preclusion must show that:

(1) the issue at stake is identical to an issue
raised in the prior litigation; (2) the issue was
actually litigated in the prior litigation; and
(3) the determination of the issue in the prior
litigation must have been a critical and
necessary part of the judgment in the earlier
action.

Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir.
1992).

To state a claim for retaliatory prosecution in violation of the First Amendment, the plaintiff must show: (1) municipal officials took action that would chill or silence a person of ordinary firmness from future First Amendment activities; and (2) that they possessed a retaliatory motive combined with a lack of probable cause.  See Beck v. City of Upland, 527 F.3d 853, 863-64 (9th Cir. 2008).

To state a claim for malicious prosecution under Hawai`i law, a plaintiff must demonstrate that the criminal proceedings were initiated without probable cause and initiated with malice.  Reed v. City & Cnty. of Honolulu, 76 Hawai`i 219, 230, 873 P.2d 98, 109 (1994); see also Young v. Allstate Ins. Co., 119 Hawai`i 403, 417, 198 P.3d 666, 680 (2008).  To the extent that Plaintiffs dispute that the underlying criminal indictments lacked probable cause, the Hawai`i Supreme Court has stated that,

> "A grand jury indictment must be based on probable cause."  [State v.] Ganal, 81 Hawai`i [358,] 367, 917 P.2d [370,] 379 [(1996)] (quotation marks and citations omitted). "Probable cause" has been defined as "a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused."  Id. (citation, internal quotation marks, and brackets omitted).  Furthermore, in order to support an indictment, the prosecution must provide evidence of each essential element of the charged offense to the grand jury.  [State v.] Ontai, 84 Hawai`i [56,] 63-64, 929 P.2d [69,] 76-77 [(1996)].  "If no evidence is produced as

> to a material element of the offense, a person of
> ordinary caution and prudence could not have a
> 'strong suspicion' that the defendant is guilty
> of the [charged] crime." Id. at 64, 929 P.2d at
> 77.

State v. Taylor, 126 Hawai`i 205, 218, 269 P.3d 740, 753 (2011)

(some alterations in Taylor).

The City's arguments that the PJY Summary Judgment Order ruling that the PDS terminals are "gambling" devices does not conclusively foreclose Plaintiffs' allegations that the Defendants lacked probable cause to indict the individual Plaintiffs. For each crime that the Plaintiffs were charged with in the First, Second, and Third Indictments, the prosecutor would have had to produce evidence of "each essential element of the charged offense" in order for the grand jury to have reached a "strong suspicion" that the defendant is guilty. See id. Evidence that the PDS terminals are an illegal gambling device, would have been but one of the elements in the various charges of Racketeering,[13] Promotion of Gambling,[14] Money Laundering,[15] and Possession of Gambling Devices,[16] against Plaintiffs. See State v. Griffin, 126 Hawai`i 40, 49, 266 P.3d 448, 458 (2011)

---

[13] See Haw. Rev. Stat. § 842-2.

[14] See Haw. Rev. Stat. §§ 712-1221 & 712-1222.

[15] See Haw. Rev. Stat. § 708A-3(1)(a).

[16] See Haw. Rev. Stat. § 712-1226.

("the Hawai`i Constitution requires that the grand jury find probable cause as to every element and the culpable state of mind of any offense for which the defendant may later be convicted").  Moreover, because the Second Amended Complaint alleges in part that the testimony at the grand jury proceedings in the First, Second, and Third Indictments were false, the actual issue to be litigated is whether the "grand jury acted upon legal evidence" in making their probable cause determination.  See id. at 53, 266 P.3d at 461 (internal quotation marks and citation omitted).  The PJY Summary Judgment Order did not address this issue, nor was the issue of probable cause regarding **the indictments** actually litigated.

Viewing the record in the light most favorable to Plaintiffs, the Court finds that issue preclusion does not apply and does not bar Plaintiffs from asserting their malicious and retaliatory prosecution claims based on a lack of probable cause.  Thus, the Court denies the portion of the Motion asserting that issue preclusion bars Plaintiffs from arguing there was a lack of probable cause in support of their claims for retaliatory or malicious prosecution.

Finally, as to the City's contention that Plaintiffs are precluded from asserting the PDS terminals are not gambling machines, the Court agrees this issue was squarely litigated and finally decided in the PJY Summary Judgment Order, and affirmed

by the Ninth Circuit.  See 2014 WL 12694456 at *15, *aff'd*, 679

F. App'x 621.  Thus, to the extent that Plaintiffs have alleged

or attempt to argue that the PDS terminals are not gambling

devices, they are barred by issue preclusion from advancing this

argument in this matter.

**CONCLUSION**

On the basis of the foregoing, the City's Motion for

Summary Judgment, filed December 13, 2018, is HEREBY GRANTED IN

PART AND DENIED IN PART.  Summary judgment is GRANTED in favor

of the City as to:

- G. Simeona, Danley, Canencia, Haina, Madali, C. Simeona, and
Miller's claim for negligent hiring against Kaneshiro and the
City in Count XI of the Second Amended Complaint; and

- the City's arguments regarding issue preclusion, insofar as
Plaintiffs are barred from asserting that the PDS terminals are
not gambling devices.

The Motion is DENIED in all other respects.

Accordingly, Kealoha's joinder of simple agreement, filed

January 9, 2019, and Kaneshiro's joinder of simple agreement,

filed February 4, 2019, are also GRANTED IN PART AND DENIED IN

PART.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, May 15, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

TRACY T. YOSHIMURA, ET AL. VS. KEITH KANESHIRO, ET AL; CIVIL 18-00038 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT KATHERINE KEALOHA'S AND DEFENDANT KEITH M. KANESHIRO'S JOINDERS